Donald E. J. Kilmer, Jr. [SBN: 179986]
Email: don@dklawoffice.com
Jessica L. Danielski [SBN: 308940]
Email: jessica@dklawoffice.com
LAW OFFICES OF DONALD KILMER, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Voice: (408) 264-8489

Jason Davis [SBN: 224250]
Email: jason@calgunlawyers.com
THE DAVIS LAW FIRM
42690 Rio Nedo, Suite F
Temecula, California 92590
Voice: (949) 436-4867
Fax:   (888) 624-4867

Attorneys for Plaintiffs
JANE ROE #1, et al.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE #1; JANE ROE #2; JOHN DOE #1; JOHN DOE #2; JOHN DOE #3; JOHN DOE #4; JOHN DOE #5; JOHN DOE #6; SECOND AMENDMENT FOUNDATION, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF INVESTIGATION; BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; WILLIAM P. | Case No.: 1:19-CV-00270-DAD-BAM <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS TENTH AMENDMENT CLAIM and DECLARATION OF COUNSEL <br><br> Date:   May 19, 2020 <br> Time:   9:30 a.m. <br> Judge:   Hon. Dale A. Drozd <br> Courtroom: 5, Seventh Floor |

1

Donald Kilmer
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

Plaintiffs' Opposition to MTD                                              Jane Roe #1, et al., v. United States, et al.

|   |   |
|---|---|
| BARR (U.S. Attorney General), | ) |
| CHRISTOPHER A. WRAY (Director, | ) |
| Federal Bureau of Investigation); | ) |
| REGINA LOMBARDO (Acting Deputy | ) |
| Director, Bureau of Alcohol, Tobacco, | ) |
| Firearms and Explosives); XAVIER | ) |
| BECERRA (California Attorney | ) |
| General), DOES 1 TO 100. | ) |
| | ) |
| Defendants. | ) |
| | ) |

# INTRODUCTION

The United States Defendants have filed this Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (Doc 37) the TENTH AMENDMENT claim, which was added to Plaintiffs' First Amended Complaint (FAC, Doc 36). The motion is joined by the California Defendants (Doc 38) after having initially filed a non-opposition (Doc 34) to Plaintiffs' Motion to Amend (Doc 33).

The Motion to Dismiss should be denied. Plaintiffs' TENTH AMENDMENT claim is not only viable, but it may be dispositive of the case for most Plaintiffs without requiring the Court to adjudicate the more constitutionally complex SECOND AMENDMENT, FIFTH AMENDMENT, and FOURTEENTH AMENDMENT claims.

Plaintiffs had considered moving this Court for Partial Summary Judgment under Fed. R. Civ. P. 56(a), (f) on the TENTH AMENDMENT claim for the following reasons: (1) there are no disputed facts arising under this claim, (2) adjudication of this claim will conserve the litigation resources of the parties and the judicial resources of this court, and (3) adjudication of this claim will likely resolve the case for the majority of the plaintiffs. However, given the resource (time and money) constraints, Plaintiffs will have make due with dropping the hint.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

Simply put, for this motion to be taken seriously, this Court would have to simultaneously consider the idea that California – a state with notoriously strict gun laws – is both competent to be a NICS Point of Contact State (i.e., in full compliance with the all rules and regulations for state-level administration of the National Instant Background Check), and incompetent to adjudicate a restoration of rights after a mental health hold. That kind of cognitive dissonance should be rejected.

## STATEMENT OF FACTS[1]

All Plaintiffs have alleged that at some time in their past, they were subject to an involuntary detention or "adjudicated mental-health hold" in which their mental health was evaluated under some form of alleged governmental authority. Such involuntary detention results in various disabilities to exercise the right to keep and bear arms under both federal and state law.

Under California law the disability arising from an <u>unadjudicated</u> mental health hold pursuant to Welfare and Institutions Code (WIC) § 5150 is five years unless restored through a hearing under WIC § 8103 *et seq.* There are no federal consequences for an <u>unadjudicated</u> hold under California's WIC § 5150.

Under California law the disability arising from an <u>adjudicated</u> mental health hold pursuant to Welfare and Institutions Code (WIC) § 5250 is also five years unless restored through a hearing under WIC § 8103 *et seq.*

The federal consequence under 18 U.S.C. § 922(g)(4) for an <u>adjudicated</u> hold under California's WIC § 5250 was apparently the imposition of a lifetime disability against exercising SECOND AMENDMENT rights.

Now the United States Government has come forward in this motion and admitted that restoration of rights is possible after an <u>adjudicated</u> mental health

---

[1] This statement of facts is heavy on mixed statements of fact and law due to the nature of the motion, i.e., the division of power between the states and federal government. Ergo the laws/policies of state and federal government become operative facts under a TENTH AMENDMENT analysis.

Plaintiffs' Opposition to MTD                                         *Jane Roe #1, et al., v. United States, et al.*

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

hold under the "NICS Improvement Act of 2007" [Public Law 110-180] (copy attached), but that California's procedures are deficient in some ill-defined way.

First, this Court should reject the slight-of-hand "argument" by the United States of merely substituting "California" for "Washington" in quoted text from the recent case of *Mai v. United* States, 953 F.3d 1106, 1112 (9th Cir. 2020).

Whatever analysis of Washington law that took place in that case, the Plaintiffs in this case deserve to have some essential questions answered first. Is the federal government properly interpreting California law? What objective criteria is the federal government using to qualify and disqualify a state's restoration procedure? Is the federal government's analysis of state restoration procedures rooted in Congressional statute or administrative rulemaking? Did the federal government comply with the Administrative Procedures Act? Unfortunately, only the Ninth Circuit can certify a question of state law to the California Supreme Court. CA Rule of Court 8.548(a).

Second, it is rather bold, and just a little counter-intuitive, to baldly assert that California is somehow lax when it comes to gun control laws. The Plaintiffs have alleged, and are entitled to be believed at this stage of the proceedings, that their rights were restored under California law (by operation of law, time lapse, or by prevailing in a hearing), which are the only restoration procedures available to them in the jurisdiction where they reside. And for some of them, it is the only jurisdiction where they may lawfully purchase firearms. [Roe #2, Doe #1, Doe #2, Doe #4, Doe #5, Doe #6. Arguably, Roe #1 and Doe #3 also have these claims based on their change of residence. E.g., is someone bound by New Jersey law regarding mental health restoration procedures, when they have no contacts with that state, live in California now, and can't purchase a gun New Jersey anyway? See: 18 U.S.C. § 922(a)(3), (b)(3)]

Third, it is not entirely clear that California is required to submit its restoration procedures after mental health adjudication to federal oversight. The "NICS

Improvement Act of 2007" [Public Law 110-180] is essentially a scheme to grant money to states with woefully inadequate records (criminal and mental health) so that the NICS system can obtain better quality data for administering the firearm background check system. Section 105 of the law requires states who accept grant money to implement a "relief from disabilities" program to be eligible for the grants. There is no evidence that California has ever accepted any such grant money, so why would federal standards be imposed on California?

Fourthly, assuming *arguendo* that California is required to comply with the grant program's relief from disabilities standards, California meets or exceeds those standards, or at a minimum this is a question of fact, that for now (at the FRCP 12(b)(6) stage) must be resolved in Plaintiffs' favor.

Plaintiffs filed this action initially alleging violations of the SECOND AMENDMENT, FIFTH AMENDMENT, FOURTEENTH AMENDMENT and various statutory violations. Plaintiffs added a TENTH AMENDMENT claim once Plaintiffs' learned federal policy was the common thread preventing them from exercising their right to "keep and bear" arms, specifically their desire to acquire, possess, and train with firearms for all lawful purposes, including self-defense.

And while federal policy is the common thread, California is a co-defendant on the TENTH AMENDMENT claim because California is a Point of Contact (POC) State. [See Exhibits A and B attached to Request for Judicial Notice (RFJN).] Which means California has been deputized, after being certified as compliant by the Federal Government, to administer federal gun law at the point of sale for all federally licensed gun dealers in California. [See Exhibit C[2] attached to Request for Judicial Notice.] California's certification included (or at least it did in 2011) a finding by the federal government that its administrative policies and/or data

---

[2] The NICS Audit Report is from 2011. It was produced during discovery in the case of *Silvester v. Harris*, 41 F. Supp. 3d 927 (E.D. Cal. 2014). Since California is still designated as a POC state as of the date of filing, Plaintiffs believe that an updated copy of such an audit exists and is substantially like this report.

Plaintiffs' Opposition to MTD                                   *Jane Roe #1, et al., v. United States, et al.*

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

quality procedures met the standards as set forth in "the *Gun Control Act of 1968 as amended; Federal Regulation Titles 27 & 28; NICS User Manual;* APB Bylaws and meeting minutes; and another other applicable federal laws and regulations." [See page 1, under the heading "Scope" of the audit report.]

Furthermore, the federal government also certified that California met the requirements to be a POC because it denies "firearm sales based on criteria equal to or more stringent that [sic] imposed by the GCA of 1968 (18 U.S.C. § 922), as amended." [See page 5, bullet point 9.]

All these certifications occurred in 2011, four years after the "NICS Improvement Act of 2007" [Public Law 110-180] was signed into law. Presumably the federal government has made the same findings since 2011, as California is still a certified POC state under the applicable federal laws and regulations. [See Exhibits A & B attached to the RFJN.]

All of this invites several questions: If plaintiffs are <u>not</u> barred from acquiring firearms under California law[3] -- which is "equal to or more stringent" than federal law -- then is California mis-reporting Plaintiffs' status to NICS? Is California mis-applying federal law at the point of sale? Is California's POC NICS certification unwarranted?  Should it be revoked? Was the federal government incompetent in issuing the certification?  Should this Court issue findings answering these questions after full discovery has been conducted?

Or is the more plausible analysis that complexities and the inertia inherent in federalism, especially in a complex area like gun control, has generated a fog that victimizes the civil servants (state and federal) who are trying to interpret this awkward statute, every bit as much as it victimizes the Plaintiffs.

Thankfully this Court can cut through that fog with a plain reading of the TENTH AMENDMENT, avoid the more complex constitutional questions, and save everyone

---

[3] Which is strongly implied, but not directly stated, in California's joinder. [Doc 38, pg. 1, ln. 7-15]

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

time and money with a finding that California's restoration procedures after a mental health hold are a power reserved to California and to the people who exercised their right to participate in California's restoration procedures to restore their SECOND AMENDMENT rights under the TENTH.

## STATEMENT OF THE LAW

A federal complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). The complaint is sufficient if it gives "fair notice of what the . . . claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957)). Detailed facts are not required, but the alleged facts must state a claim for relief that is plausible on its face above the speculative level. *Id.* at 555, 570-572.

Courts have generally viewed motions to dismiss under 12(b)(6) with disfavor and they are rarely granted. See, *Lormand v. US Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009). In the Ninth Circuit, dismissal with prejudice under a FRCP 12(b)(6) motion is proper only in "extraordinary" circumstances. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). Additionally, when a complaint raises a novel legal theory, then FRCP 12(b)(6) motions are "especially disfavored" so the theory "can best be assessed after factual development." *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004).

In deciding a Rule 12(b)(6) motion a court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google Inc.,* 562 F.3d 123, 127 (2nd Cir. 2009); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2nd Cir. 2011). Courts must assume that general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified School Dist.,* 37 F.3d 517, 521 (9th Cir. 1994).

7

Plaintiffs' Opposition to MTD                                    Jane Roe #1, et al., v. United States, et al.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

Neither set of Defendants objects to Plaintiffs' standing to make a TENTH AMENDMENT claim on the theory that only states have standing under that amendment. *Bond v. United States*, 564 U.S. 211 (2011) is the controlling precedent on that point. An "individual, in a proper case, can assert injury from government action taken in excess of the authority that federalism defines." *Id.*, at 220.

But *Bond* has more to say about TENTH AMENDMENT jurisprudence than mere justiciability. The *Bond* Court engaged in a thorough discussion about how federalism itself protects fundamental rights. The Court went on to explain that mere division of labor between state and federal legislation does not define the entire sphere of the TENTH AMENDMENT, and that "federalism secures to citizens the liberties that derive from the diffusion of sovereign power." That "[s]ome of these liberties are of a political character" and thus "[f]ederalism secures the freedom of the individual." *Id.*, at 221 [internal quotes and citations omitted]. The *Bond* Court goes on to catalogue the ways in which the "constitutional structure of our Government [...] protects individual liberty." *Id.*, at 223.

## ARGUMENT

### A. The First Amended Complaint Provides Sufficient Notice of the TENTH AMENDMENT Claim.

Plaintiffs in this case are making a TENTH AMENDMENT claim that a federal policy, <u>on the specific point regarding relief from disabilities</u>, is preventing them from exercising a fundamental right and thus abridging their liberty.

They are NOT (as California argues) complaining that the initial disqualification from exercising their SECOND AMENDMENT rights is invalid or somehow violates the TENTH AMENDMENT. [Doc 38, pg 1, lines 23-28]

They are NOT (as the U.S. conjectures) arguing that Congress lacks the power to federalize a SECOND AMENDMENT disqualification based on a state court mental

8

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

health adjudication, or that California has been commandeered to enforce federal policy. [Doc 37, pg 7, lines 3-9]

Nor are plaintiffs coming to this Court alleging that the federal government is constitutional forbidden or incompetent to set standards for mental health hearings to both disqualify and restore rights **for federal agencies**. See generally "NICS Improvement Act of 2007" [Public Law 110-180], Section 101(c) *et seq.*

The TENTH AMENDMENT claim in this matter makes the case that when the federal government accepts a state court proceeding to disqualify someone from exercising a fundamental right, that it must also accept the same states' procedures for restoration of those rights.

### B. California's Restoration Procedure Can Meet Federal Standards.

The federal government can, as it has in Public Law 110-180, make the award of grant money contingent on accepting federal standards on a related policy. *South Dakota v. Dole*, 483 U.S. 203 (1987). But there is no evidence at this stage of the proceedings that California has accepted any grant money under the "NICS Improvement Act of 2007." Plaintiffs have alleged on information belief that California does not accept such grant money. If we are wrong, where is the evidence?

And if discovery in this matter reveals that California accepts grant money under the Act, then the inquiry shifts to whether California is somehow deficient under the federal standard. That question can't be resolved by slight-of-hand arguments at this stage of a case. The irony is that Plaintiffs may have to defend California's gun control policies while trying to vindicate their own rights.

The standard set by Public Law 110-180, for states to grant relief from mental health disabilities is set forth in Section 105(a) of the Act.[4]

---

[4] As noted above, the federal standards for federal agencies to grant relief are set forth in Sec. 101 of the Act.

9

Plaintiffs' Opposition to MTD                    Jane Roe #1, et al., v. United States, et al.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

> (a) PROGRAM DESCRIBED. — A relief from disabilities program is implemented by a State in accordance with this section if the program—
> (1) permits a person who, pursuant to State law, has been adjudicated as described in subsection (g)(4) of section 922 of title 18, United States Code, or has been committed to a mental institution, to apply to the State for relief from the disabilities imposed by subsections (d)(4) and (g)(4) of such section by reason of the adjudication or commitment;
> (2) provides that a State court, board, commission, or other lawful authority shall grant the relief, pursuant to State law and in accordance with the principles of due process, if the circumstances regarding the disabilities referred to in paragraph (1), and the person's record and reputation, are such **that the person will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest**; and
> (3) permits a person whose application for the relief is denied to file a petition with the State court of appropriate jurisdiction for a de novo judicial review of the denial. [emphasis added]

California's standards for adjudicated mental health disqualifications and restorations is set forth at Welfare and Institutions Code § 8103(g)[5]. Section (g)(4) sets forth the civil procedure and the hearing[6] standards:

> A person who is subject to paragraph (1) may petition the superior court of his or her county of residence for an order that he or she may own, possess, control, receive, or purchase firearms. At the time the petition is filed, the clerk of the court shall set a hearing date within 60 days of receipt of the petition and notify the person, the Department of Justice, and the district attorney. The people of the State of California shall be the respondent in the proceeding and shall be represented by the district attorney. Upon motion of the district attorney, or on its own motion, the superior court may

---

[5] As amended and taking effect January 1, 2020. Welfare and Institutions Code § 8103(l).

[6] California does not use boards or commissions to restore rights after mental health holds. All hearings are conducted in Superior Court.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

transfer the petition to the county in which the person resided at the time of his or her detention, the county in which the person was detained, or the county in which the person was evaluated or treated. Within seven days after receiving notice of the petition, the Department of Justice shall file copies of the reports described in this section with the superior court. The reports shall be disclosed upon request to the person and to the district attorney. The district attorney shall be entitled to a continuance of the hearing to a date of not less than 30 days after the district attorney was notified of the hearing date by the clerk of the court. If additional continuances are granted, the total length of time for continuances shall not exceed 60 days. The district attorney may notify the county behavioral health director of the petition, and the county behavioral health director shall provide information about the detention of the person that may be relevant to the court and shall file that information with the superior court. That information shall be disclosed to the person and to the district attorney. The court, upon motion of the person subject to paragraph (1) establishing that confidential information is likely to be discussed during the hearing that would cause harm to the person, shall conduct the hearing in camera with only the relevant parties present, unless the court finds that the public interest would be better served by conducting the hearing in public. Notwithstanding any other law, any declaration, police reports, including criminal history information, and any other material and relevant evidence that is not excluded under Section 352 of the Evidence Code, shall be admissible at the hearing under this section. **If the court finds by a preponderance of the evidence that the person would be likely to use firearms in a safe and lawful manner, the court may order that the person may own, control, receive, possess, or purchase firearms**, and that person shall comply with the procedure described in Chapter 2 (commencing with Section 33850) of Division 11 of Title 4 of Part 6 of the Penal Code for the return of any firearms. A copy of the order shall be submitted to the Department of Justice. Upon receipt of the order, **the Department of Justice shall delete any reference to the prohibition against firearms from the person's state mental health firearms prohibition system information.** [emphasis added]

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

The recent Ninth Circuit opinion in *Mai v. United* States, 953 F.3d 1106 (9th Cir. 2020),[7] finding the State of Washington's restoration program deficient is not helpful to the Defendants. Why? Because California standards are more stringent than Washington's and probably more stringent than the federal standards.

Washington required that the person "no longer presents a ***substantial*** danger to himself or herself, or the public." [emphasis added] By contrast, the federal standard requires a determination that "the person will not be likely to act in a manner dangerous to public safety." In other words, Washington's standard was "substantial danger" as contrasted with the federal standard of mere "danger." [Imagine having to ague that your client might be dangerous, but is not substantially dangerous?]

California soars beyond both standards and requires a finding that the individual "would be likely to use firearms in a safe and lawful manner." This is broader than a mere finding that the person no longer poses a danger. And given California's notoriously strict gun control laws[8], compliance with which is mandated by a Superior Court's finding under § 8103(g)(4), a "safe and lawful" standard is "heads and shoulders" above a merely "not dangerous" standard.

Nor can either Defendant claim that California's unique terminology is somehow vague or ambiguous. California itself has already construed this standard. In a challenge to Welfare and Institutions Code § 8103, a California District Court of Appeals rejected a claim that "the phrase "would not be likely to use firearms in a safe and lawful manner" is so vague as to allow arbitrary and discriminatory enforcement." *People v. Mary H.* (2016) 5 Cal.App.5th 246, 210 Cal.Rptr.3d 31.

---

[7] There are other reasons that case is inapposite here, but since *Mai* did not address TENTH AMENDMENT claims, this brief will not address those here.

[8] E.g., Laws on safe storage, waiting periods, background checks for all firearm transfers (not just retail sales), background checks for ammo purchase, so-called Red-Flag Laws, and WIC § 5150 itself.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

The Court continued: "We do not believe persons of common intelligence must guess the meanings of **"not likely," "use," "firearms," "safe," or "lawful,"** as these words "are all of common usage" (*City of Costa Mesa v. Soffer* (1992) 11 Cal.App.4th 378, 387, 13 Cal.Rptr.2d 735) and their meanings are either "common and generally accepted" (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 435, 71 Cal.Rptr.3d 542) or "can be fairly ascertained by references to similar statutes or other judicial determinations, or to the common law or the dictionary" (*ibid*.)." *Id.,* 261.

So even assuming *arguendo* that California's standards for restoring firearms rights after an adjudicated mental health hold are subject to federal oversight, California easily meets, or exceeds those standards.[9]

### C. California Must Defend Against the Tenth Amendment Claim.

California's further objection -- that since it is a state, it can't be a defendant under a Tenth Amendment claim -- is also without merit.

It would have been nice if California had joined in Plaintiffs' Tenth Amendment claim by filing its own counterclaim against the federal government. That would have demonstrated the courage of its convictions. After all, why shouldn't California have to defend its prerogatives in setting the nation's toughest gun control policies, while at the same time protecting its own citizen's fundamental rights?

The further irony here is that California's tough (some would say extreme) gun laws inure to the benefit of the Plaintiffs in this case. Shouldn't California be shouting from the roof-tops that no state is more restrictive of getting a gun than California? And that if its policies are insufficient to address the intersection of

---

[9] That is why the Tenth Amendment claim may indeed be ripe for summary adjudication. There are no disputed facts and this a pure question of law. Plaintiffs are weighing the utility of bring that motion now or waiting for discovery on all claims to be complete. However, this Court is not bound by such considerations and may give notice and request additional briefing from the parties on such a procedure.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

Plaintiffs' Opposition to MTD                              *Jane Roe #1, et al., v. United States, et al.*

mental health and gun control, then no state can meet the federal standard? But California seems happiest when someone, anyone, anywhere, for any reason is denied the right to keep and bear arms. So instead of joining Plaintiffs TENTH AMENDMENT claim to vindicate its bragging rights as the toughest state on gun control, California wants to sit on the sidelines and throw spitballs at the Plaintiffs' attempts to prove that exact point.

But all of that is beside the point. As noted above in the Statement of Facts, California has voluntarily to be deputized as a federal gun law enforcer by seeking and accepting certification as a Point of Contact state under the NICS system.

### D. Plaintiffs Should be Granted Leave to Amend.

Although Defendants' motion should be denied in its entirety, if this Court finds a flaw in Plaintiffs' First Amended Complaint, Plaintiffs respectfully request leave to amend it to fix any deficiencies this Court may find. Supporting this request, FRCP 15(a) states that leave to amend "shall be freely given when justice so requires." FRCP 15(a); *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully Submitted on May 5, 2020,

 /s/ *Donald Kilmer*
Attorney for Plaintiffs

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

14

Plaintiffs' Opposition to MTD — Jane Roe #1, et al., v. United States, et al.

## **Declaration of Counsel**

I, Donald Kilmer, declare as follows:

1) I am the attorney of record for the plaintiffs in the above entitled case.

2) Attached to this Opposition Memorandum is a true and correct copy of Public Law 110-180, also known as the "NICS Improvement Act of 2007."

I declare under penalty of perjury under the laws of the United States and the State of California, that the forgoing statements are true and correct, and that this declaration was executed in San Jose on May 5, 2020.

/s/ *Donald Kilmer*
Attorney for the Plaintiffs

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com