James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

*Attorney for Federal Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE #1, *et al.*,<br><br>                                    Plaintiffs,<br><br>      v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>      and<br><br>XAVIER BECERRA,<br><br>                                    Defendants. | Case No. 1:19-cv-00270-DAD-BAM<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' TENTH AMENDMENT CLAIM**<br><br>No hearing scheduled, pursuant to the Court's minute order of April 22, 2020. |

The only question on this motion is whether the amended complaint contains a "short and plain statement" plausibly alleging a violation of the Tenth Amendment.  Fed. R. Civ. P. 8(a)(2). As the Federal Defendants have explained, it does not—chiefly because it fails to provide any coherent description of the asserted violation.  Plaintiffs do not seriously dispute that point: their opposition brief contains a single citation to the amended complaint, which merely adverts to its existence. Opp. at 2.  Instead, plaintiffs' brief elaborates on the allegations that they would add to their complaint, given leave to make yet another amendment in support of their Tenth Amendment claim.  Although plaintiffs' theory remains difficult to decipher, it does not appear to be plausible.  This Court should not grant them a third chance to state a viable claim.

Plaintiffs' Tenth Amendment theory seems to center on the relationship between state and federal prohibitions on the possession of firearms.  California law specifies a number of

1  circumstances under which an individual is barred from possession. Cal. Welf. & Inst. Code

2  § 8103(a)–(g). Most of these prohibitions can be lifted by court order or the passage of time.

3  *See id.* As relevant here, "[a] person who has been certified for intensive treatment under

4  Section 5250 . . . shall not own, possess, control, receive, or purchase . . . any firearm for a

5  period of five years." *Id.* § 8103(g)(1)(i). (Section 5250 of the Welfare and Institutions Code

6  authorizes involuntary commitment for "not more than 14 days of intensive treatment related to

7  [a] mental health disorder.") Anyone whose right to possess firearms is revoked under state law

8  because of such an involuntary commitment[1] automatically regains that state-law right after the

9  passage of five years, absent exceptions not relevant here. *Id.* § 8103(g)(1)(i). And California

10 allows for an earlier restoration of rights under state law, if a California "court finds by a

11 preponderance of the evidence that the person would be likely to use firearms in a safe and

12 lawful manner." *Id.* § 8103(g)(4).

13      Congress has also specified conditions under which federal law prohibits the possession

14 of firearms. *See* 18 U.S.C. § 922(g). As relevant here, federal law prohibits possession by

15 individuals who have been "adjudicated as a mental defective" or "committed to a mental

16 institution."[2] *Id.* § 922(g)(4). Federal law also provides for the possibility of relief from this

17 prohibition. But the only currently available "avenue for relief" from the federal prohibition "is

18 through a state program that qualifies under 34 U.S.C. § 40915." *Mai v. United States*, 952 F.3d

---

[1] Many of California's prohibitions on the possession of firearms also attach to equivalent findings "by a court of any state" or under "the law of any other state or the United States." *Id.* §§ 8103(a)(1), (b)(1), (c)(1), (d)(1), (e)(1). But California law does not appear to prohibit the possession of firearms by individuals who were subject to the equivalent of a Section 5250 commitment outside of California. *See id.* § 8103(g)(1)(i).

[2] For the purposes of this motion to dismiss, the Federal Defendants accept the allegation that each plaintiff has been subjected to a state law proceeding giving rise to a § 922(g)(4) bar.

1106, 1111 (9th Cir. 2020).  Here, as is commonly the case, federal law looks to the findings of state courts, and attaches separate federal consequences to certain factual determinations made under state law.  And, here as elsewhere, the question of which state determinations trigger which federal consequences is a matter of federal law.  In this instance, a state program only removes the federal prohibition on the possession of firearms if the program produces a finding "that the person will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest."  34 U.S.C. § 40915(a)(2); *see Mai*, 952 F.3d at 1112 ("For a person granted relief under a qualifying state program, § 922(g)(4)'s prohibition on the possession of firearms does not apply." (citing 34 U.S.C. § 40915(b))).

California is among the approximately twenty states that have not created a state program whose findings satisfy 34 U.S.C. § 40915, and which meets the other requirements of that statute.  *See Mai*, 952 F.3d at 1112.  As discussed above, California law allows for an early restoration of the state-law right to possess firearms "[i]f the court finds by a preponderance of the evidence that the person would be likely to use firearms in a safe and lawful manner."  Cal. Welf. & Inst. Code § 8103(g)(4).  Plaintiffs quibble over whether the state standard of "likely to use firearms in a safe and lawful manner," *id.*, satisfies the federal requirement that a person "not be likely to act in a manner dangerous to public safety," 34 U.S.C. § 40915(a)(2).  But there can be no dispute that the second federal requirement—a finding that "the granting of the relief would not be contrary to the public interest," *id.*—is entirely absent from California law, nor that a state-law restoration by the passage of time fails to satisfy 34 U.S.C. § 40915.  Although California's state program removes the state-law prohibition on the possession of firearms, the program is not sufficient to provide relief from the federal prohibition established by § 922(g)(4).

1      That is the state of the law.  Anyone involuntarily committed under Section 5250 of the
2  California Welfare and Institutions Code, which the Federal Defendants assume suffices to
3  trigger the § 922(g)(4) bar, currently has no way to restore his right to possess firearms under
4  federal law.  That is because the California rights-restoration procedure does not produce the
5  findings required to lift the federal bar: specifically, a finding that "the granting of . . . relief
6  would not be contrary to the public interest."  34 U.S.C. § 40915(a)(2).  Someone may therefore
7  be permitted to possess firearms under California law, yet prohibited from possessing firearms
8  by federal law, with no way to lift the federal prohibition.

9      It is not especially unusual for federal law to prohibit what California law permits.  The
10  possession of recreational marijuana is one obvious example.  Yet plaintiffs seem to allege that,
11  here, the federal prohibition violates the Tenth Amendment.  In doing so, they repeatedly
12  mischaracterize federal law, and evidently misunderstand the reason that California's rights-
13  restoration procedure does not lift the § 922(g)(4) bar.

14      Plaintiffs suggest that the federal government considers California "incompetent to
15  adjudicate a restoration of rights after a mental health hold."  Opp. at 3.  Not so.  There is no
16  question of the competence of California or its state courts—or those of any other state.  Under
17  federal law, any state "adjudicat[ion] as a mental defective" or "committ[ment] to a mental
18  institution" gives rise to a federal prohibition on the possession of firearms, regardless of its
19  effect on possession under state law.  18 U.S.C. § 922(g)(4).  And, under federal law, any state
20  finding "that the [previously barred] person will not be likely to act in a manner dangerous to
21  public safety and that the granting of the relief would not be contrary to the public interest" is
22  sufficient to lift that federal prohibition, so long as the adjudication satisfies the other
23  requirements of 34 U.S.C. § 40915.  Some states have established programs that satisfy those

federal requirements; other states, including California, have not.  *See Mai*, 952 F.3d at 1111.  The well-defined difference between states with qualifying programs and states without such programs is not a difference of competence; it is (as relevant here) a question of whether the state program produces the findings necessary to lift the federal bar.  California's program does not.  To say so is not to suggest "that California is somehow lax when it comes to gun-control laws."  Opp. at 4.

Nor have "federal standards" been "imposed on California."  *Id.* at 5.  Instead, federal law sets out independent standards to lift the independent federal bar on the possession of firearms.  And federal law looks to state law, as it commonly does, to see whether a state court has made the findings necessary to lift the federal bar.  California remains free to lift the parallel state prohibition on the possession of firearms when and how it thinks best—and to instruct its courts to make federally-sufficient findings, or not.  California defines procedures for lifting the state law bar, and the federal government sets requirements for lifting the federal bar.  "California's standards for restoring firearms rights after an adjudicated mental health hold" are not thereby "subject to federal oversight," as plaintiffs claim.  *Id.* at 13.  Each government is sovereign within its sphere.

Plaintiffs describe their Tenth Amendment argument as the proposition that "when the federal government accepts a state court proceeding to disqualify someone from exercising a federal right, . . . it must also accept the same states' procedures for restoration of those rights."  *Id.* at 9 (small caps removed).  To parse that argument, plaintiffs do not contend that a federal prohibition on the possession of firearms is beyond the power of Congress.  Nor do they argue that Congress is forbidden to establish requirements for lifting that federal prohibition.  Instead, their argument seems to be that, if the federal government wishes to set such federal

requirements, then it must hold federal hearings. *Id.* (explaining that plaintiffs are not "alleging that the federal government is constitutional[ly] forbidden or incompetent to set standards for mental health hearings to both disqualify and restore rights **for federal agencies**" (emphasis in original)).

On plaintiffs' account, then, Congress is faced with a binary choice: to ignore state hearings restoring the right to possess firearms and hold separate federal hearings instead, or else to accept the results of all state rights-restoration hearings as equally binding under federal law. Moreover, plaintiffs seem to believe that the same binary choice applies to state determinations that an individual should be prohibited from possessing firearms: Congress may either accept all state determinations as sufficient to establish a federal bar, or else ignore state determinations as irrelevant under federal law. And finally, plaintiffs posit that these choices are linked: if federal law looks to state determinations to establish a federal prohibition, then <u>it must accept all state prohibitions and all state rights restorations as binding under federal law</u>. In sum, the federal government can either mirror state determinations, or it can ignore state determinations, but it cannot look to state determinations to see if they have established factual predicates with independent significance under federal law. This is what plaintiffs apparently believe that the Tenth Amendment requires.

Tellingly, plaintiffs do not cite a single case in support of this proposition, nor explain how it follows from "the principles of federalism contained in the Tenth Amendment." *Reno v. Condon*, 528 U.S. 141, 149 (2000). Nor do they make any effort to explain how their novel view can be reconciled with the many instances in which federal law looks to findings made in state proceedings to determine whether a federal consequence should follow. Plaintiffs have not articulated a viable interpretation of the limits established by the Tenth Amendment.

1  The amended complaint does not contain a "short and plain statement" plausibly alleging
2  a violation of the Tenth Amendment. Fed. R. Civ. P. 8(a)(2). And plaintiffs' opposition brief
3  does not suggest that leave to amend for a second time would allow them to state such a claim.
4  Plaintiffs' Tenth Amendment claim should therefore be dismissed without leave to amend.

Respectfully submitted this 12th day of May, 2020,

JOSEPH H. HUNT
Assistant Attorney General

LESLEY FARBY
Assistant Director
Federal Programs Branch

 */s/ James Bickford*
JAMES BICKFORD
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 305-7632
James.Bickford@usdoj.gov

*Attorneys for Federal Defendants*