Donald E. J. Kilmer, Jr. [SBN: 179986]
Email: don@dklawoffice.com
Jessica L. Danielski [SBN: 308940]
Email: jessica@dklawoffice.com
LAW OFFICES OF DONALD KILMER, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Voice:  (408) 264-8489

Jason Davis [SBN: 224250]
Email: jason@calgunlawyers.com
THE DAVIS LAW FIRM
27201 Pureta Real, Suite 300
Mission Viejo, California  92691
Voice: (949) 436-4867
Fax:    (888) 624-4867

Attorneys for Plaintiffs
JANE ROE #1, et al.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE ROE #1; JANE ROE #2; JOHN DOE #1; JOHN DOE #2; JOHN DOE #3; JOHN DOE #4; JOHN DOE #5; SECOND AMENDMENT FOUNDATION, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF INVESTIGATION; BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; WILLIAM P. BARR (U.S. Attorney General), CHRISTOPHER A. WRAY (Director, Federal Bureau of Investigation); REGINA LOMBARDO (Acting Deputy Director, Bureau of Alcohol, Tobacco, Firearms and Explosives); XAVIER BECERRA (California Attorney General),<br><br>Defendants. | Case No.: 1:19-CV-270-DAD-BAM<br><br>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT and/or SUMMARY ADJUDICATION and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAID MOTION<br><br>Fed. R. Civ. Pro. 56 |

i

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

1    Please take notice that pursuant to Fed. R. Civ. Pro. 56, Plaintiffs hereby move

2   this Court for Summary Judgment and/or Summary Adjudications in this matter.

3   Said motion will be based on the concurrently filed Plaintiffs' Statement of

4   Undisputed Facts, accompanying declarations, the pleadings and court file in this

5   matter, and such oral argument at any hearing the Court may set on its own motion.

6                         **Table of Contents**

7   I.     Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8   II.    Jurisdiction and Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . .2

9   III.   Statement of Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

10  IV.    Statement of Law

11         a.  The Right to Keep and Bear Arms is a Fundamental . . . . . . . . . . . . . . . 5

12         b.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

13         c.  Summary Judgment Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

14  V.     Argument

15         a.  WIC § 5250 Mental Health Hold is Unconstitutional. . . . . . . . . . . . . 7

16              i.   Probably Cause Evidentiary Standard is Unconstitutional . . . . .7

17              ii.  Plaintiffs Should have been Appointed Guardian/Conservator. . 7

18              iii. Plaintiffs should have been Appointed Counsel. . . . . . . . . . . . .8

19              iv.  Plaintiffs Received Constitutionally Inadequate Notice . . . . . . . 9

20              v.   Inititial Hearings were Unconstitutional. . . . . . . . . . . . . . . . . . . 9

21         b.  Federal Govt Should be Estopped from Disqualifying Jane Roe 1 . . . . . 9

22         c.  Traveling to New Jersey to Retore Rights is an Undue Burden . . . . . . 10

23         d.  California's WIC § 8103 Meets or Exceeds Federal Standards . . . . . . . 11

24         e.  Court Must Adjudicate As-Applied Second Amendment Claim . . . . . . .21

25         f.  The NICS Improvement Act of 2017 Violates Equal Protection . . . . . . 22

26  VI.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

27

28

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

Plaintiffs' Motion for Summary Judgment                    *Jane Roe #1, et al., v. United States, et al.*

1

## Table of Authorities

2

### FEDERAL CASES

3   *Addington v. Texas*, 441 U.S. 418 (1979) . . . . . . . . . . . . . . . . . . . . . . . . .. . 5, 7, 8, 22

4   *Cooley v. Housing Auth. of City of Slidell*, . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5   747 F.3d 295, 298 (5th Cir. 2014)

6   *District of Columbia v. Heller*, 554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . .1, 5

7   *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, . . . . . . . . . . . . . 6

8   249 F.3d 1132 (9th Cir. 2001)

9   *Gideon v. Wainwright,* 372 U.S. 335 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

10  *Green Mountain Realty Corp. v. Leonard,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11  750 F.3d 30, 38 (1st Cir. 2014)

12  *Heller v. District of Columbia,* 670 F.3d 1244, 1269 . . . . . . . . . . . . . . . . . . . . . . 22

13  (DC Circuit Court of Appeals, 2011)

14  *In re Stern,* 345 F.3d 1036, 1043 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 13

15  *Keyes v. Lynch,* 195 F. Supp. 3d 702, 721 (M.D. Pa. 2016) . . . . . . . . . . . . .. . . . 10, 18

16  *Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020) . . . . . . . . . . . . . . . .. . 5, 20, 21, 22

17  *Mance v. Sessions*, 896 F.3d 699 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . 11

18  *Marathon Mfg. Co., v. Enerite Prod. Corp.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

19  767 F.2d 214 (5th Cir. 1985)

20  *Matthews v. Eldridge*, 424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 8, 9

21  *McDonald v. City of Chicago*, 561 U.S. 742 (2010) . . . . . . . . . . . . . . . . . . . . . 5

22  *Parham v. J.R.,* 442 U.S. 584 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

23  *Tyler v. Hillsdale County Sheriff's Dept.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

24  837 F.3d 678 (6th Cir. 2016)

25  *United States v. Bean,* 537 U.S. 71 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

26  *United States v. Chovan,* 735 F.3d 1127 . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 21

27  *United States v. Ramos,* 39 F.3d 219 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 19

28  *Whole Woman's Health v. Hellerstedt,* 136 S. Ct. 2292 (2016) . . . . . . . . . . . . . . . . 11

iii

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

## STATE CASES

*People v. Mary H.,* 5 Cal.App.5th 246, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

      (5th Dist. Court of Appeal, 2016)


## FEDERAL STATUTES AND RULES

18 U.S.C. § 921(a)(33)(B)(i)(II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 922(g)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 10, 15

18 U.S.C. § 925(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 925A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

28 U.S.C. §§ 1331, 1343, 2201, 2202  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. §§ 1983, 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

27 CFR 478.144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Fed. R. Civ. Proc. 17(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

NICS Improvement Act of 2007, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

      Public Law 110-180, 121 STAT. 2559


## STATE STATUTES

Welfare and Institutions Code § 5250 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Welfare and Institutions Code § 5256.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Welfare and Institutions Code § 5256.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Welfare and Institutions Code § 5256.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

Welfare and Institutions Code § 8103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.com

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

This case does not challenge the policy that prohibits firearms to someone who is gravely disabled, or who suffers a mental illness that endangers themselves or others. As the Supreme Court noted: "[W]e do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the <u>mentally ill</u>, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008). (underline added)

This case undertakes a more granular analysis of the full scope of the Second Amendment, as to when, and how, and for how long, someone can be excluded from exercising the full rights of citizenship due to a mere allegation, or indeed a diagnosis, after an adjudicated mental health hold. Both the federal defendants and the state of California have laws that provide for the restoration of the "right to keep and bear arms" after someone has been involuntarily detained on a mental health hold.  The federal scheme is called the NICS Improvement Act of 2007, Public Law 110-180, 121 STAT. 2559, it is codified at 34 U.S.C.§§ 40901-40941, and California's scheme is found in its Welfare and Institutions Code §§ 5250, 8103 *et seq*.

The inquiries that plaintiffs respectfully request in this case are:

(1) Were there adequate due process safeguards in place for the initial "hearing" that adjudicate mental health holds? Hearings that not only deprives someone of their liberty, but – as this case demonstrates – strips them of a fundamental right for life? E.g., Was the person a minor at time of the "hearing"? Were they appointed a guardian ad litem? Were they represented by counsel? Was there adequate notice and opportunity to be heard? What evidentiary standards are necessary for commitment? What appellate rights were afforded to the patient?

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

1

(2) Assuming that fundamental due process fairness can be established for the initial hearing, what process is necessary to restore someone's civil rights once that person's mental health has been restored? E.g., If federal standards for a state court hearing to restore rights is contingent on accepting federal grant money, does a state retain the power under the Tenth Amendment to restore rights if they do not participate in the grant program? If a state does not participate in a grant program, but its state law restoration procedure is substantially identical to the federal grant standards, does the refusal (by either sovereign) to recognize that equivalence – and thus restore rights – violate the Second Amendment and/or Equal Protection?

(3) Should the federal defendants be estopped from classifying Jane Roe #1 as subject to 18 U.S.C. § 922(g)(4), when it relied on her bearing arms as part of her service in the United States Army?

(4) Can the federal defendants impose an undue burden on Jane Roe #1 to travel to New Jersey to restore her firearm rights when she has no intent to relocate there and cannot lawfully purchase a firearm in New Jersey, being a resident of California. 18 U.S.C. §§ 922(a)(3), 922(b)(3).

## II.  Jurisdiction and Statement of the Case

This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 925A, 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. §§ 1983, 1988.

There is still pending in this action, Defendants' Motion to Dismiss Plaintiffs' 10th Amendment claims. (Docs 37, 38, 41, 42, 43)

Plaintiffs JANE ROE #2 (pending) and JOHN DOE #6 (Doc 59) have been dismissed from this action by way of stipulation.

## III.  Statement of Facts

Plaintiffs' Statement of Undisputed Facts (PSUF) is set forth in a separate filing and incorporated by reference herein.

All of the plaintiffs are currently being denied the right to own, possess, and acquire firearms due to "adjudicated" mental health holds.  [PSUF #1]

2

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

1   All of the plaintiffs, except Jane Roe #1, were subjected to an "adjudicated" mental

2   health hold pursuant to California's Welfare and Institutions Code [hereafter WIC] §

3   5250. John Doe #1 in 2011 [PSUF #8]. John Doe #2 in 2015. [PSUF #12] John Doe #3

4   in 2012. [PSUF #16] John Doe #4 in 1996. [PSUF #21] John Doe #5 in 2007. [PSUF

5   #28] Jane Roe #1 was placed on a mental health hold in New Jersey in 1988 or 1989.

6   [PSUF #2]

7       Plaintiffs Jane Roe #1 and John Doe #5 were minors at the time of their

8   "adjudicated" mental health hold and neither one of them was appointed a guardian

9   ad litem. [PSUF #2, #28, #29]

10      Plaintiffs Jane Roe #1, John Doe #3, John Doe #4, and John Doe #5 were not

11  appointed lawyers during their "hearings", and John Doe #3 even specifically

12  requested appointment of counsel during his hearing. [PSUF #2, #17, #22, #29] John

13  Doe #3 specifically remembers being under the influence of psychotropic drugs

14  (administered by the hospital) that impaired his judgment and perception during his

15  "hearing." [PSUF #17]

16      Plaintiffs John Doe #3, and John Doe #4 were not appointed a conservator during

17  their "hearings." [PSUF #17, #22] Plaintiffs John Doe #3 and John Doe #4 were not

18  advised of their right to appeal the hearing to a Superior Court. [PSUF #17, #22]

19  Plaintiffs John Doe #4 and John Doe #5 were not advised that their hearing could

20  result in a lifetime prohibition on firearm rights. [PSUF #22, #29]

21      Plaintiffs John Doe #1 and John Doe #2 successfully petitioned a Superior Court

22  in California for relief from firearm disabilities under WIC § 8103 *et seq.* [PSUF #9,

23  #11, #13, #15]

24      John Doe #4 petitioned a Superior Court in California for relief under WIC § 8103,

25  but the Superior Court, denied the petition, stating: "[...] Motion for Relief of Firearm

26  Prohibition is DENIED. The Court cannot grant the requested relief the petition is

27  seeking. Prohibition period lapsed, 10/4/2001." In other words, the case was not

28  resolved on the merits because the Judge considered the matter mooted by operation

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

3

1   of law. (i.e., the passage of time.)  A true and correct copy of the order was provided to

2   the Defendants as part of discovery. [PSUF #24]

3      The evidentiary burden necessary to detain a person pursuant to WIC § 5250 and

4   thus also disqualify them from exercising a fundamental right for life -- is mere

5   ***probable cause***. WIC § 5256.6. [PSUF #32]

6      None of the plaintiffs currently suffer from any disqualifying mental health

7   diagnosis. [PSUF #5, #10, #14, #19, #25, #29] Furthermore, but for the alleged

8   federal disability, the State of California would approve all plaintiffs for firearms

9   purchases. [PSUF #7, #11, #15, #20, #27, #31]

10     Superficially, it would appear that the Attorney General of California is not

11  contributing to the denial of plaintiffs' rights, if not for the following reasons:

12  1. California's statutory scheme for the initial commitment hearing violates due

13     process and principles of fundamental fairness by: (a) using a constitutionally

14     deficient burden of proof, (b) failing to provide attorneys, (c) failing to provide

15     guardian ad litem or conservator, (d) conducting hearings when respondents are

16     impaired, and (e) failing to provide adequate notice of appellate rights.

17  2. California's continuing partnership with the federal government as a full Point of

18     Contact NICS state [PSUF #45, #46, #47, #48] is a cause in fact of denying

19     Plaintiffs' rights to purchase firearms. E.g., the California Department of Justice

20     violates WIC § 8103(g)(4) by failing to "delete ***any reference*** to the prohibition

21     against firearms from [a] person's state mental health firearms prohibition

22     system information" upon receipt of a court order restoring someone's rights

23     under that code section. [PSUF #43, #44] This violation results in a denial of

24     rights to plaintiffs John Doe #1 and John Doe #2. [PSUF #9, #11, #13, #15]

25  3. California's failure to challenge the federal government's overreach by not

26     insisting that its WIC § 8103 *et seq.,* scheme meets or exceeds the standard set

27     forth in the NCIS Improvement Act scheme for states that take the grant money,

28     amounts to a wholesale abandonment of the rights of California residents.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

4

Plaintiffs' Motion for Summary Judgment                    *Jane Roe #1, et al., v. United States, et al.*

## IV. **Statement of the Law**

### A.   The Right to Keep and Bear Arms is Fundamental

The Second Amendment is a fundamental right fully applicable against the federal government, *District of Columbia v. Heller*, 554 U.S. 570 (2008), and state actors, even while engaged in a working partnership with the federal government. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).  As noted above this right can be altered, even suspended, if someone is competently found (both legally and medically) to be mentally ill. *Heller, at* 626-27. Some Circuit Courts have already rendered opinions about how and when this right can be restored once suspended. *See Tyler v. Hillsdale County Sheriff's Dept.*, 837 F.3d 678 (6th Cir. 2016)(en banc), *Cf., Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020), *reh'g denied at,* 974 F.3d 1082.

That the Second Amendment is a fundamental right that is fully protected by the due process clause's concepts of ordered liberty, deeply rooted in this Nation's history and tradition is settled law. *McDonald, Id.*  Civil commitment hearings related to mental health are subject to a heightened standard of review, with clear and convincing evidentiary standards. *Addington v. Texas*, 441 U.S. 418 (1979). A procedural due process analysis that examines the nature of the process that is due, must be congruent with the deprivation of the rights at stake. *Matthews v. Eldridge*, 424 U.S. 319 (1976).

### B.   Standard of Review

The law in this Circuit[1] -- under a now familiar two-step analysis -- is that a complete deprivation of Second Amendment rights is reviewed under strict scrutiny, while lesser intrusions are reviewed under an intermediate scrutiny standard. Under both inquiries the burden of producing admissible evidence and the burden of persuasion is on the government. *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), *pet. cert. denied*, *Chovan v. United States*, 135 S.Ct. 187 (2014).

---

[1] Which Plaintiffs concede this Court is bound by this circuit's cases, but make (in some places) a good faith argument for modification or refinement.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

Plaintiffs contend that for those claims which challenge the sufficiency of the initial mental health commitments, that this Court must subject both sovereign's policies, practices, and evidence to strict scrutiny – and furthermore, that under that standard the Plaintiffs are entitled to judgment as a matter of law.

Plaintiffs contend that for those claims which challenge the federal government's rejection of California's restoration procedures, that this Court must also apply strict scrutiny to the policies, practices, and evidence proffered by the federal government, or – in the alternative – that if the Court applies intermediate scrutiny, that the Plaintiffs are still entitled to judgment as a matter of law.

### C.   Summary Judgment Standards

Upon a showing that there is no genuine dispute of material fact as to particular claim(s) or defense(s), the court may grant summary judgment in the party's favor on "each claim or defense – or party of each claim or defense – on which summary judgment is sought." Fed. R Civ. P. 56(a).  Cross-motions for summary judgment often may be encountered where the parties generally agree as to the facts but disagree as to the conclusions to be drawn or their legal significance. *Marathon Mfg. Co., v. Enerite Prod. Corp.* 767 F.2d 214 (5th Cir. 1985).

When cross-motions for summary judgment are filed on the same claim, the court must consider evidence submitted in support of (and in opposition to) both motions before ruling on either motion. Thus, a court ruling on one motion must consider evidence submitted in support of the cross-motion in determining whether there is a triable issue of fact, even if no formal opposition is filed. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). However, the court must view each motion independently, viewing evidence and inferences in the light most favorable to each nonmoving party in turn. *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014); *Cooley v. Housing Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014).

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

# V.  Argument

## A.  Adjudicated Mental Health Holds are Unconstitutional.

One question raised by Plaintiffs' claims is whether the initial determination of plaintiffs' mental health status by their respective states' processes were defective under the Fifth (applicable to the federal government) and Fourteenth (applicable to California) Amendments' Due Process Clause.

### 1. The Evidentiary Standard Should be Clear and Convincing.

The evidentiary standard for an involuntary mental health hold under WIC § 5250 is mere ***probable cause***. WIC § 5256.6. That standard is constitutional insufficient. The U.S. Supreme Court even rejected the higher preponderance evidentiary standard with a finding that an the higher "clear and convincing" standard was required to meet constitutionally valid due process standards. *Addington v. Texas*, 441 U.S. 418, 432-433 (1979). The Court found that the deprivation of the patient's liberty interest was too strong to warrant a lesser standard. *Id., at* 425. John Does #1 thru #5 (all California commitments) not only had their liberty interest at stake, but their Second Amendment rights were (perhaps) also subject to a lifetime disqualification based on an evidentiary standard that is deficient under the Supreme Court's holding in *Addington*.

On those grounds alone, this Court should find that John Does #1 thru #5 were therefore not lawfully committed to an involuntary mental health hold, and therefore not subject to 18 U.S.C. § 922(g)(4).

### 2.  Plaintiffs should have been appointed Guardian ad Litem or Conservator.

"A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. Proc. 17(c)(2).

California's parallel rule of civil procedure is found at California Code of Civil Procedure § 372 *et seq.*

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

The nature of a hearing to involuntarily commit someone for mental health treatment compels – at minimum – that the hearing officer presiding over the hearing make an inquiry as to whether a minor, or alleged incompetent adult, should be appointed a guardian ad litem or conservator.  The absence of any evidence that this inquiry was even made for Jane Roe #1, John Doe #3, John Doe #4, and John Doe #5, taints their hearings and calls into question whether they were afforded their full due process rights.  *See generally: Addington v. Texas,* 441 U.S. 418 (1979), *Matthews v. Eldridge*, 424 U.S. 319 (1976), and *Parham v. J.R.,* 442 U.S. 584 (1979).

### 3.  Plaintiffs Should have been Appointed Counsel.

Under federal law, persons are prohibited from possessing or receiving a firearm if they (1) have been convicted of a felony; (2) are a fugitive from justice; (3) are an unlawful user of or addicted to any controlled substance; (4) have been involuntarily committed to a mental institution or judged to be mentally defective; (5) are aliens illegally or unlawfully in the United States, or certain other aliens admitted under a nonimmigrant visa; (6) have been dishonorably discharged from the military; (7) have renounced their U.S. citizenship; (8) are under a qualifying domestic violence restraining order; (9) have been convicted of a misdemeanor crime of domestic violence. In addition, federal law prohibits persons under felony indictment from receiving a firearm. See 18 U.S.C. § 922(g) and § 922(n).

For many of these disqualifications, the prohibited person's "adjudication" could be presumed to have included the right to counsel. [e.g., for a misdemeanor domestic violence conviction to disqualify someone from exercising firearms rights, the person must have been represented by counsel, or knowingly and intelligently waived that right. 18 U.S.C. § 921(a)(33)(B)(i)(II)] There does not appear to be a counterpart to this requirement, imposed by federal law, for a lifetime disqualification based on involuntary commitment to a mental institution. 18 U.S.C. § 922(g)(4).

California does allow detainees to hire private counsel for a hearing under WIC § 5250. See: WIC § 5256.3, 5256.4. But, given the nature of the rights at stake: loss of

8

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

Plaintiffs' Motion for Summary Judgment                    *Jane Roe #1, et al., v. United States, et al.*

liberty and loss of a fundamental right, the appointment should be automatic and at the expense of the government, who is after all seeking the detention and fundamental right revocation. *See Gideon v. Wainwright,* 372 U.S. 335 (1963).

Plaintiffs Jane Doe #1, John Doe #3, John Doe #4, and John Doe #5 were all denied the right to counsel, as such their commitment hearings are constitutionally invalid and must be set aside.

### 4.   Plaintiffs Received Constitutionally Inadequate Notice.

Again, because of the nature of an adjudicated mental health hold -- the government is placing the detainee's mental capacity at issue – the detainee's procedural due process rights are particularly vulnerable. Failure to provide notice of appellate rights, or lifetime loss of firearm rights, or by conducting a hearing while a detainee is under the influence of hospital administered, mind-altering drugs, violates fundamental notions of fairness and due process. *Matthews v. Eldridge*, 424 U.S. 319 (1976). Plaintiffs Jane Roe #1, John Doe #3, John Doe #4, and John Doe #5 were all aggrieved by these procedural due process deficiencies.

### 5.   Conclusion: Initial Hearing for Mental Health Hold.

Through the NICS Improvement Action of 2007, the federal government imposes standards for state restoration hearings, but apparently has no standards for the hearings that can disqualify an otherwise law-abiding citizen, from exercising the right to keep and bear arms in the first place. This lack of standards, and their cumulative effect on plaintiffs Jane Roe #1, John Doe #3, John Doe #4, and John Doe #5, compel a finding that their initial hearings that placed them on an involuntary mental health hold, were constitutionally deficient and they are entitled to a finding, as a matter of law, that they are no longer subject to a lifetime prohibition on the right to keep and bear arms.

### B.  The Federal Govt Should be Estopped from Disqualifying Jane Roe #1.

Plaintiff Jane Roe #1 was "adjudicated" for a mental health hold when she was minor, more than 30 years ago.  [PSUF #2] She was honorably discharged from the

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

U.S. Army. During her service she was awarded: Army Achievement Medal, Joint Meritorious Unit Award, Army Good Conduct Medal, National Defense Service Medal, and Army Service Ribbon. [PSUF #3] She received firearms training in the United States Army and used various small arms while on active duty. The Army was aware of Jane Roe #1's "mental health" history during her enlistment. [PSUF #4] Jane Roe #1 does not currently suffer from any disqualifying mental health diagnosis. [PSUF #5]

In a case with remarkably similar facts to Jane Roe #1, the United States District Court for the Middle District of Pennsylvania decided (in part) to restore Mr. Yox's firearm rights based on his prior military service. "That this dismissive treatment of Mr. Yox's public service is ungracious is clear. But more importantly, Defendants avoid addressing the clear irony of Mr. Yox's situation. It requires a suspension of logic to believe that Mr. Yox is mentally stable enough to possess and use various types of firearms in his professional capacity, including putting his life on the line for his country while on active military duty, but is not mentally stable enough to possess a firearm for self-protection in his home." *Keyes v. Lynch,* 195 F. Supp. 3d 702, 721 (M.D. Pa. 2016).

The court went on to find that Mr. Yox had adequately and compellingly made out an as-applied Second Amendment challenge to 18 U.S.C. § 922(g)(4). *Id., at* 722.

Recall that the State of California has already admitted that – but for – her 30 year old adjudicated mental health hold, Jane Roe #1 would be eligible to purchase a firearm in California. This Court should render the same finding and disposition made by the district court in the *Keyes* case on the claims made by Jane Roe #1.

C.  **Traveling to New Jersey to Restore Rights would be an Undue Burden**.

In one sense, Jane Roe #1 is luckier than her California adjudicated co-plaintiffs. At least she has a last resort method for restoring her rights.  The state where her initial hearing for an involuntary mental health hold is New Jersey. New Jersey's state restoration program was deemed qualified in 2010 by the ATF. [PSUF #65].

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

But should interstate travel and the expenditures of time and money be necessary to exercise a fundamental right?  If Jane Roe #1 was seeking to exercise a right to reproductive services, the answer would be no. *Whole Woman's Health v. Hellerstedt,* 136 S. Ct. 2292 (2016).

Furthermore, Jane Roe #1 is a resident of California now.  She has no interest in relocating to New Jersey.  Furthermore, as a resident of California, she cannot purchase a gun in New Jersey.  *Mance v. Sessions*, 896 F.3d 699 (5th Cir. 2018), *cert denied, Mance v. Barr*, 2020 U.S. Lexis 3179 (2020). Compelling her to undertake the time, expense of interstate travel and hiring a lawyer to file an action in New Jersey would be an undue burden.

D.   **California's Restoration Procedures Meet or Exceed Federal Standards.**

California's procedures for restoring rights after an adjudicated mental health hold meet (or exceed) the federal government's standards. Because the Plaintiffs law abiding citizens and are being denied the core right to acquire a firearm, with no mental health disabilities, the Court should apply strict scrutiny to any alleged distinction between California's restoration procedure under WIC § 8103(g) and the NICS Improvement Act scheme. In applying strict scrutiny, the Court requires the Government to prove its law "furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v. FEC*, 130 S. Ct. 876, 898 (2010)

There are at least four (4) ways for someone who is disqualified from exercising firearms rights due to a mental health adjudication to have their rights restored:

1.)  Federal law provides a means for the relief of firearms disabilities, however since October 1992, ATF's annual appropriation has prohibited the expending of any funds to investigate or act upon applications for relief from Federal firearms disabilities submitted by individuals. As long as this provision is included in current ATF appropriations, the Bureau cannot act upon applications for relief from Federal firearms disabilities submitted by individuals. 18 U.S.C. 925(c); 27 CFR 478.144. As of the date of this motion, ATF's budget remains disabled in this regard.

11

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

Never-the-less, it is instructive to review the criteria for relief under these statutes and regulations. The substantive hurdles for mental health holds are:

- Three letters of recommendation; 27 CFR 478.144(c)(1)
- Written consent to examine records; 27 CFR 478.144(c)(2)
- In the case of an applicant who has been adjudicated a mental defective or committed to a mental institution, a copy of the order of a court, board, commission, or other lawful authority that made the adjudication or ordered the commitment, any petition that sought to have the applicant so adjudicated or committed, any medical records reflecting the reasons for commitment and diagnoses of the applicant, and any court order or finding of a court, board, commission, or other lawful authority showing the applicant's discharge from commitment, restoration of mental competency and the restoration of rights; 27 CFR 478.144(c)(5)
- The Director may grant relief to an applicant if it is established to the satisfaction of the Director that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety, and that the granting of the relief would not be contrary to the public interest. 27 CFR 478.144(d)
- In addition to meeting the requirements of paragraph (d) of this section, an applicant who has been adjudicated a mental defective or committed to a mental institution will not be granted relief unless the applicant was subsequently determined by a court, board, commission, or other lawful authority to have been restored to mental competency, to be no longer suffering from a mental disorder, and to have had all rights restored. 27 CFR 478.144(c)(e)

The Supreme Court upheld a refusal by the federal government to implement 18 U.S.C. § 925(c) in *United States v. Bean,* 537 U.S. 71 (2002).  The *Bean* Court required an actual adverse action on the application by the Bureau of Alcohol, Tobacco, and Firearms is a prerequisite for judicial review under 18 U.S.C.S. § 925(c). Section § 925(c) requires an applicant, as a first step, to petition the Secretary of the Treasury and establish to the Secretary's satisfaction that the applicant is eligible for relief. The Secretary, in his discretion, may grant or deny the request based on broad considerations. Only then, if the Secretary denies relief, may an applicant seek

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

12

Plaintiffs' Motion for Summary Judgment                                    *Jane Roe #1, et al., v. United States, et al.*

1  review in a district court. Holding that a failure by the agency to process an

2  application for relief, due to budget constraints imposed by Congress, was valid.

3       However, *Bean* was a pre-*Heller* and pre-*McDonald* case, which means the U.S.

4  Supreme Court did not take up the impact of this inaction by the federal government

5  on a party's Second Amendment rights. Inferior courts are bound by the "mode of

6  analysis" of the most recent holdings by the Supreme Court. *In re Stern,* 345 F.3d

7  1036, 1043 (9th Cir. 2003).  This court can, and should, order the ATF to consider

8  applications from disqualified persons for the purpose of restoring rights under 18

9  U.S.C. § 925(c), or deem any and all applications as denied and permit federally

10  disqualified applicants to make their case directly to a district court.

11  2.)   A second avenue is for the prohibited person who resides in a state has

12  participated in the NICS Improvement Act of 2007 grant program and been certified

13  as having a "qualified" relief program [PSUF #55 thru #64], is that they may petition

14  their state court for relief.  As of the date of this motion, California has chosen NOT

15  to participate in the NICS Improvement Act of 2007 grant program and is not

16  therefore listed as having a "qualified" relief program.  [PSUF #53 and #54]

17       Never-the-less, it is instructive to review the nine criteria that permit an ATF

18  finding that 34 jurisdictions have qualified relief programs. [PSUF #55 thru #65]

19       1.) State law: The relief program has been established by state statute, or

20  administrative regulation or order pursuant to state law.

21       2.) Application: The relief program allows a person who has been formally

22  adjudicated as a "mental defective"1 or committed involuntarily to a mental

23  institution2 to apply or petition for relief from the Federal firearms prohibitions

24  (disabilities) imposed under 18 U.S.C. § 922 (d) (4) and (g) (4).

25       3.) Lawful authority: A state court, board, commission, or other lawful

26  authority (per state law) considers the applicant's petition for relief. The lawful

27  authority may only consider applications for relief due to mental health adjudications

28  or commitments that occurred in the applicant state.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

Plaintiffs' Motion for Summary Judgment          *Jane Roe #1, et al., v. United States, et al.*

4.) Due process: The petition for relief is considered by the lawful authority in accordance with principles of due process, as follows:

a. The applicant has the opportunity to submit his or her own evidence to the lawful authority considering the relief application.

b. An independent decision maker—someone other than the individual who gathered the evidence for the lawful authority acting on the application—reviews the evidence.

c. A record of the matter is created and maintained for review.

5.) Proper record: In determining whether to grant relief, the lawful authority receives evidence concerning and considers the:

a. Circumstances regarding the firearms disabilities imposed by 18 U.S.C. § 922 (g)(4);

b. Applicant's record, which must include, at a minimum, the applicant's mental health and criminal history records; and

c. Applicant's reputation, developed, at a minimum, through character witness statements, testimony, or other character evidence.

6.) Proper findings: In granting relief, the lawful authority issues findings that:

a. The applicant will not be likely to act in a manner dangerous to public safety; and

b. Granting the relief will not be contrary to the public interest.

7.) De novo judicial review of a denial: The state provides for the de novo judicial review of relief application denials that includes the following principles:

a. If relief is denied, the applicant may petition the state court of appropriate jurisdiction to review the denial, including the record of the denying court, board, commission or other lawful authority.

b. In cases of denial by a lawful authority other than a state court, the reviewing court as the discretion to receive additional evidence necessary to conduct an adequate review.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.com

Plaintiffs' Motion for Summary Judgment                    *Jane Roe #1, et al., v. United States, et al.*

c. Judicial review is de novo in that the reviewing court may, but is not required to, give deference to the decision of the lawful authority that denied the application for relief.

8.) Required updates to state and federal records: Pursuant to § 102I of the NIAA, the state, on being made aware that the basis under which the record was made available does not apply, or no longer applies:

a. Updates, corrects, modifies, or removes the record from any database that the federal or state government maintains and makes available to NICS, consistent with the rules pertaining to the database; and

b. Notifies the Attorney General that such basis no longer applies so that the record system in which the record is maintained is kept up to date.

9.) Recommended procedure: It is recommended (not required) that the state have a written procedure (e.g., state law, regulation, or administrative order) to address the update requirements.

3.)   A third way to skin this cat is to petition a federal court under 18 U.S.C. § 925A for a finding of an erroneous denial of a firearm purchase based on 18 U.S.C. § 922(g) or § 922(n).  This is one of the remedies that plaintiffs have sought in this instant action.  As argued above, plaintiffs contend that they have been erroneously classified as prohibited due to the constitutional infirmities of their hearings.

But in addition to the lack of "due process" arguments, Plaintiffs John Doe #1 and John Doe #2 have also averred that the California Department of Justice has made an erroneous entry in California's mental health prohibition information system. [PSUF #42, #43, #44, #47, and #48.] Whether California is violating WIC § 8103(g)(4) by refusing to transmit a clean record to the NICS system [PSUF #47] or the state is failing to uphold its own laws in the face of federal overreach is a mystery that is at the heart of this case.

Furthermore, it is not entirely clear, based on this record, that California should not also transmit the same restoration or clearance for John Doe #3, John Doe #4, and John Doe #5.  California admits that all three of these plaintiffs are not

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

prohibited under California law from acquiring or possessing firearms. [PSUF #20, #27, #31] Now – California may be heard to make the argument that the federal government does not accept restorations by operation of law (lapse of time), but that is not entirely clear from the correspondence between the California Department of Justice and the relevant federal agencies in 2008.  [PSUF #49 thru #53]

The context for the series of emails between these NICS partners [PSUF #45 and #46] seems to hinge on whether California will seek NICS Improvement Act grants monies. The question posed by the California Department of Justice was:

> 5) If state law provides for a temporary loss of the right to possess firearms, does the expiration of that temporary time period constitute a "restoration of rights" that triggers the requirement that the state request that the record be removed from the NICS database? [PSUF #49]

The response from the relevant federal agency was:

> 5.) The requirement to remove a record is triggered only if the person is no longer subject to Federal firearms disabilities. If Federal firearms disabilities are removed upon completion or expiration of a State temporary time period (temporary loss of the right to possess a firearm under State law), i.e., restoration of core civil rights without firearms disabilities at the time of restoration, then that record should be removed from NICS. [PSUF #50]

A follow up question from the California Department of Justice asked:

> "[S]pecificially about our mental health statutes.  If I understand your correctly, this has a major impact on us. Whereas individuals in the NICS database because they were "mental defectives" used be in the index for life, not they must be removed from NICS when they [sic] state disability (5 years) expires. We will mull this information over and get back to you next week."
>
> [PSUF #51]

The reply:

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

Plaintiffs' Motion for Summary Judgment                    *Jane Roe #1, et al., v. United States, et al.*

1  "[P]erhaps our e-mail was confusing. The only change with respect to

2  Federal firearms disability imposed due to adjudications as a mental

3  defective or committed to a mental institution with regard to the States is if

4  the State has granted "relief" under a qualifying relief from disabilities

5  program that considers a person's record and reputation and has de novo

6  judicial review. This is distinguished from a procedure by which the disability

7  expires after a period of time. Perhaps we can have a conference call next

8  week." [PSUF #52]

9  One more equivocal remark:

10  "That clears it up a bit, but we would love to talk." [PSUF #53]

11  After that, the federal government closed the inquiry when it became clear that

12  California would not be pursuing NICS Improvement Act grant monies. [PSUF #54]

13  All of this invites the question: If the nine criteria mandated by the NICS

14  Improvement ACT are only applicable if the jurisdiction requests NIIA money, does

15  that leave in place a state's residual restoration procedures promulgated under that

16  States' reserved powers under the Tenth Amendment, if that particular state

17  declines to participate in the grant program? Especially given that the federal

18  government is relying on a state adjudicated disqualification in the first place. (?)

19  The minor premise missing from this inquiry is whether California's WIC § 5250

20  is a temporary suspension? Comparing consequences and restoration procedures of

21  California's adjudicated hold under § 5250 – WIC § 8103(g) [PSUF #33 thru #38] to

22  its unadjudicated hold under WIC § 5150 – WIC § 8103(f). [PSUF #39 thru #43] Both

23  provisions impose only a temporary five (5) year suspension of firearms rights. *See:*

24  *People v. Mary H.,* 5 Cal.App.5th 246 (5th Dist. Court of Appeal, 2016) (classifying

25  five-year suspension of right to keep and bear arms as "lengthy, but temporary") *Id.,*

26  *at* 257. Contrast that with California's imposition of a lifetime disqualification for a

27  second unadjudicated mental health hold if it takes place within one year of the first

28  one. WIC § 8103(f)(1)(B). [PSUF #34]

17

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

Plaintiffs' Motion for Summary Judgment          *Jane Roe #1, et al., v. United States, et al.*

1    California knows how to affirmatively impose a lifetime ban for mental health

2    findings.  Permitting the State to hide behind a dubious interpretation of federal law

3    is what makes plaintiffs' as-applied Second Amendment challenge viable and

4    ultimately a winning argument.

5    4.)   The fourth labyrinth that plaintiffs can negotiate is to mimic the plan of attack

6    from *Keyes v. Lynch,* 195 F. Supp. 3d 702 (M.D. Pa. 2016).  The plaintiffs in that case

7    faced the same circumstances as plaintiffs herein. They had obtained state relief

8    from firearm prohibitions, yet the federal government insisted that Mr. Keyes and

9    Mr. Yox remained prohibited under federal law.  Furthermore, at the time the *Keyes*

10   case was adjudicated, Pennsylvania's restoration procedure was not ATF qualified

11   under the NICS Improvement Act of 2007.[2]  The parallels to this case are uncanny.

12       And while plaintiffs herein bring this action under 18 U.S.C. § 925A, they hereby

13   also request that this Court consider their claims under "the Administrative

14   Procedures Act (APA), 5 U.S.C. § 551 *et seq.,* which generally authorizes review of

15   agency action "unlawfully withheld" or "otherwise not in accordance with law." *Id*. At

16   § 706(1) and 2(A)." *Keyes at* 710.

17       The *Keyes* court continued its analysis by comparing the existing Pennsylvania

18   restoration scheme with the criteria for a qualified program under the NICS

19   Improvement Act.  The Court found that the Pennsylvania law lacked the necessary

20   language requiring that "granting of relief would not [be] contrary to the public

21   interest."  At which point the *Keyes* Court found that the Pennsylvania law did not

22   comport with the language from the NICS Improvement Act of 2007.

23       California's WIC § 8103(g) similarly lacks the exact statutory language that

24   "granting relief would not be contrary to the public interest."  However, California

25   Appellate Courts have interpreted WIC 8103 *et seq.,* as:

26

27   _____

28   [2]  Pennsylvania's program had been approved in 2019.  See Declaration of Counsel, Exhibit H.c., titled NICS Improvement Amendments Act of 2007 List of States with Qualified 922(d)4/(g)(4) Relief Programs.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

18

Plaintiffs' Motion for Summary Judgment                    *Jane Roe #1, et al., v. United States, et al.*

**<u>Balanced against the individual's temporary loss of the right to possess firearms is the state's strong interest in protecting society from the potential misuse of firearms by a mentally unstable person</u>**. (*Rupf [v. Yan* (2000)] 85 Cal.App.4th [411,] 423 [102 Cal. Rptr. 2d 157] [noting that it is 'not unreasonable to conclude there is a significant risk that a mentally unstable gun owner will harm himself or others with the weapon']; see *Heller*, supra, 554 U.S. at p. 626 … ; *McDonald*, supra, 561 U.S. at p. [786].) **<u>Section 8103 (and its counterpart § 8102, which permits confiscation of firearms) are preventative in design; the fundamental purpose is to protect 'firearm owners and the public from the consequences of firearm possession by people whose mental state endangers themselves or others</u>**.' (*People v. One Ruger .22-Caliber Pistol* (2000) 84 Cal.App.4th 310, 315 [100 Cal.Rptr.2d 780].) These protective statutes 'limit the availability of handguns to persons with a history of mental disturbance … to protect those persons or others in the event their judgment or mental balance remains or again becomes impaired.' (*Rupf, supra*, 85 Cal.App.4th at p. 424.)

> *People v. Mary H.,* 5 Cal.App.5th 246, 258
> 5th Dist. Court of Appeal, (2016)
> [underline and bold added]

The emphasized text is an authoritative interpretation of WIC § 8103 *et seq.,* that substitutes for the NICS Improvement Act of 2007 language that state restoration procedures weigh the "public interest." A state court's interpretation of its own statutes is binding on federal courts unless the law is inconsistent with the federal constitution. *United States v. Ramos,* 39 F.3d 219, 220 (9th Cir. 1994).

The defendants should be put their proof and present evidence of a compelling government interest that mandates a distinction between California's restoration procedure under WIC § 8103 *et seq.,* and the NICS Improvement Act of 2007, with or without California participating in grant program.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.com

The recent Ninth Circuit opinion in *Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020) finding the State of Washington's restoration program deficient can be distinguished, because California standards are more stringent than Washington's and probably more stringent than the federal standards.

Washington required that the person "no longer presents a substantial danger to himself or herself, or the public." By contrast, the federal standard requires a determination that "the person will not be likely to act in a manner dangerous to public safety." In other words, Washington's standard was "substantial danger" as contrasted with the federal standard of mere "danger."

California's law beats both standards and requires a finding that the individual "would be likely to use firearms in a safe and lawful manner." This is broader than a mere finding that the person no longer poses a danger. And given California's notoriously strict gun control laws, compliance with which is mandated by a Superior Court's finding under § 8103(g)(4), a "safe and lawful" standard is "heads and shoulders" above a merely "not dangerous" standard.

Nor is California's unique terminology somehow vague or ambiguous. California itself has already construed this standard. In a challenge to Welfare and Institutions Code § 8103, a court of appeals rejected a claim that "the phrase "would not be likely to use firearms in a safe and lawful manner" is so vague as to allow arbitrary and discriminatory enforcement." *People v. Mary H.* (2016) 5 Cal.App.5th 246.

The rest of the nine criteria mandated by the NICS Improvement Act of 2007 are easily met by California's WIC § 8103(g) statute.

Donald Kilmer
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

Plaintiffs' Motion for Summary Judgment                    *Jane Roe #1, et al., v. United States, et al.*

Assuming *arguendo* the Court does not find WIC 8103(g) substantially similar to the NICS Improvement Act criteria, this court should still follow the road map of the *Keyes* Court and then conduct the same Second Amendment constitutional as-applied analysis if the Court finds that plaintiffs have no statutory relief available to them.

E. **Without a Statutory Remedy, This Court Must Conduct an As-Applied Second Amendment Analysis.**

If this Court cannot find a way to grant the plaintiffs the relief, they seek using the arguments set forth above, then is must turn to a pure Second Amendment, as-applied challenge to their circumstances.  The lead case in this Circuit is still *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), *pet. cert. denied*, *Chovan v. United States*, 135 S.Ct. 187 (2014). *Chovan's* now familiar two-step inquiry is to (1) ask whether the challenged law burdens conduct protected by the Second Amendment, and (2) if so, to apply an appropriate level of scrutiny. *Id.,* 1136.

In *Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020), the court took up a similar challenge that considered the deficiencies of Washington state's restoration procedure and the lack of statutory remedy under 18 U.S.C. § 925(c), and remarkably came to the conclusions that while residents of 34 other states and jurisdictions can apply to have their rights restored after an adjudicated mental health hold, but that residents of Washington must rely on the whim of its legislature to draft a new statute and apply for a NCIS grant, or wait upon the whim of Congress to fund § 925(c). *Id., at* 1120-21.  Not-with-standing the superficial treatment of fundamental rights, the *Mai* Court did propose to use an intermediate standard of review. *Id.,* 1115.

21

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

Plaintiffs' Motion for Summary Judgment                    *Jane Roe #1, et al., v. United States, et al.*

The window left open for plaintiffs in *Mai*, is: "[§ 922(g)(4)] applies only to those who were found, <u>through procedures satisfying due process</u>." *Id.,* 1121. (emphasis added) As noted above, there were several due process deficiencies presented by the plaintiffs regarding their hearings, and at least one crucial statutory flaw that undermines WIC § 5250 hearings – namely the use of a probable cause evidentiary standard, that deprives someone of their liberty and the right to keep and bear arms. And as noted above, *Addington v. Texas,* 441 U.S. 418 (1979) compels a different outcome for the plaintiffs in this case, as the Supreme Court has already balanced the interests and found any evidentiary standard less than "clear and convincing" to be constitutionally infirm.

To preserve the record, Plaintiffs also make a good faith argument to the effect that *Mai v. United States,* 952 F.2d 1106 (9th Cir. 2020) was wrongly decided and ought to be overturned. Furthermore, Plaintiffs similarly aver that *Chovan v. United States,* 735 F.3d 1127 (9th Cir. 2013) was similarly wrongly decided and that the court should apply either a strict scrutiny test or a history/text/tradition approach to adjudicating the claims of law-abiding citizens seeking to restore their rights after an adjudicated mental health hold. *See e.g., Heller v. District of Columbia,* 670 F.3d 1244, 1269 (DC Circuit Court of Appeals, 2011), Kavanaugh, Dissenting.

F.   **The NICS Improvement Act of 2017 Violates Equal Protection**

The Supreme Court applies strict scrutiny to legislation that impinges on a fundamental right. *Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("classifications affecting fundamental rights are given the most exacting scrutiny" …).

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

In this case, the NICS Improvement Act grant process has captured 34 other states with a promise of money, in exchange for that jurisdiction adopting the talismanic language of the federal government to restore rights. But can a federal statutory scheme coupled with the neglect of an individuals' state, result in the loss of a fundamental right?  If California sits on its hands because it prefers the policy of a lifetime prohibition, but hasn't the political will to enact their own, are California residents just out of luck?  Would that same standard be applied to voting rights? Marriage laws? Abortion rights?  Not likely.  The right to keep and bear arms is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights.  *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

## VI.   CONCLUSION

The result obtained in *Mai v. United States*, is unsatisfactory. But this case is different. A right without a remedy is not just broken jurisprudence, it is broken hearted indifference.

> In *District of Columbia v. Heller*, 554 U.S. 570 (2008), this Court could find "no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach." *Id.*, at 634, regardless of who performs the balancing test. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad.

> *Heller*, 554 U.S. at 634.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

23

Many of the Circuit Courts are now openly contemptuous of the SECOND AMENDMENT and firearm owners in general. This has been well documented and noted by sitting justices and other courts. *See, e.g., Peruta v. California*, 137 S. Ct. 1995, 1997, 1999 (2017) (Thomas, J., dissenting from denial of cert.) ("The approach taken by the en banc court is indefensible, and the petition raises important questions that this Court should address."; "The Court's decision to deny certiorari in this case reflects a distressing trend: the treatment of the Second Amendment as a disfavored right."); *Voisine v. United States*, 136 S. Ct. 2272, 2291 (2016) (Thomas, J., dissenting) ("We treat no other constitutional right so cavalierly"); *Friedman v. Highland Park*, 136 S. Ct. 447 (2015) (Thomas, J., dissenting from denial of certiorari) ("Because noncompliance with our Second Amendment precedents warrants this Court's attention as much as any of our precedents, I would grant certiorari in this case."); *cf. Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016) (GVR of State court opinion that gave essentially no respect to this Court's decision in *Heller*); id. at 1030, 1033 (Alito, J., concurring) ("Although the Supreme Judicial Court [of Massachusetts] professed to apply *Heller*, each step of its analysis defied *Heller's* reasoning."; "The lower court's ill treatment of *Heller* cannot stand."); *Silveira v. Lockyer*, 328 F.3d 567, 568-69 (2003) (Kozinski, J., dissenting from the denial of re-hearing en banc) ("It is wrong to use some constitutional provisions as spring-boards for major social change while treating others like senile relatives to be cooped up in a nursing home until they quit annoying us. * * * Expanding some to gargantuan proportions while discarding others like a crumpled gum wrapper is not faithfully

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.
com

Plaintiffs' Motion for Summary Judgment                    *Jane Roe #1, et al., v. United States, et al.*

applying the Constitution; it's using our power as federal judges to constitutionalize our personal preferences."), *cert. denied*, 540 U.S. 1046 (2003).

The shabby treatment of Second Amendment by the circuit courts is now inspiring a contraction of other constitutional rights that are linked to keeping and bearing arms. This Court must emphatically reject that line of reasoning.

This Court can and should find that a mere probable cause evidentiary standard in a WIC § 5250 hearing is insufficient to protect fundamental rights, where the hearing might result in barring someone from exercising a fundamental for the rest of their life. This Court can and should hold its own evidentiary hearing into the mental competence of each plaintiff by finding that the federal government's refusal to fund § 925(c) is a de facto denial of a right, especially for people who live in California and can't get their rights restored in any other way.

This Court can and should order the California Department of Justice to transmit the restoration notices of John Doe #1 and John Doe #2 to the NICS system, and let the federal government document its refusal, rather than relying on a shell game between the defendants. This Court can and should find that the federal defendants are estopped from disqualifying Jane Roe #1 from owning a gun when she used one in service to her country. This Court can and should find that CA's restoration procedure is safe and protects the public's interest and subject any government claims to the contrary to heightened scrutiny.

Respectfully Submitted on March 22, 2021.

/s/ Donald Kilmer,
Attorney for Plaintiffs

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge
Road, Caldwell, ID
Vc: 408/264-8489
don@dklawoffice.com