1   Rob Bonta, State Bar No. 202668
    Attorney General of California
2   Anthony R. Hakl, State Bar No. 197335
    Supervising Deputy Attorney General
3   Nelson R. Richards, State Bar No. 246996
    Ryan A. Hanley, State Bar No. 330729
4   Deputy Attorneys General
      1300 I Street, Suite 125
5     P.O. Box 944255
      Sacramento, CA 94244-2550
6     Telephone:  (916) 210-7867
      Fax:  (916) 324-8835
7     E-mail:  Nelson.Richards@doj.ca.gov
    *Attorneys for Defendant the California Attorney*
8   *General*

9                   IN THE UNITED STATES DISTRICT COURT

10                FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13  **JANE ROE #1, et al,**                    1:19-cv-00270

14                              Plaintiffs,

15        v.                                    **OPPOSITION TO PLAINTIFFS'**
                                                **MOTION FOR SUMMARY JUDGMENT**
16                                              **and MEMORANDUM OF POINTS AND**
                                                **AUTHORITIES IN SUPPORT OF THE**
17  **UNITED STATES OF AMERICA, et al,**        **CROSS-MOTION FOR SUMMARY**
                                                **JUDGMENT OF DEFENDANT**
18                              Defendants.     **CALIFORNIA ATTORNEY GENERAL**

19                                              Date:      Aug. 17, 2021
                                                Time:      9:30 a.m.
20                                              Judge:     Hon. Dale A. Drozd

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

Statutory Framework ...................................................................................................... 2

      A.   California Procedures for the Involuntary Treatment of People Who Have a Mental Health Disorder That Makes Them Dangerous ................. 2

      B.   State and Federal Firearms Prohibitions for People Who Have Had a 5250 Hold ....................................................................................... 3

           1.    5250 Holds and Background Checks ............................................. 4

           2.    California's Temporary Prohibition on Firearms Ownership ........ 5

           3.    Federal Lifetime Prohibition on Firearms Ownership ................... 6

Factual Background ........................................................................................................ 6

Legal Standard .............................................................................................................. 10

Argument ...................................................................................................................... 11

    I.     Plaintiffs' Newly Raised Facial Due Process Challenge to California Welfare and Institutions Code Section 5250 Suffers from Numerous Legal Defects.............................................................................................. 11

      A.   The FAC Does Not Assert a Facial Challenge to Section 5250, or any California Law............................................................................. 11

      B.   Plaintiffs' Challenge to Section 5250 Is Barred by Sovereign Immunity ......................................................................................... 12

      C.   Plaintiffs Lack Standing to Bring a Facial Challenge to Section 5250................................................................................................... 14

      D.   A Facial Challenge to Section 5250 Would Fail on the Merits ............... 16

    II.    Plaintiffs' As-Applied Due Process Challenges Also Fail as a Matter of Law.................................................................................................... 18

    III.   The California Attorney General Is Entitled to Judgment as a Matter of Law on the Other Claims in the FAC .................................................... 20

      A.   Plaintiffs Have Not Alleged a Second Amendment Claim Against the California Attorney General............................................................ 20

      B.   Plaintiffs' Fifth Cause of Action Fails as a Matter of Law ...................... 21

      C.   Plaintiffs' Claims for Money Damages Are Barred by Sovereign Immunity ......................................................................................... 22

Conclusion .................................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Addington v. Texas*
   441 U.S. 418 (1979) ................................................................................ 11, 16, 17

*Aholelei v. Dep't of Pub. Safety, State of Haw.*
   488 F.3d 1144 (9th Cir. 2007) ........................................................................... 21

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ......................................................................................... 10

*Bartz v. FBI*
   Civ. No. 19-1577, 2020 WL 7211060 (D. Minn. Oct. 26, 2020) .......................... 20

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ......................................................................................... 10

*Coalition to Defend Affirmative Action v. Brown*
   674 F.3d 1128 (9th Cir. 2012) ........................................................................... 12

*Commc'ns Telesystem Int'l v. Cal .Pub. Utils. Comm'n*
   196 F.3d 1011 (9th Cir. 1999) ........................................................................... 19

*E. Bay Sanctuary Covenant v. Trump*
   950 F.3d 1242 (9th Cir. 2020) ........................................................................... 15

*Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*
   249 F.3d 1132 (9th Cir. 2001) ........................................................................... 10

*Flanagan v. Harris*
   No. LACV1606164JAKASX, 2017 WL 729788 (C.D. Cal. Feb. 23, 2017) ............ 19

*Hedges v. Wesley*
   No. CV 15-0713 CAS (SS), 2016 WL 1266867 (C.D. Cal. Mar. 17, 2016) ............ 19

*In re Azzarella*
   207 Cal. App. 3d 1240 (1989) ........................................................................ 3, 16

*Kentucky v. Graham*
   473 U.S. 159 (1985) ......................................................................................... 21

*L.A. Cty. Bar Ass'n v. Eu*
   979 F.2d 697 (9th Cir. 1992)......................................................................... 12, 18

ii

1

### TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
    624 F.3d 1083 (9th Cir. 2010) ................................................................. 15

4

5

*Long v. Van de Kamp*
    961 F.2d 151 (9th Cir. 1992) ................................................................. 12

6

*LSO, Ltd. v. Stroh*
    205 F.3d 1146 (9th Cir. 2000) ........................................................... 14, 18

7

8

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ......................................................................... 13, 14

9

10

*Mai v. United States*
    952 F.3d 1106 (9th Cir. 2020) ........................................................ 1, 6, 20

11

*Masters v. Becerra*
    No. CV 19-02030-MWF, 2019 WL 4543103 (C.D. Cal. June 18, 2019) .............................. 13

12

13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
    475 U.S. 574 (1986) ............................................................................. 10

14

*Penn-Star Ins. Co. v. Zenith Ins. Co.*
    436 F. Supp. 3d 1367 (E.D. Cal. 2020) ................................................ 10

15

16

*Pennhurst State Sch. & Hosp. v. Halderman*
    465 U.S. 89 (1984) ............................................................................... 12

17

18

*Pervez v. Becerra*
    No. 2:18-cv-02793-KJM-KJN, 2019 WL 2715621 (E.D. Cal. June 28, 2019) ...................... 13

19

*Roe #1 v. United States*
    1:19-cv-00270-DAD-BAM, 2021 WL 1122441 (E.D. Cal. Mar. 24, 2021) ............... 6, 10, 11

20

21

*S. Pac. Transp. Co. v. City of Los Angeles*
    922 F.2d 498 (9th Cir. 1990) ................................................................. 12

22

23

*San Diego Cty. Gun Rights Comm. v. Reno*
    98 F.3d 1121 (9th Cir. 1996) ................................................................. 15

24

*Snoeck v. Brussa*
    153 F.3d 984 (9th Cir. 1998) ................................................................. 12

25

26

*Snyder v. United States*
    No. 18-5504 RJB, 2019 WL 5592948 (W.D. Wash. Oct. 30, 2019) ...................... 21

27

28

# TABLE OF AUTHORITIES
### (continued)

Page

*Teixeira v. County of Alameda*
 822 F.3d 1047, 1052 (9th Cir. 2018)..................................................................... 19

*United States v. Graf*
 610 F.3d 1148 (9th Cir. 2010)............................................................................... 17

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*
 454 U.S. 464 (1982)............................................................................... 13, 14, 18

*Wasco Prods., Inc. v. Southwall Tech., Inc.*
 435 F.3d 989 (9th Cir. 2006)................................................................................. 11

*Ex parte Young*
 209 U.S. 123 (1908)........................................................................... 12, 13, 18

**STATUTES**

United States Code, Title 18
 § 922(b)(3) ............................................................................................................ 14
 § 922(d)(4) ...................................................................................................... 4, 5, 6
 § 922(g) ................................................................................................................. 20
 § 922(g)(4) ..................................................................................................... *passim*
 § 922(t)(1) ............................................................................................................... 4
 § 922(t)(3) ............................................................................................................... 4
 § 925A................................................................................................... 10, 20, 21

United States Code, Title 34
 § 40915.................................................................................................................... 6

California Penal Code
 § 26845.................................................................................................................. 14
 § 27500.............................................................................................................. 4, 5
 § 28220.................................................................................................................... 4
 § 28220(b)............................................................................................................... 4
 § 30305.................................................................................................................... 4

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

California Welfare and Institutions Code

4

    §§ 5000-5556 ............................................................................................ *passim*

    § 5001 .......................................................................................................... 15

5

    § 5008(n) ................................................................................................... 5, 18

    § 5150 ....................................................................................................... 2, 18

6

    § 5250 ................................................................................................... *passim*

    § 5250(a)-(c) .................................................................................................. 2

7

    § 5251 ............................................................................................................ 2

    § 5252 ....................................................................................................... 2, 17

8

    § 5254 .................................................................................................... 2, 3, 17

9

    § 5254.1 ............................................................................................ 2, 3, 16, 18

    § 5255 ....................................................................................................... 3, 17

10

    § 5256 ............................................................................................................ 3

    § 5256.1 ......................................................................................................... 3

11

    § 5256.2 ......................................................................................................... 3

    § 5256.3 ......................................................................................................... 3

12

    § 5256.4 ......................................................................................................... 3

13

    § 5256.4(a)(1) ............................................................................................ 3, 17

    § 5256.4(a)(2)-(5) .......................................................................................... 3

14

    § 5256.4(c) .................................................................................................... 3

    § 5256.5 ......................................................................................................... 3

15

    § 5256.6 ................................................................................................... 11, 16

    § 5275 .................................................................................................... 3, 16, 18

16

    §§ 5275-76 ..................................................................................................... 3

17

    § 5276 ....................................................................................................... 3, 17

    § 8103 ................................................................................................... *passim*

18

    § 8103(f)(1)(A) .............................................................................................. 4

    § 8103(f)(1)(B) .............................................................................................. 4

19

    § 8103(f)(3) ............................................................................................... 5, 17

20

    § 8103(g)(1)(i) ........................................................................................... 4, 5

    § 8103(g)(2)(A) .............................................................................................. 4

21

    § 8103(g)(4) ................................................................................................... 6

    § 8103(g)(5) ................................................................................................... 6

22

    § 8103(g)(6) ................................................................................................... 6

    § 8103(g)(7) ................................................................................................... 6

23

**CONSTITUTIONAL PROVISIONS**

24

25

United States Constitution

    Amendment XI ............................................................................................ 12

26

    Article III ................................................................................................... 13

27

28

v

# TABLE OF AUTHORITIES
### (continued)

**Page**

**COURT RULES**

9th Circuit Rules
    Rule 35-3 ............................................................................................................. 19

Federal Rules of Civil Procedure
    Rule 25(d) ............................................................................................................... 9
    Rule 56(a) .............................................................................................................. 10

**OTHER AUTHORITIES**

California Statutes 1982, Chapter 1598 ................................................................... 16

Code of Federal Regulations, Title 27
    § 478.99(a) ............................................................................................................ 14

Code of Federal Regulations, Title 28
    § 25.5 ....................................................................................................................... 4
    § 25.6 ....................................................................................................................... 4

**INTRODUCTION**

Federal law imposes a lifetime prohibition on the ownership of firearms by certain people who have received involuntary treatment for mental health disorders that make them dangerous. The Ninth Circuit recently upheld that lifetime prohibition, codified in 18 U.S.C. § 922(g)(4), against a Second Amendment challenge in *Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020), *cert. denied*, No. 20-819, 2021 WL 1602649 (Apr. 26, 2021). Plaintiffs, six people who are subject to the lifetime prohibition in § 922(g)(4), want to relitigate that issue. That much is clear. It is also clear that all parties agree that § 922(g)(4) is the only reason that Plaintiffs cannot possess firearms—no California law currently prevents any of them from possessing a firearm. And Plaintiffs admitted in discovery that the First Amended Complaint does not challenge any California law. Plaintiffs thus have no reason to name the California Attorney General in this case, and this Court should grant summary judgment in his favor.

Plaintiffs' ancillary legal theories are less clear. Plaintiffs now argue, for the first time on summary judgment and in contradiction to their discovery responses, that they are, in fact, bringing a facial challenge to California Welfare and Institutions Code section 5250, the provision under which five of them received involuntary treatment. They contend that the law does not comply with constitutional due process requirements. This Court should reject the claim outright because it was not pleaded in the FAC. But even if it had been, the California Attorney General does not administer the law or participate in the treatment process. Sovereign immunity and lack of standing thus bar this Court from adjudicating the claim. The claim also fails on the merits because California law affords substantial due process protections to people who receive involuntary mental health treatment. Three Plaintiffs assert procedural deficiencies in their long-since-concluded individual mental health proceedings. The California Attorney General was not involved in these proceedings, however. So sovereign immunity and lack of standing again foreclose these claims, as do other legal defects. The remainder of Plaintiffs' theories, to the extent there are any and the California Attorney General understands them, are not legally viable.

This Court should therefore grant this cross-motion and enter judgment in favor of the California Attorney General.

**STATUTORY FRAMEWORK**

**A.    California Procedures for the Involuntary Treatment of People Who Have a Mental Health Disorder That Makes Them Dangerous**

California prohibits certain people who have mental health disorders from possessing firearms. Cal. Welf. & Inst. Code § 8103. This case involves people who have been involuntarily taken into custody for evaluation and treatment of a mental health disorder that makes them dangerous to others or themselves. First Am. Compl. (FAC) ¶¶ 3-10, ECF No. 36. The Lanterman-Petris-Short (LPS) Act establishes procedures that mental health facilities must follow when providing involuntary treatment. Cal. Welf. & Inst. Code §§ 5000-5556. A mental health facility may take a person into custody for up to 72 hours if a mental health disorder makes that person a danger to himself or others. *Id.* § 5150. This is often called a "5150 hold," after the California Welfare and Institutions Code section that authorizes it. At the end of the 72-hour period, the mental health facility may certify the person for up to 14 days of intensive treatment. *Id.* § 5250. This is often called a "5250 hold."

To certify a patient for purposes of a 5250 hold, the facility must conclude that the person has a mental health disorder that makes him dangerous to himself or others, that the facility satisfies the LPS Act requirements for providing treatment, and that the person has been advised that he needs treatment, but has been unwilling or unable to voluntarily accept treatment. *Id.* § 5250(a)-(c). The process includes a number of procedural safeguards. The facility's determination is subject to review in a hearing or, upon the patient's election, review by a court. *Id.* §§ 5254, 5254.1. The facility must provide the patient with a notice of certification signed by two people, one of whom must be a physician or licensed psychologist with a doctoral degree and at least five years of relevant postgraduate experience. *Id.* §§ 5251, 5252, 5254. The notice must detail the "specific facts" that form the basis for the medical professional's conclusions. *Id.* § 5252. At the same time the facility provides the notice, it must also inform the patient of his right to a certification review hearing and judicial review, including the right to counsel. *Id.* §§ 5252, 5254, 5254.1. In addition, as soon as practicable after certification, the patient must meet

2

1   with an attorney or patient advocate, who will explain the commitment process, answer questions,

2   and help prepare for the certification review hearing. *Id.* § 5255.

3       The certification review hearing must be held within four days of the certification. *Id.*

4   §§ 5254, 5256. The hearing is informal, yet adversarial. *See id.* § 5256.4. A neutral referee or

5   hearing officer presides over the hearing. *Id.* § 5256.1. The facility, local district attorney, or

6   county counsel presents evidence. *Id.* § 5256.2. The patient has a right to attend the hearing and to

7   receive assistance from an attorney or a patient advocate. *Id.* §§ 5256.3, 5256.4(a)(1). The patient

8   also has the right to present evidence, to question people presenting evidence in support of the

9   certification decision, and to have facility staff attend the hearing. *Id.* § 5256.4(a)(2)-(5). Patients

10  may identify people, including family, whom they want notified of the hearing, but they also have

11  the right to not have family notified. *Id.* § 5256.4(c). If the facility cannot establish probable

12  cause that the patient poses a danger to others or to himself, the facility may no longer detain the

13  patient. *Id.* § 5256.5.

14      Patients may obtain judicial review of a 5250 hold through a writ of habeas corpus. *Id.*

15  §§ 5254.1, 5275. Either the patient or the patient's attorney or advocate may request release. *Id.*

16  §§ 5275. The facility must then provide a request-for-release form and, as soon as possible,

17  inform the court that the request has been made. *Id.* §§ 5275-76. Both the facility staff and the

18  court must notify the patient of his right to counsel. *Id.* § 5276. And if the patient requests

19  counsel, the court will immediately appoint the public defender or other attorney to represent the

20  patient. *Id.* Once the patient, acting alone or through an attorney, initiates the habeas corpus

21  process, the court has two court days to hold a hearing. *Id.* If the court finds that the patient is not

22  a danger to others or to himself as a result of a mental health disorder, it will order the patient's

23  immediate release. *Id.* § 5276. The facility bears the burden of proof by a preponderance of the

24  evidence. *In re Azzarella*, 207 Cal. App. 3d 1240, 1251 (1989).

25  **B.   State and Federal Firearms Prohibitions for People Who Have Had a 5250 Hold**

26      California and federal law each place restrictions on the ability of people who have been

27  subject to a 5250 hold to purchase and possess firearms. Federal law places a lifetime prohibition

28  on such people. 18 U.S.C. § 922(g)(4). California law places a five-year prohibition on people

3

1    who have had a 5250 hold. Cal. Welf. & Inst. Code § 8103(g)(1)(i); *see also id.* § 8103(f)(1)(A)

2    (placing same restriction on those subject to a 5150 hold). A person who has multiple mental

3    health holds in a single year is subject to a lifetime prohibition. *Id.* § 8103(f)(1)(B). Possessing a

4    firearm in violation of this prohibition is a crime. Cal. Penal Code § 30305. These federal and

5    state laws prohibit not only the possession of firearms by people who have been subject to a 5250

6    hold, but also the sale or transfer of firearms to those people. 18 U.S.C. § 922(d)(4); Cal. Penal

7    Code § 27500.

8    **1. 5250 Holds and Background Checks**

9        Federal and state law rely in part on background checks to prevent prohibited people from

10   getting guns. 18 U.S.C. § 922(t)(1); Cal. Penal Code § 28220. Federal law authorizes states to

11   administer the federal background check process, in lieu of the Federal Bureau of Alcohol,

12   Tobacco, Firearms and Explosives, if they do so concurrently with their own background check

13   process. *See* 18 U.S.C. § 922(t)(3); 28 C.F.R. § 25.6. States that elect this procedure are called

14   "point of contact" states. 28 C.F.R. § 25.5. California has long served as a point of contact state,

15   and, since the enactment of Proposition 16 in 2016, the California Department of Justice has been

16   required to serve as one. Cal. Penal Code § 28220(b).

17       California's background check relies on several state databases and the federal National

18   Instant Criminal Background Check System (NICS). Cal. Penal Code § 28220. These systems

19   include disqualifying mental health records. After a mental health facility certifies a person for

20   treatment under California Welfare and Institutions Code section 5250, it has 24 hours to notify

21   the California Department of Justice using the Department's online Mental Health Reporting

22   System. Cal. Welf. & Inst. Code § 8103(g)(2)(A). The system records the facility's name and

23   contact information, as well as the name and other identifying information on the person subject

24   to the 5250 hold. Def. Cal. Att'y Gen.'s Statement of Undisp'd Facts in Supp. of Cross-Mot. for

25   Summ. J. (Cal. AG's Undisp'd Facts) #1. The system automatically creates an entry in another

26   system called the Mental Health Firearms Prohibition System. AG's Undisp'd Facts #2. Once

27   information enters the Mental Health Firearms Prohibition System, the system automatically

28   creates a record in NICS, resulting in an entry in both systems. Cal. AG's Undisp'd Facts #3.

4

Def. Cal. Att'y Gen.'s Summ. J. Br. (1:19-cv-00270)

1   From that point on, the person cannot lawfully possess a firearm, and licensed vendors cannot

2   lawfully sell them one. *See* 18 U.S.C. §§ 922(d)4), (g)(4); Cal. Welf. & Inst. Code

3   § 8103(g)(1)(i); Cal. Penal Code § 27500.

4         Neither the Bureau of Firearms specifically, nor the California Department of Justice

5   generally, participates in the 5250 hold process. Cal. AG's Undisp'd Facts #4. Under the LPS

6   Act, the process is administered by local mental health facilities. Cal. Welf. & Inst. Code

7   §§ 5008(n), 5250; *see generally* Cal. Welf. & Inst. Code §§ 5000-5556. As a result, the Bureau of

8   Firearms has no way to independently assess assertions of error by a person who has an entry in

9   the system. Cal. AG's Undisp'd Facts #5. All it has are the entries in its databases, which contain

10  information entered by mental health facilities. Cal. AG's Undisp'd Facts #5. People who believe

11  that a mental health facility has entered erroneous information into the Mental Health Reporting

12  System may address their concern with the facility. Cal. AG's Undisp'd Facts #6. A mental health

13  facility that has submitted incorrect or erroneous information into the Mental Health Reporting

14  System may correct the information or remove the entry in its entirety. Cal. AG's Undisp'd

15  Facts #7. This will, in turn, remove the entry from the Mental Health Firearms Prohibition

16  System. Cal. AG's Undisp'd Facts #7. The California Department of Justice does not have a

17  policy of second guessing or disputing changes in the Mental Health Reporting System made by

18  mental health facilities. Cal. AG's Undisp'd Facts #8.

19      **2.  California's Temporary Prohibition on Firearms Ownership**

20        When a facility releases someone from a 5250 hold, it must inform him or her that

21  California Welfare and Institutions Code section 8103 prohibits them from buying or possessing a

22  firearm. Cal. Welf. & Inst. Code § 8103(f)(3). Since 1999, the statute has required that facilities

23  provide patients with a form called a "Patient Notification of Firearm Prohibition and Right to

24  Hearing Form." *Id.* A copy of the current version of that form (BOF 4009B) is attached as

25  Exhibit 1 to the Declaration of Gilbert Mac in Support of Defendant California Attorney

26  General's Cross-Motion for Summary Judgment (Mac Decl.). The form notifies people that

27  California law prohibits them from possessing a firearm for five years. *See also* Cal. Welf. & Inst.

28  Code § 8103(g)(1)(i). It also informs them of their right to request a confidential hearing in

5

Def. Cal. Att'y Gen.'s Summ. J. Br. (1:19-cv-00270)

1  superior court for relief from the firearms prohibition, which people may request by filing another

2  form called a "Request for Hearing for Relief from Firearms Prohibition" form. *See also id.*

3  § 8103(g)(4). A copy of that form (BOF 4009C) is attached as Exhibit 2 to the Mac Declaration.

4  　　Relief from firearms prohibition may be sought in the superior court of the county where

5  the person resides. *Id.* § 8103(g)(5). The matter must be set for hearing within 60 days. *Id.*

6  Although the person initiates the proceeding, the State of California, represented by the district

7  attorney, is the plaintiff. *Id.* The government must show, by a preponderance of the evidence, that

8  the person "would not be likely to use firearms in a safe and lawful manner." *Id.* § 8103(g)(6). If

9  the government fails to meet its burden, the court must order that the person is not subject to the

10  five-year prohibition on firearms purchasing and possession and transmit that order to the

11  California Department of Justice. *Id.* § 8103(g)(7). On receipt of the order, the Department must

12  delete any reference to the prohibition in the Mental Health Reporting System and Mental Health

13  Firearms Prohibition System. *Id.*

14  　　**3.  Federal Lifetime Prohibition on Firearms Ownership**

15  　　The federal lifetime prohibition on possessing firearms by people subject to a 5250 hold

16  remains in effect, despite a state court providing relief or the prohibition expiring after five years.

17  *See* 18 U.S.C. § 922(g)(4). The NICS Improvement Act of 2007 created a procedure by which the

18  federal lifetime prohibition may be lifted, if the state program meets certain requirements. *Mai*,

19  952 F.3d at 1111-12 (discussing requirements and 34 U.S.C. § 40915). Here, the parties agree,

20  and this Court has recognized, that California is not qualified to participate in this program. Pls.'

21  Statement of Undisp'd Facts in Supp. of Mot. for Summ. J. (Pls.' Statement of Undisp'd Facts)

22  #54, ECF No. 64; *Roe #1 v. United States*, 1:19-cv-00270-DAD-BAM, 2021 WL 1122441, at *2

23  (E.D. Cal. Mar. 24, 2021) (noting California law does not qualify).

24  　　　　　　　　　　**FACTUAL BACKGROUND**

25  　　The individual Plaintiffs are six people who are prohibited by §§ 922(d)(4) and (g)(4) from

26  purchasing or possessing firearms for life. Pls.' Statement of Undisp'd Facts #1.[1] At the time that

27

28  　　　[1] Two additional Plaintiffs, Jane Roe #2 and John Doe #6, have been dismissed from the case. Dismissal of John Doe #6, ECF No. 56; Dismissal of Jane Roe #2, ECF No. 75.

6

they filed the Complaint, no Plaintiff was subject to the state prohibition on firearms possession in California Welfare and Institutions Code section 8103, and no Plaintiff is currently prohibited by California law from possessing a firearm. Pls.' Statement of Undisp'd Facts #7, 11, 15, 20, 27, 31. Each of the six individual Plaintiffs has received involuntary treatment from a mental health facility.

**Jane Roe #1.** Jane Roe #1 is a California resident who is subject to a lifetime prohibition on buying or possessing firearms as a result of a commitment in New Jersey in the late 1980s. *See* Pls.' Statement of Undisp'd Facts #2, 6. She does not contest that, at the time of her commitment, she satisfied the criteria under New Jersey law for involuntary treatment. *See generally* Pls.' Statement of Undisp'd Facts #2-7. Because her treatment occurred in New Jersey, she does not have an entry in California's Mental Health Firearms Prohibition System and no California law currently prohibits her from possessing a firearm. Cal. AG's Undisp'd Facts #9. The federal lifetime prohibition is the sole reason she cannot purchase or possess a firearm. Pls.' Statement of Undisp'd Facts #1, 7.

**John Doe #1.** John Doe #1 was subject to a 5250 hold in September 2011 and, as a result, federal law prohibits him from purchasing or possessing a firearm for life. Pls.' Statement of Undisp'd Facts #8, 11. He does not contest that he met that criteria for a 5250 hold at the time of his commitment—i.e., that he was a danger to himself or others or is otherwise gravely disabled as a result of a mental health disorder or impairment by chronic alcoholism. *See* Pls.' Statement of Undisp'd Facts #8-11. In January 2013, John Doe #1 successfully petitioned the Sacramento County Superior Court for relief from his California firearms prohibition. Pls.' Statement of Undisp'd Facts #9. Since that time, he has not had an entry in California's Mental Health Firearms Prohibition System, and no California law currently prohibits him from possessing a firearm. Cal. AG's Undisp'd Facts #10. The federal lifetime prohibition is the sole reason he cannot purchase or possess a firearm. Pls.' Statement of Undisp'd Facts #1, 11.

**John Doe #2.** John Doe #2 was subject to a 5250 hold in April 2015 and, as a result, federal law prohibits him from purchasing or possessing a firearm for life. Pls.' Statement of Undisp'd Facts #12, 15. Like John Doe #1, John Doe #2 does not contest that, at the time of his 5250 hold,

7

he had a mental health disorder that made him a danger to himself or others or otherwise gravely disabled. *See* Pls.' Statement of Undisp'd Facts #12-15. In December 2016, John Doe #2 successfully petitioned the San Diego County Superior Court for relief from his California firearms prohibition. Pls.' Statement of Undisp'd Facts #13. Since that time, he has not had an entry in California's Mental Health Firearms Prohibition System, and no California law currently prohibits him from possessing a firearm. Cal. AG's Undisp'd Facts #11. The federal lifetime prohibition is the sole reason he cannot purchase or possess a firearm. Pls.' Statement of Undisp'd Facts #1, 15.

**John Doe #3.** John Doe #3 was placed on a mental health hold in 2012 that resulted in the mental health facility conducting a certification review hearing. Pls.' Statement of Undisp'd Facts #16. John Doe #3 asserts that at the hearing he was provided a patient advocate who was not a lawyer, that he was not appointed a conservator, that he was not notified of the "full consequences" of the hearing or of any appellate rights, and that he was under the influence of hospital administered psychotropic drugs that impaired his perception." Pls.' Statement of Undisp'd Facts #11. He also contends that he was "in fact" placed on a 5150 hold, not a 5250 hold. Pls.' Statement of Undisp'd Facts #16, 18. The mental health facility, however, identified John Doe #3 as subject to a 5250 hold. Cal. AG's Undisp'd Facts #12. As a result of that report, he was subject to the California five-year and federal lifetime prohibition on purchasing or possessing firearms. Pls.' Statement of Undisp'd Facts #20. The California prohibition expired in 2017, and no California law currently prohibits him from possessing a firearm. Cal. AG's Undisp'd Facts #13. The federal lifetime prohibition is the sole reason he cannot purchase or possess a firearm. Pls.' Statement of Undisp'd Facts #1, 20.

**John Doe #4.** John Doe #4 is a resident of Texas who, when he was a resident of California in 1996, was placed on a 5250 hold and, as a result, federal law prohibits him from purchasing or possessing a firearm for life. Pls.' Statement of Undisp'd Facts #21, 27. John Doe #4 does not contest that, at the time of his commitment, he had a mental health disorder that made him a danger to himself or others or otherwise gravely disabled. *See* Pls.' Statement of Undisp'd Facts #21-26. Like John Doe #3, John Doe #4 asserts that the facility did not tell him that he would be

1   subject to a lifetime prohibition on possession of firearms, did not provide him with a lawyer or

2   conservator, and did not inform him of his appellate rights. Pls.' Statement of Undisp'd Facts #22.

3   In 2010, John Doe #4 attempted to obtain relief from the California firearms prohibition in Fresno

4   County Superior Court. Pls.' Statement of Undisp'd Facts #23. The court denied his request

5   because his California prohibition had lapsed in 2001. Pls.' Statement of Undisp'd Facts #24. No

6   California law currently prohibits him from possessing a firearm. Cal. AG's Undisp'd Facts #14.

7   The federal lifetime prohibition is the sole reason he cannot purchase or possess a firearm. Pls.'

8   Statement of Undisp'd Facts #1, 27.

9       **John Doe #5.** John Doe #5 is a resident of Nevada who, when he was a resident of

10  California in 2007, was placed on 5250 hold and, as a result, federal law prohibits him from

11  purchasing or possessing a firearm for life. Pls.' Statement of Undisp'd Facts #28, 31. He

12  contends that he "has no recollection of any hearing and has not been able to obtain any records

13  of his treatment or any 'hearing' that might have taken place regarding his treatment." Pls.'

14  Statement of Undisp'd Facts #29. John Doe #5 does not contest that, at the time of his

15  commitment, he had a mental health disorder that made him a danger to himself or others or

16  otherwise gravely disabled. *See* Pls.' Statement of Undisp'd Facts #28-31. His California firearms

17  prohibition expired in 2012, and no California law currently prohibits him from possessing a

18  firearm. *See* Cal. AG's Undisp'd Facts #14. The federal lifetime prohibition is the sole reason he

19  cannot purchase or possess a firearm. Pls.' Statement of Undisp'd Facts #1, 31.

20      **Second Amendment Foundation.** The Second Amendment Foundation has joined this

21  case a plaintiff on behalf of itself and its members. Pls.' Statement of Undisp'd Facts #69.

22      The FAC asserts that each of the individual Plaintiffs should be able to purchase a firearm.

23  FAC ¶¶ 1-2. It names several federal defendants and the California Attorney General and sets

24  forth six causes of action.[2] *Id.* ¶¶ 12-19, 45-65. The First Cause of Action alleges that the

25  Defendants have "misapplied state and/or federal law in a way that denies Plaintiffs the ability to

26  lawfully acquire" firearms. *Id.* ¶ 47. The Second Cause of Action alleges a facial challenge to the

27      [2] Under Federal Rules of Civil Procedure 25(d), Rob Bonta, in his official capacity as the
    California Attorney General, automatically became the nominal defendant in this action when he
28  was sworn into office on April 23, 2021

1   federal lifetime prohibition in 18 U.S.C. § 922(g)(4). *Id.* ¶ 50. The Third Cause of Action, alleged

2   against the federal defendants, contends that § 922(g)(4) violates the due process and equal

3   protection guaranteed by the Fifth Amendment. *Id.* ¶¶ 53-55. The Fourth Cause of Action, alleged

4   against the California Attorney General, contends that Plaintiffs' 5250 holds violated the due

5   process and equal protection guarantees of the Fourteenth Amendment. *See id.* ¶ 59. The Fifth

6   Cause of Action alleges that the "misapplication of the federal and/or state background check

7   system, or erroneous data contained in that [sic] system" gives rise to a cause of action under 18

8   U.S.C. § 925A. *Id.* ¶ 61. The Sixth Cause of Action alleges that all the defendants have violated

9   the Tenth Amendment. *Id.* ¶¶ 63-65. This Court has dismissed the Tenth Amendment Claim in

10  the sixth cause of action. *Roe #1*, 2021 WL 1122441, at *3.

11  **LEGAL STANDARD**

12         A party may move for summary judgment when "there is no genuine dispute as to any

13  material fact" and the party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

14  Facts are material if they might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*,

15  477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if there is sufficient evidence

16  for a jury to return a verdict for the nonmoving party. *Id.* The moving party "initially bears the

17  burden of proving the absence of a genuine issue of material fact." *Penn-Star Ins. Co. v. Zenith*

18  *Ins. Co.*, 436 F. Supp. 3d 1367, 1374 (E.D. Cal. 2020) (quotation marks omitted); *Celotex Corp.*

19  *v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party meets its initial responsibility, the

20  burden then shifts to the opposing party to establish that a genuine issue as to any material fact

21  actually does exist." *Penn-Star Ins. Co.*, 436 F. Supp. 3d at 1374; *Matsushita Elec. Indus. Co. v.*

22  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When parties file cross-motions for summary

23  judgment, each motion "must be considered on its own merits." *Fair Hous. Council of Riverside*

24  *Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

25

26

27

28

**ARGUMENT**

**I.    PLAINTIFFS' NEWLY RAISED FACIAL DUE PROCESS CHALLENGE TO CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 5250 SUFFERS FROM NUMEROUS LEGAL DEFECTS**

Plaintiffs' motion for summary judgment leads with a facial challenge to California Welfare and Institutions Code section 5250. Pls.' Mot. for Summ. J. (Pls.' MSJ) at 7, ECF No. 63. Plaintiffs contend that the process violates the due process clause because it authorizes a patient to be certified for treatment on a showing that probable cause exists to believe the person is a danger to himself or others as a result of a mental health disorder. *Id.* (citing Cal. Welf. & Inst. Code § 5256.6). They contend that the United States Supreme Court's decision in *Addington v. Texas*, 441 U.S. 418 (1979), requires the government to establish those facts by clear and convincing evidence. *Id.* This Court should reject the argument for several reasons.

**A.    The FAC Does Not Assert a Facial Challenge to Section 5250, or any California Law**

Plaintiffs motion for summary judgment is the first time that they purport to challenge the constitutionality of section 5250, or any California law. *See* Pls.' MSJ at 7. The FAC does not explain what the California Attorney General has done to end up a defendant in this case or what California statutes Plaintiffs intend to challenge. *See generally* FAC. It does not provide notice that Plaintiffs are asserting a facial challenge to section 5250, or any other California statute. FAC ¶¶ 56-62. The California Attorney General confirmed this understanding of the FAC in discovery, asking Plaintiffs directly whether the FAC challenges any California statute. Plaintiffs confirmed that the "First Amended Complaint does not challenge the validity of any laws codified by the State of California." AG's Undisp'd Facts #16. Asked to identify the "law" referred to in paragraph 47 of the FAC that Plaintiffs allege the Defendants had misapplied, Plaintiffs did not identify section 5250. AG's Undisp'd Facts #17. This Court has already recognized that Plaintiffs "may not amend their complaint by way of their opposition to the pending motion to dismiss." *Roe #1*, 2021 WL 1122441, at *3. The newly raised facial challenge to section 5250 should be rejected, Plaintiffs' motion for summary judgment denied, and the California Attorney General's motion for summary judgment granted, for the same reason. *See Wasco Prods., Inc. v. Southwall*

11

1    *Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second

2    chance to flesh out inadequate pleadings.").

3         **B.     Plaintiffs' Challenge to Section 5250 Is Barred by Sovereign Immunity**

4         Even if the FAC had alleged a facial challenge to section 5250, or any of the California

5    Welfare and Institutions Code sections relating to involuntary mental health treatment, the claim

6    against the California Attorney General would be barred by sovereign immunity. The Eleventh

7    Amendment generally prohibits lawsuits against states and state officers in federal court unless

8    the state has unequivocally consented to such a suit or Congress has abrogated the state's

9    immunity. U.S. Const. amend. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100

10   (1984). The Eleventh Amendment's jurisdictional bar applies regardless of the nature of the relief

11   sought, including declaratory and injunctive relief. *Pennhurst State Sch.*, 465 U.S. at 101; *see also*

12   *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 508 (9th Cir. 1990) (affirming dismissal

13   of declaratory and injunctive relief claims). Here, California has neither consented to nor waived

14   its sovereign immunity with regard to the legal theories asserted by Plaintiffs. Nor have Plaintiffs

15   identified any act of Congress abrogating states' immunity.

16        A limited exception to Eleventh Amendment immunity, recognized in *Ex parte Young*, 209

17   U.S. 123 (1908), permits "actions for prospective declaratory or injunctive relief against state

18   officers in their official capacities for their alleged violations of federal law." *Coalition to Defend*

19   *Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). For the exception to apply,

20   however, the state officer named in the lawsuit must have a connection with the enforcement of

21   the allegedly unconstitutional statute that is more than general supervisory powers. *Long v. Van*

22   *de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam). The state official's "connection must be

23   determined under state law depending on whether and under what circumstances a particular

24   defendant has a connection with the challenged state law." *Snoeck v. Brussa*, 153 F.3d 984, 986

25   (9th Cir. 1998). "This connection must be fairly direct; a generalized duty to enforce state law or

26   general supervisory power over the persons responsible for enforcing the challenged provision

27   will not subject an official to suit." *L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)

28   (citing *Long*, 961 F.2d at 152). "Absent a real likelihood that the state official will employ his

12

Def. Cal. Att'y Gen.'s Summ. J. Br. (1:19-cv-00270)

1    supervisory powers against plaintiffs' interests, the Eleventh Amendment bars federal court

2    jurisdiction." *Id.*

3         Neither the FAC nor Plaintiffs' motion for summary judgment identify the California

4    Attorney General as an appropriate official who can provide relief. The relevant California

5    Welfare and Institutions Codes sections, including section 5250, do not charge the California

6    Attorney General with their enforcement. *See* Cal. Welf. & Inst. Code §§ 5000-5556; *id.* § 8103.

7    The California Attorney General does not impose 5150 or 5250 holds, participate in certification

8    review hearings, or in judicial review in the superior court. AG's Undisp'd Facts #4. Mental

9    health facilities administer the LPS Act. AG's Undisp'd Facts #4. The *Ex parte Young* exception

10   to the sovereign immunity doctrine thus does not authorize Plaintiffs' claims against the

11   California Attorney General in this case.

12        Other district judges in the Ninth Circuit have held that sovereign immunity bars claims

13   against the California Attorney General arising from mental health holds that affect plaintiffs'

14   firearm rights. Judge Mueller, for example, held that sovereign immunity barred a plaintiff's

15   claim against the California Attorney General, where the plaintiff alleged that the California

16   Attorney General had erroneously reported that plaintiff had been subject to a 5250 hold. *Pervez*

17   *v. Becerra*, No. 2:18-cv-02793-KJM-KJN, 2019 WL 2715621, at *5 (E.D. Cal. June 28, 2019).

18   The court reasoned that, "under California law neither the Attorney General nor any other DOJ

19   employee directs or controls the mental health facilities responsible for the imposition of a section

20   5250 hold in the first instance" and that "the role of the DOJ in this statutory system is purely

21   administrative, without an enforcement function." *Id.* Similarly, Judge Fitzgerald, of the Central

22   District, held that that sovereign immunity barred the plaintiff's claim against the California

23   Attorney General where the Los Angeles Police Department confiscated the plaintiff's firearms

24   after a 5150 hold. *Masters v. Becerra*, No. CV 19-02030-MWF (AGRx), 2019 WL 4543103, at

25   *2 (C.D. Cal. June 18, 2019), *aff'd*, 841 F. App'x 1 (9th Cir. 2021). This Court should do the

26   same here, and hold that sovereign immunity bars Plaintiffs' claims against the California

27   Attorney General.

28

13

**C.    Plaintiffs Lack Standing to Bring a Facial Challenge to Section 5250**

Article III of the United States Constitution confines the jurisdiction of federal courts "to the resolution of cases and controversies." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982) (internal quotation marks omitted). One of the "landmarks" used by courts to identify cases "that are of the justiciable sort referred to in Article III . . . is the doctrine of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This "irreducible constitutional minimum of standing" requires that a plaintiff demonstrate three distinct elements: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) "a causal connection between the injury" and the defendant's conduct; and (3) a likelihood "that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal quotation marks omitted). These constitutional requirements are "rigorous." *Valley Forge*, 454 U.S. at 475. "When plaintiffs seek to establish standing to challenge a law or regulation that is not presently being enforced against them, they must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154 (9th Cir. 2000). Although Plaintiffs now purport to challenge section 5250, none of them has established a "realistic danger" that the law will be enforced against them in the future. *See id.* That is, no individual Plaintiff has submitted evidence that she or he will suffer from a mental health disorder that makes her or him dangerous. *See* Pls.' Statement of Undisp'd Facts #1-31. Any argument to the contrary would be inconsistent with their assertion that they should be allowed to have firearms. Indeed, Plaintiffs contend that none of them has any current mental health diagnosis. Pls.' Statement of Undisp'd Facts #5, 14, 19, 25, 29.

Two plaintiffs have an additional barrier to overcome because they are not residents of California. John Doe #4 is a resident of Texas and John Doe #5 is a resident of Nevada. Pls.' Statement of Undisp'd Facts #21, 28. They are thus especially unlikely to be subject to section 5250 again; and, even if they were not subject to the lifetime band under § 922(g)(4), as nonresidents, they would not be allowed to legally purchase firearms in California anyway. *See* 18 U.S.C. § 922(b)(3); 27 C.F.R. § 478.99(a); Cal. Penal Code § 26845.

14

1    Nor can any individual Plaintiff satisfy the causation and redressability prongs of the

2    standing inquiry. Neither the California Attorney General nor California law are the cause of

3    Plaintiffs' alleged injury of not being able to purchase or possess a firearm. It is undisputed that

4    the federal lifetime prohibition imposed by § 922(g)(4) is the *sole* reason why each Plaintiff

5    cannot currently own or possess a firearm. Pls.' Statement of Undisp'd Facts #1, 7, 11, 15, 20, 27,

6    31. California law is thus not the cause of the injury that Plaintiffs identify. And, even if it were,

7    the California Attorney General does not impose mental health holds or have any role in the

8    certification review hearings or superior court review process. *See* Cal. Welf. & Inst. Code

9    §§ 5000-5556; *id.* § 8103; AG's Undisp'd Facts #4. So there is no causal connection between his

10   conduct and purported due process violations associated with the 5250 hold process. *See Valley*

11   *Forge*, 454 U.S. at 475. Furthermore, holding section 5250 unconstitutional would not redress

12   Plaintiffs' inability to purchase a firearm. *See id.* As a result, Plaintiffs do not have standing to

13   pursue this new theory.

14   Plaintiff the Second Amendment Foundation also lacks standing to pursue a facial

15   challenge to section 5250. Organizations may "assert standing on behalf of their own members, or

16   in their own right." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1265 (9th Cir. 2020).

17   To sue on its own behalf, an organization must establish that it has suffered "both a diversion of

18   its resources and a frustration of its mission." *La Asociacion de Trabajadores de Lake Forest v.*

19   *City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (quotation marks omitted). But the

20   Second Amendment Foundation has submitted no evidence suggesting that section 5250—or any

21   California law—has required it to divert resources.

22   Nor has the Second Amendment Foundation focused its arguments on its members'

23   interests. To satisfy that standard, it must establish "(a) their members would otherwise have

24   standing to sue in their own right; (b) the interests that the organizations seek to protect are

25   germane to their purpose; and (c) neither the claim asserted nor the relief requested requires the

26   participation of individual members in the lawsuit." *San Diego Cty. Gun Rights Comm. v. Reno*,

27   98 F.3d 1121, 1130-31 (9th Cir. 1996). The Second Amendment Foundation cannot satisfy the

28   first prong. It has not provided evidence that it has any members who can reasonably expect to

15

1    have section 5250 applied to them in the future. *See* Decl. of Alan Gottlieb in Supp. of Pls.' Mot.

2    for Summ. J. ¶¶ 4-8, ECF No. 65. To the extent the foundation is relying on the individual

3    Plaintiffs being members, *see id.* ¶ 7, its assertion of standing to challenge section 5250 fails for

4    the same reasons the individual Plaintiffs' assertions do.

5        The Second Amendment Foundation's ability to establish the second and third prongs of

6    the organizational standing requirement is unclear. Plaintiffs do not explain how the Second

7    Amendment Foundation's purpose is consistent with challenging the procedure for 5250 holds.

8    Although that procedure affects firearms rights, its primary purpose is to provide treatment to

9    people suffering from mental health disorders and to protect the public. *See* Cal. Welf. & Inst.

10   Code § 5001 (identifying purpose of LPS Act as, among other things, "provid[ing] prompt

11   evaluation and treatment of persons with mental health disorders" and "guarantee[ing] and

12   protect[ing] public safety"). The Second Amendment Foundation does not identify mental health

13   or public safety among its purposes. Given the incongruent fit between its purposes and the

14   constitutional challenge, participation by individual Second Amendment Foundation members

15   would seemingly be necessary to properly evaluate a section 5250 challenge.

16       **D.    A Facial Challenge to Section 5250 Would Fail on the Merits**

17       Any facial due process challenge to section 5250 also fails on the merits. Plaintiffs contend

18   that section 5250 violates due process because it authorizes mental health facilities to detain a

19   person and provide them treatment when probable cause exists to believe that the person suffers

20   from a mental health disorder that makes him a danger to himself or others or gravely disabled.

21   Pls. MSJ at 7. They argue that a clear and convincing standard should apply. *Id.* As a preliminary

22   matter, Plaintiffs misapprehend the 5250 process. While a certification review procedure does

23   rely on a probable cause standard, *see* Cal. Welf. & Inst. Code § 5256.6, a person has a right to

24   judicial review by writ for habeas corpus, where a preponderance of the evidence standard

25   applies, *see id.* § 5254.1; *In re Azzarella*, 207 Cal. App. 3d at 1251. The person may initiate a

26   habeas corpus proceeding instead of the certification review hearing, or after a certification

27   review hearing. Cal. Welf. & Inst. Code § 5275. Plaintiffs' argument does not account for this

28   flexible form of review that affords people subject to a 5250 hold two separate hearings.

1    Plaintiffs instead rest their entire argument on *Addington v. Texas*, 441 U.S. 418 (1979).

2  Pls.' MSJ at 7. But *Addington* held that the standard of proof in proceedings where a person is

3  subject to *indefinite* commitment is "clear and convincing" evidence. *Addington*, 441 U.S. at 425,

4  433. Plaintiffs do not cite any case holding that this standard applies to involuntary treatment

5  lasting at most 14 days. *See* Pls.' MSJ at 7. The California Attorney General is thus left to guess

6  as to the reasons Plaintiffs believe the same rule applies to indefinite holds and to holds lasting at

7  most 14 days. The 5250 hold procedure has been on the books since at least the 1980s. *See* Cal.

8  Stats. 1982, ch. 1598. Were Plaintiffs' argument obvious, surely one of the countless people who

9  have been subject to the procedure over the years would have raised it. In any event, with no

10  developed argument for extending *Addington* to 14-day holds, this Court should reject it. *See,*

11  *e.g.*, *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and

12  not supported by citations to the record or to case authority are generally deemed waived.").

13    Plaintiffs also argue that they should have been appointed a conservator or guardian, that

14  they should have been appointed an attorney, and that they should have been provided notice of

15  their legal rights. Pls.' MSJ at 7-9. To the extent these are facial challenges to the law, Plaintiffs

16  again misapprehend what the law requires. The statute provides for the provision of a patient

17  advocate or counsel. Cal. Welf. & Inst. Code § 5255 ("As soon after the certification as

18  practicable, an attorney or patient advocate shall meet with the person certified to discuss the

19  commitment process and to assist the person in preparing for the certification review hearing or to

20  answer questions or otherwise assist the person as is appropriate."); *see also id.* §§ 5252

21  (requiring notice of right to assistance); 5254 (same); 5256.4(a)(1) (listing "[a]ssistance by an

22  attorney or advocate" as one of the "rights" held by a person who has been certified). If the

23  person elects to challenge the commitment by petition for habeas corpus, the court "shall

24  immediately appoint the public defender or other attorney to assist him or her in preparation of a

25  petition for the writ of habeas corpus and, if he or she so elects, to represent him or her in the

26  proceedings." *Id.* § 5276. The facility must also notify the certified person of the effect the

27  certification has on firearm rights. *Id.* § 8103(f)(3) ("The facility shall provide the person with a

28  copy of the most recent "Patient Notification of Firearm Prohibition and Right to Hearing Form"

17

1   prescribed by the Department of Justice."); Decl. of Gilbert Mac in Supp. of Def. Cal. Att'y

2   Gen.'s Mot. for Summ. J. (Mac Decl.) Ex. 1 (copy of current form). Plaintiffs cite no authority

3   that would support finding these procedural protections constitutionally deficient on their face.

4   **II.    PLAINTIFFS' AS-APPLIED DUE PROCESS CHALLENGES ALSO FAIL AS A MATTER OF**

5   **LAW**

6          A more natural reading of the FAC, as clarified by Plaintiffs' motion for summary

7   judgment, is that, at least as to John Does #3, #4, and #5, the mental health facilities that certified

8   them did not follow the statutory requirements. Pls.' MSJ at 7-9. These three Plaintiffs identify

9   purported "irregularities" with their 5250 hold proceedings. Pls.' Statement of Undisp'd Facts

10   #17, 22, 29. John Doe #1, for example, contends he was not "notified of his appellate rights," by

11   which he presumably means right to seek habeas corpus relief. Pls.' Statement of Undisp'd Facts

12   #17; Cal. Welf. & Inst. Code §§ 5254.1, 5275. Even accepting that assertion, and other similar

13   ones, as true, Plaintiffs have not shown—and cannot show—that the California Attorney General

14   is responsible for any of the identified irregularities. Mental health facilities, not the California

15   Attorney General, administer the mental health hold provisions of the LPS Act. Cal. Welf. & Inst.

16   Code §§ 5008(n), 5250; *see generally* Cal. Welf. & Inst. Code §§ 5000-5556. It is undisputed that

17   "[n]either the Bureau of Firearms nor the California Department of Justice participates in the

18   certification or intensive treatment process under sections 5150 or 5250." Cal. AG's Undisp'd

19   Facts #4. So even if, for example, the mental health facility that held John Doe #1 did not inform

20   him of his right to judicial review (violating the LPS Act requirement, Cal. Welf. & Inst. Code

21   § 5254.1), that is a violation by the mental health facility, not the California Attorney General.

22   The same holds true for the other purported irregularities identified by Plaintiffs. *See* Pls.'

23   Statement of Undisp'd Facts #17, 22, 29. Plaintiffs have thus named the wrong party in their as-

24   applied due process claims, and the same legal defects with their facial challenge bar their as-

25   applied challenge.

26          Sovereign immunity bars suit against the California Attorney General, and the *Ex parte*

27   *Young* exception does not apply because there is no "fairly direct" connection between California

28   Attorney General and the mental health facilities administering the LPS Act. *See L.A. Cty. Bar*

18

Def. Cal. Att'y Gen.'s Summ. J. Br. (1:19-cv-00270)

1  *Ass'n*, 979 F.2d at 704. Similarly, Plaintiffs do not have standing to bring these claims because

2  there is no causal connection between any action by the California Attorney General and the

3  harms alleged by John Does #3, #4, and #5. *See Valley Forge*, 454 U.S. at 475. These three

4  Plaintiffs also lack standing because they have not identified any "realistic threat" that these

5  irregularities will happen again in the future. *See LSO, Ltd.*, 205 F.3d at 1154. In addition, even if

6  the Plaintiffs did have standing and the sovereign immunity did not bar the claims, those claims

7  would nonetheless be barred by the statute of limitations and res judicata. John Does #3, #4, and

8  #5 were subject to 5250 holds in 2012, 1996, and 2007, respectively. Pls.' Statement of Undisp'd

9  Facts #16, 21, 28. Their claims thus fall well outside the two-year statute of limitations to assert a

10 constitutional violation. *See Hedges v. Wesley*, No. CV 15-0713 CAS (SS), 2016 WL 1266867 at

11 *7 (C.D. Cal. Mar. 17, 2016) (recommending that the plaintiffs' claim that mental health facility

12 violated due process by failing to provide him with an attorney during 5250-hold process should

13 be dismissed as time barred because the plaintiff "knew or had cause to know of the injury arising

14 as a result of his involuntary psychiatric treatment at the time of his release from involuntary

15 confinement," over five years before he filed suit). Similarly, because Plaintiffs had a right to

16 seek judicial review of their certification review hearings, issue preclusion or claim preclusion bar

17 them from collaterally attacking the result. *See Commc'ns Telesystem Int'l v. Cal .Pub. Utils.*

18 *Comm'n*, 196 F.3d 1011, 1018 (9th Cir. 1999) (recognizing that state administrative decision have

19 preclusive effect if "some form judicial review" is available).

20      The fourth cause of action also may be asserting an equal protection claim against the

21 California Attorney General. FAC ¶ 58. The nature and legal basis for this claim is unclear, and

22 Plaintiffs' motion for summary judgment does not expand upon or seek relief under this theory.

23 *See* Pls.' MSJ at 1-2. The California Attorney General is again at a loss as to how to respond to

24 the claim. To the extent the claim repackages Plaintiffs' Second Amendment claims as an equal

25 protection claim, it is not viable. Where an "equal protection challenge is no more than a Second

26 Amendment claim dressed in equal protection clothing, it is subsumed by, and coextensive with

27 the former, and therefore not cognizable under the Equal Protection Clause." *Teixeira v. County*

28 *of Alameda*, 822 F.3d 1047, 1052 (9th Cir.) (quotations marks, brackets, and internal citation

19

Def. Cal. Att'y Gen.'s Summ. J. Br. (1:19-cv-00270)

1   omitted), *vacated by*, 854 F.3d 1046 (9th Cir. 2016), *and reh'g en banc*, 873 F.3d 670 (9th Cir.

2   2017), *cert. denied*, No. 17-982 (U.S. May 14, 2018);[3] *see also Flanagan v. Harris*, No.

3   LACV1606164JAKASX, 2017 WL 729788, at *5 (C.D. Cal. Feb. 23, 2017) ("An Equal

4   Protection claim brought under the Fourteenth Amendment that is the same as one brought

5   simultaneously under a different constitutional provision cannot provide an independent basis for

6   relief."). To the extent they allege some other equal protection theory, it is not clear what law is

7   being challenged or what the equal protection theory is. The Court should therefore enter

8   judgment in the California Attorney General's favor on this theory as well.

9   **III.   THE CALIFORNIA ATTORNEY GENERAL IS ENTITLED TO JUDGMENT AS A MATTER
10          OF LAW ON THE OTHER CLAIMS IN THE FAC**

11          **A.   Plaintiffs Have Not Alleged a Second Amendment Claim Against the
                   California Attorney General**

12          In the FAC, the first and second causes of action allege violations of the Second

13   Amendment. FAC ¶¶ 45-50. The other causes of action identify the defendants against whom

14   they are alleged, but the first and second do not. So it is not clear whether Plaintiffs are alleging

15   that the California Attorney General or any California statute has infringed their Second

16   Amendment rights. As explained above, it is undisputed that the only law prohibiting Plaintiffs

17   from possessing a firearm is § 922(g)(4). Pls.' Statement of Undisp'd Facts #1, 7, 11, 15, 20, 27,

18   31. The only conceivable claim against the California Attorney General is the California

19   Department of Justice's role as a point-of-contact for the federal NICS background check, which

20   implements the federal prohibition in § 922(g)(4). To the extent that is the case, Plaintiffs' claims

21   are foreclosed by *Mai v. United States*, 952 F.3d 1106. Moreover, even if *Mai* did not control the

22   outcome, Plaintiffs have submitted no evidence that the California Attorney General would refuse

23   to follow a ruling from a court invalidating the federal law. The California Attorney General's

24   involvement in these claims (and this case more generally) is completely unnecessary.

25

26

27          [3] The reasoning of the three-judge panel decision is citable as precedent because it was
     adopted by the en banc court. *See* 9th Cir. R. 35-3; *Teixeira*, 873 F.3d at 676 n.7 (en banc)
     ("Teixeira did not seek rehearing of the panel's rejection of his Equal Protection claims. We
28   affirm the district court on that claim for the reasons given in the panel opinion.").

**B.     Plaintiffs' Fifth Cause of Action Fails as a Matter of Law**

The fifth cause of action relies on 18 U.S.C. § 925A. That law allows a person who has a NICS background check denied to correct "erroneous information" in the system that resulted in a denial of a background check. 18 U.S.C. § 925A. Although Plaintiffs attempt to challenge the validity of the law (or laws) resulting in their lifetime prohibition on the possession of firearms, with one possible exception, they do not contend that their records contain erroneous information. *See generally* Pls.' Statement of Undisp'd Facts #1-31. That is, they have not alleged or provided any evidence that their records contain erroneous information that, if corrected, would allow them to purchase a firearm. The California Attorney General is thus entitled to judgment as a matter of law on this claim. *See Bartz v. FBI*, Civ. No. 19-1577 (NEB/BRT), 2020 WL 7211060, at *5 (D. Minn. Oct. 26, 2020) (recommending dismissal of § 925A claim because the plaintiff was "forbidden from possessing or receiving firearms under federal law, and the FBI properly denied his attempts to purchase firearms when performing the required background checks"); *Snyder v. United States*, No. 18-5504 RJB, 2019 WL 5592948, at *5 (W.D. Wash. Oct. 30, 2019) (granting United States' motion for summary judgment where the plaintiff had made "no showing that the 'contested information,' [an] arrest record from 1972, is incorrect or how it should be corrected").

The one possible exception is John Doe #3, who suggests that his 5250 hold may be the result of a "scrivener's error," and that he may have actually been subject to a 5150 hold, which, if correct, would remove him from § 922(g)(4)'s lifetime prohibition. Pls.' Statement of Undisp'd Facts #16-17. But his suggestion—which falls short of an assertion of fact—is incorrect. The mental health facility that treated John Doe #3 reported a 5250 hold. Cal. AG's Undisp'd Facts #12. John Doe #3 has presented no evidence that this is not, in fact, what happened. As discussed above, in the context of 5250 holds, neither the California Attorney General nor the California Department of Justice participates in the 5250 hold process. Cal. AG's Undisp'd Facts #4. It has no way of evaluating John Doe #3's assertion other than confirming what the mental health facility reported. Cal. AG's Undisp'd Facts #5. Any claim of erroneous information in this context should therefore be against the mental health facility. If the mental health facility did, in fact, report inaccurate information about John Doe #3's treatment, it can correct that

1   information in the Mental Health Reporting System. Cal. AG's Undisp'd Facts 7. As a general

2   matter, the California Attorney General would not second-guess that change. Cal. AG's Undisp'd

3   Facts #8. Again, the California Attorney General's involvement in this claim is therefore

4   completely unnecessary.

5        **C.    Plaintiffs' Claims for Money Damages Are Barred by Sovereign Immunity**

6        The FAC's prayer for relief requests an "[a]ward of damages to any Plaintiffs who have

7   incurred compensable losses[.]" FAC at 27, ¶ E. But as with the substance of Plaintiffs'

8   constitutional challenges, the Eleventh Amendment bars claims for money damages against

9   officials sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985);

10  *Aholelei v. Dep't of Pub. Safety, State of Haw.*, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The

11  Eleventh Amendment bars suits for money damages in federal court against a state, its agencies,

12  and state officials acting in their official capacities."). The California Attorney General is thus

13  entitled to summary judgment on this issue as well.

14                              **CONCLUSION**

15       For the foregoing reasons, this Court should grant the California Attorney General's cross-

16  motion for summary judgment, deny Plaintiffs' motion for summary judgment, and enter

17  judgment in favor of the California Attorney General.

18

19

20  Dated: May 10, 2021                          Respectfully Submitted,

21                                              ROB BONTA
                                                Attorney General of California
22                                              ANTHONY R. HAKL
                                                Supervising Deputy Attorney General
                                                RYAN A. HANLEY
23                                              Deputy Attorney General

24

25                                              /s/ Nelson Richards
                                                NELSON R. RICHARDS
26                                              Deputy Attorney General
                                                *Attorneys for Defendant California Attorney*
27                                              *General*

28

                                    22

# CERTIFICATE OF SERVICE

Case Name:   **Jane Roe #1, et al. v. United**          No.     **1:19-cv-00270**
                   **States of America, et al.**

I hereby certify that on <u>May 10, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE CROSS-MOTION FOR SUMMARY JUDGMENT OF DEFENDANT CALIFORNIA ATTORNEY GENERAL**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>May 10, 2021</u>, at Sacramento, California.

| Eileen A. Ennis | /s/ Eileen A. Ennis |
|:---:|:---:|
| Declarant | Signature |

SA2019101161
35072140.docx