James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

*Attorney for Federal Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE #1, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>and<br><br>ROBERT BONTA,<br><br>Defendants. | Case No. 1:19-cv-00270-DAD-BAM<br><br>**FEDERAL DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS** |

Pursuant to Federal Rule of Civil Procedure 56(c), the Federal Defendants submit the following statement of material facts as to which there is no genuine dispute, and response to Plaintiffs' statement.

## FEDERAL DEFENDANTS' STATEMENT OF MATERIAL FACTS

1.      A certification review hearing for John Doe 3 was held on June 15, 2012.  *See* Bates 42 produced with Plaintiffs' initial disclosures.

2.      At that hearing, it was determined that probable cause existed to hold John Doe 3 for not more than 14 days of intensive treatment, because of his grave disability.  *See* Bates 42 produced with Plaintiffs' initial disclosures.

3.      The record of that hearing indicates that John Doe 3 had his "weapons confiscated at time of 5150."  *See* Bates 42 produced with Plaintiffs' initial disclosures.

1

## FEDERAL DEFENDANTS' RESPONSES
## TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS

1.     Every Plaintiff is currently listed in a federal and/or state databases [sic] as being disqualified from owning, purchasing, or possessing a firearm, pursuant to 18 U.S.C. § 922(g)(4) ["adjudicated as [having] been committed to a mental institution."]

**Federal Defendants' Response:** Undisputed.

2.     Plaintiff JANE ROE #1's alleged disqualification arose of her contact with a mental healthcare provider in New Jersey in 1988/1989 when she was a minor and without benefit of counsel or appointment of a guardian ad litem.

**Federal Defendants' Response:** Undisputed.

3.     JANE ROE #1 was honorably discharged from the U.S. Army. During her service she was awarded: Army Achievement Medal, Joint Meritorious Unit Award, Army Good Conduct Medal, National Defense Service Medal, and Army Service Ribbon.

**Federal Defendants' Response:** Undisputed.

4.     JANE ROE #1 received firearms training in the United States Army and used various small arms while on active duty. The Army was aware of JANE ROE #1's "mental health" history during her enlistment.

**Federal Defendants' Response:** The first sentence is undisputed.  The second sentence is disputed.  The Declaration of Jane Roe #1 says only (at ¶ 13) that "I further allege on information and belief that the Army, and therefore the federal government, was fully aware of my 'mental health' history during my enlistment."  An allegation on information and belief does not provide the factual support required by Fed. R. Civ. P. 56(c)(1).

5.     JANE ROE #1 does not currently suffer from any disqualifying mental health diagnosis.

1       **Federal Defendants' Response:** The asserted fact is impermissibly vague.  Mental health

2 diagnoses are not disqualifying under 18 U.S.C. § 922(g)(4), which only prohibits the possession

3 of firearms by an individual "who has been adjudicated as a mental defective or who has been

4 committed to a mental institution."

5       6.     JANE ROE #1 currently lives in California and has no plans to relocate to New

6 Jersey. Traveling to New Jersey to file a petition for restoration of her rights would be an undue

7 burden.

8       **Federal Defendants' Response:** The first sentence is undisputed.  The second sentence is

9 disputed, as it consists of a legal conclusion rather than a factual assertion.

10       7.     The California Attorney General admits that the only law preventing JANE ROE

11 #1, from possessing a firearm is a lifetime prohibition under 18 U.S.C. § 922(g)(4), which arose

12 from a federal mental health disqualification based on her contact with a New Jersey mental

13 healthcare provider.

14       **Federal Defendants' Response:** The Federal Defendants lack knowledge or information

15 sufficient to respond to an asserted fact about what the California Attorney General admits.

16       8.     JOHN DOE #1 was placed on a mental health hold under Welfare and Institutions

17 Code (WIC) § 5250 (adjudicated hold) in August of 2011.

18       **Federal Defendants' Response:** Undisputed.

19       9.     JOHN DOE #1 filed a petition under WIC § 8103, in January of 2013, in

20 Sacramento County Superior Court. The hearing under WIC § 8103 was conducted to have JOHN

21 DOE #1's rights to acquire, keep and bear firearms restored. The People of the State of California

22 were represented by the District Attorney's Office. The Court granted the petition and relieved

23 JOHN DOE #1 of firearm disabilities.

1        **Federal Defendants' Response:** Undisputed.  To the extent that the final sentence asserts

2    that this state proceeding removed the 18 U.S.C. § 922(g)(4) bar as to John Doe #1, that is a

3    disputed legal conclusion and not a factual assertion.

4        10.     JOHN DOE #1 does not currently suffer from any disqualifying mental health

5    diagnosis.

6        **Federal Defendants' Response:** The asserted fact is impermissibly vague.  Mental health

7    diagnoses are not disqualifying under 18 U.S.C. § 922(g)(4), which only prohibits the possession

8    of firearms by an individual "who has been adjudicated as a mental defective or who has been

9    committed to a mental institution."

10        11.     The California Attorney General admits that JOHN DOE #1 successfully petitioned

11    a superior court under California Welfare and Institutions Code § 8100 et seq., and obtained an

12    order that he may own, possess, have custody or control over, receive or purchase firearms; and

13    that the only law currently preventing JOHN DOE #1, from possessing a firearm is a lifetime

14    prohibition under 18 U.S.C. § 922(g)(4).

15        **Federal Defendants' Response:** The Federal Defendants lack knowledge or information

16    sufficient to respond to an asserted fact about what the California Attorney General admits.

17        12.     JOHN DOE #2 was placed on a mental health hold under Welfare and Institutions

18    Code (WIC) § 5250 (adjudicated hold) in April of 2015.

19        **Federal Defendants' Response:** Undisputed.

20        13.     JOHN DOE #2 filed a petition under WIC § 8103, in December of 2016, in San

21    Diego County Superior Court. The hearing under WIC § 8103 was conducted to have JOHN DOE

22    #2's rights to acquire, keep and bear firearms restored. The People of the State of California were

1    represented by the District Attorney's Office. The Court granted the petition and relieved JOHN

2    DOE #2 of firearm disabilities.

3          **Federal Defendants' Response:** Undisputed.  To the extent that the final sentence asserts

4    that this state proceeding removed the 18 U.S.C. § 922(g)(4) bar as to John Doe #2, that is a

5    disputed legal conclusion and not a factual assertion.

6          14.    JOHN DOE #2 does not currently suffer from any disqualifying mental health

7    diagnosis.

8          **Federal Defendants' Response:** The asserted fact is impermissibly vague.  Mental health

9    diagnoses are not disqualifying under 18 U.S.C. § 922(g)(4), which only prohibits the possession

10   of firearms by an individual "who has been adjudicated as a mental defective or who has been

11   committed to a mental institution."

12         15.    The California Attorney General admits that JOHN DOE #2 successfully petitioned

13   a superior court under California Welfare and Institutions Code § 8100 et seq., and obtained an

14   order that he may own, possess, have custody or control over, receive or purchase firearms; and

15   that the only law preventing JOHN DOE #2, from possessing a firearm is a lifetime prohibition

16   under 18 U.S.C. § 922(g)(4).

17         **Federal Defendants' Response:** The Federal Defendants lack knowledge or information

18   sufficient to respond to an asserted fact about what the California Attorney General admits.

19         16.    JOHN DOE #3 was placed a mental health hold, on or about June 12, 2012, in

20   Alameda County, after a "Certification Review Hearing" that purported to place him on a hold

21   pursuant to WIC § 5150 (unadjudicated hold).

22         **Federal Defendants' Response:** Disputed. The record of this hearing indicates that it was

23   held on June 15, 2012, three days after John Doe #3 was "taken . . . into custody for a period of up

1   to 72 hours for assessment, evaluation, and crisis intervention" under Cal. Welf. & Inst. Code §

2   5150(a).  The record indicates that John Doe #3 was found to be "gravely disabled" under Cal.

3   Welf. & Inst. Code § 5250(a), and therefore "certified for not more than 14 days of intensive

4   treatment related to the mental health disorder or impairment by chronic alcoholism," *id.* § 5250.

5   The record includes the following statement: "5150 – 6/9/12. Called doctor. He said he thought

6   his wife was trying to kill him."  This does not indicate that the June 15 hearing was held under

7   § 5150, but rather indicates why John Doe #3 was initially taken into custody on June 12 under

8   § 5150.   The record appears at Bates 42 of the documents provided with Plaintiffs' initial

9   disclosures.

10          17.     Even assuming a scrivener's error on the face of the record, there were other

11   irregularities with regard to JOHN DOE #3's mental health hold. JOHN DOE #3 requested an

12   attorney for the "hearing" and was denied the opportunity to obtain one. He was – instead –

13   provided with a patient advocate who was not a lawyer. He was not appointed a conservator. He

14   was not notified of the full consequences of the hearing. He was not notified of his appellate rights.

15   He was under the influence of hospital administered psychotropic drugs that impaired his

16   perception and judgment.

17          **Federal Defendants' Response:**  The Federal Defendants lack knowledge or information

18   sufficient to respond to these asserted facts.

19          18.     JOHN DOE #3 was not – in fact – placed on a 14-day hold authorized under WIC

20   § 5250. Shortly after the "hearing" he was released.

21          **Federal Defendants' Response:**  Disputed.  The record of the certification review hearing

22   indicates that John Doe #3 was certified "for not more than 14 days of intensive treatment" under

23   Cal. Welf. & Inst. Code § 5250(a).  That certification was effective at the moment that it was made,

whether or not John Doe #3 was treated for the full 14 days permitted by statute.  The record of the hearing appears at Bates 42 of the documents provided with Plaintiffs' initial disclosures.  The second sentence is disputed as impermissibly vague, as it does not specify when John Doe #3 asserts that he as released.

19.    JOHN DOE #3 does not currently suffer from any disqualifying mental health diagnosis.

**Federal Defendants' Response:** The asserted fact is impermissibly vague.  Mental health diagnoses are not disqualifying under 18 U.S.C. § 922(g)(4), which only prohibits the possession of firearms by an individual "who has been adjudicated as a mental defective or who has been committed to a mental institution."

20.    The California Attorney General admits that Plaintiff JOHN DOE #3 no longer suffers from a firearm mental health disability under California Welfare and Institutions Code § 8100 et seq.; and that the only law preventing JOHN DOE #3, from possessing a firearm is a lifetime prohibition under 18 U.S.C. § 922(g)(4).

**Federal Defendants' Response:** The Federal Defendants lack knowledge or information sufficient to respond to an asserted fact about what the California Attorney General admits.

21.    JOHN DOE #4 resides in Texas. On January 3, 1996 he was admitted to a mental health facility in Fresno, California and discharged seven (7) days later on January 11, 1996. He was admitted again to the same facility on October 15, 1996 and was discharged on November 22, 1996. This second hold was conducted pursuant to WIC § 5250.

**Federal Defendants' Response:** Undisputed.

1    22.    JOHN DOE #4 does recall be [sic] advised that as a consequence of his treatment,

2    he would be disqualified from owning, possessing, or acquiring a firearm for a minimum of five

3    (5) years. However, he was not informed that federal law imposed a lifetime disqualification. He

4    was not appointed a lawyer. He was not appointed a conservator. He was not advised of his

5    appellate rights.

6        **Federal Defendants' Response:**  The Federal Defendants lack knowledge or information

7    sufficient to respond to these asserted facts.

8    23.    On or about July 27, 2010, JOHN DOE #4 caused a Petition for Relief from

9    Firearms Prohibition under WIC § 8103 to be filed in Fresno Superior Court, despite more than

10   ten years having lapsed from his hospitalization in 1996.

11       **Federal Defendants' Response:** Undisputed.

12   24.    On September 24, 2010, JOHN DOE #4 appeared in Fresno County, with the

13   People represented by the District Attorney, the Superior Court, denied the petition, stating: "[...]

14   Motion for Relief of Firearm Prohibition is DENIED. The Court cannot grant the requested relief

15   the petition is seeking. Prohibition period lapsed, 10/4/2001." In other words, the case was not

16   resolved on the merits because the Judge considered the matter mooted by operation of law. (i.e.,

17   the passage of time.)

18       **Federal Defendants' Response:** The first sentence is undisputed.  The second sentence is

19   disputed, as it consists of an interpretation of a state court order and not a factual assertion.

20   25.    JOHN DOE #4 does not currently suffer from any disqualifying mental health

21   diagnosis.

22       **Federal Defendants' Response:** The asserted fact is impermissibly vague.  Mental health

23   diagnoses are not disqualifying under 18 U.S.C. § 922(g)(4), which only prohibits the possession

1    of firearms by an individual "who has been adjudicated as a mental defective or who has been

2    committed to a mental institution."

3         26.    JOHN DOE #4 currently lives in Texas and has no plans to relocate to California.

4    Traveling to California to file a petition for restoration of his rights would be an undue burden.

5         **Federal Defendants' Response:** The first sentence is undisputed.  The second sentence is

6    disputed, as it consists of a legal conclusion rather than a factual assertion.

7         27.    The California Attorney General admits that Plaintiff JOHN DOE #4 no longer

8    suffers from a firearm mental health disability under California Welfare and Institutions Code §

9    8100 et seq.; and that the only law preventing JOHN DOE #4, from possessing a firearm is a

10   lifetime prohibition under 18 U.S.C. § 922(g)(4).

11        **Federal Defendants' Response:** The Federal Defendants lack knowledge or information

12   sufficient to respond to an asserted fact about what the California Attorney General admits.

13        28.    JOHN DOE #5 is a resident of the State of Nevada. On or about April 30, 2007, he

14   was admitted to a healthcare facility in Torrance, California, for a mental health evaluation. He

15   was a minor on that date. He was discharged on or about May 8, 2007.

16        **Federal Defendants' Response:** Undisputed.

17        29.    JOHN DOE #5 has no recollection of any hearing and has not be able to obtain any

18   records of this treatment or any "hearing" that might have taken place regarding his treatment. He

19   does not recall having been appointed a guardian ad litem, an attorney, or being informed of the

20   consequences of his detention.

21        **Federal Defendants' Response:**  The Federal Defendants lack knowledge or information

22   sufficient to respond to these asserted facts.

29.     JOHN DOE #5 does not currently suffer from any disqualifying mental health diagnosis.

**Federal Defendants' Response:** The asserted fact is impermissibly vague.  Mental health diagnoses are not disqualifying under 18 U.S.C. § 922(g)(4), which only prohibits the possession of firearms by an individual "who has been adjudicated as a mental defective or who has been committed to a mental institution."

30.     JOHN DOE #5 currently lives in Nevada and has no plans to relocate to California. Traveling to California to file a petition for restoration of his rights would be an undue burden.

**Federal Defendants' Response:** The first sentence is undisputed.  The second sentence is disputed, as it consists of a legal conclusion rather than a factual assertion.

31.     The California Attorney General admits that Plaintiff JOHN DOE #5 no longer suffers from a firearm mental health disability under California Welfare and Institutions Code § 8100 et seq.; and that the only law preventing JOHN DOE #5, from possessing a firearm is a lifetime prohibition under 18 U.S.C. § 922(g)(4).

**Federal Defendants' Response:** The Federal Defendants lack knowledge or information sufficient to respond to an asserted fact about what the California Attorney General admits.

32.     The evidentiary standard for a Certification Review Hearing under WIC § 5250 is ***probable cause***.

**Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual assertion.

33.     The State of California imposes a temporary suspension of firearms rights for a period of five (5) years for any person taken into custody at least once, pursuant to WIC § 5150 (unadjudicated hold).

**Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual assertion.

34.    The State of California imposes a lifetime prohibition on firearms rights for any person taken into custody pursuant to WIC § 5150 (unadjudicated hold) more than once during a one-year period.

**Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual assertion.

35.    A person may obtain a relief from both the temporary suspension and lifetime prohibition, triggered by a WIC § 5150 unadjudicated mental health hold, by petitioning a California Superior Court to restore their firearm rights. The government is represented by the District Attorney at the hearing acting as plaintiff.

**Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual assertion.

36.    The evidence that may be produced by either party at a hearing to restore firearm rights after an unadjudicated mental health hold is limited only by California Evidence Code § 352.

**Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual assertion.

37.    To maintain any remainder of the five (5) year temporary suspension [§8103(f)(1)(A)], or lifetime prohibition [§8103(f)(1)(B)], the government "bear[s] the burden of showing by a preponderance of the evidence that the person would not be likely to use firearms in a safe and lawful manner."

**Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual assertion.

11

1    38.    If the government fails to meet the burden of WIC § 8103(f)(6), the Court enters an

2    order that the person is not subject a firearm disability and transmits a copy of the order to the

3    California Department of Justice.

4    **Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual

5    assertion.

6    39.    The State of California also imposes a temporary suspension of firearms rights for

7    a period of five (5) years for any person taken into custody pursuant to WIC § 5250 (adjudicated

8    mental health hold).

9    **Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual

10   assertion.

11   40.    A person may obtain a relief [sic] from the temporary suspension of firearm rights

12   for five (5) years triggered by a WIC § 5250 (adjudicated mental health hold) by petitioning a

13   California Superior Court to restore their firearm rights. The government is represented by the

14   District Attorney at the hearing acting as the respondent. [Cf., a hearing under § 8103(f)(5).]

15   **Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual

16   assertion.

17   41.    The evidence that may be produced by either party at a hearing to restore firearm

18   rights after an unadjudicated mental health hold is limited only by California Evidence Code § 352.

19   **Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual

20   assertion.

21   42.    The petitioner can then be relieved from the remainder of the five (5) year

22   temporary suspension.

1         **Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual

2 assertion.

3         43.    If the Court enters an order that the person is no longer subject to a firearm disability

4 under WIC § 8103(g)(1)(i).

5         **Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual

6 assertion.

7         44.    The California Department of Justice violates WIC § 8103(g)(4) by refusing to

8 "delete any reference to the prohibition against firearms prohibition from [a] person's state mental

9 health firearms prohibition system information" when that person was subject to a WIC § 5250

10 hold.

11         **Federal Defendants' Response:** Disputed.  This is a legal conclusion and not a factual

12 assertion.

13         45.    Both sets of Defendants admit that The National Instant Criminal Background

14 Check System (NICS) is used by Federal Firearms Licensees, importers, and manufacturers

15 (collectively, "dealers") to determine whether a prospective purchaser is legally authorized to

16 purchase (and possess) firearms.

17         **Federal Defendants' Response:** The Federal Defendants do not dispute that the National

18 Instant Criminal Background Check System is used to determine whether a prospective purchaser

19 is legally authorized to purchase and possess firearms.

20         46.    Both sets of Defendants admit that California is a Full-POC (Point of Contact) State

21 charged with overall responsibility for the administration and usage of the FBI-NICS within a

22 state.

1    **Federal Defendants' Response:** The Federal Defendants do not dispute that California is

2    a full point-of-contact state.  The remainder of this sentence consists of characterizations and legal

3    conclusions, not factual assertions.

4    47.    California submits its mental health records to FBI/NICS for purposes of

5    maintaining an accurate firearm background check system. California also maintains its own

6    Mental Health Unit within the Department of Justice that makes determinations for restoration of

7    rights after a hearing to restore rights under WIC § 8103 et seq., has taken place.

8    **Federal Defendants' Response:** Disputed. The first sentence is impermissibly vague as

9    to what "mental health records," if any, are submitted by California.  The Federal Defendants lack

10   knowledge or information sufficient to respond to the second sentence.

11   48.    California has a policy and/or procedure by which a WIC § 5250 determination that

12   is restored under WIC § 8103(g)(4) remains in the FBI-NICS database as a disqualification due to

13   "FEDERAL LIFETIME PROHIBITION."

14   **Federal Defendants' Response:** The Federal Defendants lack knowledge or information

15   sufficient to respond to this allegation about whether California has such a policy or procedure.

16   49.    In a February 20, 2008, the California Department of Justice exchanged a series of

17   emails with the federal government requesting clarification of California's State Relief Program

18   and its impact by the NICS Improvement Act, with specific questions about mental health

19   disqualifications:

20   5) If state law provides for a temporary loss of the right to possess firearms, does the

21   expiration of that temporary time period constitute a "restoration of rights" that triggers the

22   requirement that the state request that the record be removed from the NICS database?

14

1    **Federal Defendants' Response:** The Federal Defendants do not dispute that the quoted

2    language appears in an email sent by Alison Merrilees to the Bureau of Alcohol, Tobacco,

3    Firearms, and Explosives on February 20, 2008. *See* ATF 102. Plaintiffs' characterization of that

4    email is disputed to the extent that it is inconsistent with the email itself.

5        50.    In an email dated March 14, 2008, the federal governments [sic] responded to

6    question 5 as follows:

7        The requirement to remove a record is triggered only if the person is no longer subject to

8    Federal firearms disabilities. If Federal firearms disabilities are removed upon completion or

9    expiration of a State temporary time period (temporary loss of the right to possess a firearm under

10    State law), i.e., restoration of core civil rights without firearms disabilities at the time of restoration,

11    then that record should be removed from NICS.

12    **Federal Defendants' Response:** The Federal Defendants do not dispute that the quoted

13    language appears in an email sent by Eric Epstein of the Bureau of Alcohol, Tobacco, Firearms,

14    and Explosives on March 14, 2008. *See* ATF 105. Plaintiffs' characterization of that email is

15    disputed to the extent that it is inconsistent with the email itself.

16        51.    In a follow-up email dated March 14, 2008, the California Department of Justice

17    indicated that it had additional questions:

18        "[S]pecificially about our mental health statutes. If I understand your [sic] correctly, this

19    has a major impact on us. Whereas individuals in the NICS database because they were "mental

20    defectives" used be in the index for life, now they must be removed from NICS when they [sic]

21    state disability (5 years) expires. We will mull this information over and get back to you next

22    week."

1   **Federal Defendants' Response:** Disputed. The Federal Defendants respectfully refer the

2   court to the email sent by Alison Merrilees to the Bureau of Alcohol, Tobacco, Firearms, and

3   Explosives on March 14, 2008 for a full and complete statement of its contents. *See* ATF 109.

4         52.      In a reply email, the federal government responded:

5   "[P]erhaps our e-mail was confusing. The only change with respect to Federal firearms

6   disability imposed due to adjudications as a mental defective or committed to a mental institution

7   with regard to the States is if the State has granted "relief" under a qualifying relief from disabilities

8   program that considers a person's record and reputation and has de novo judicial review. This is

9   distinguished from a procedure by which the disability expires after a period of time. Perhaps we

10  can have a conference call next week."

11  **Federal Defendants' Response:** Disputed. The Federal Defendants respectfully refer the

12  court to the email sent by Eric Epstein of the Bureau of Alcohol, Tobacco, Firearms, and

13  Explosives on March 14, 2008 for a full and complete statement of its contents. *See* ATF 109.

14        52.      In a reply email, the California Department of Justice responded:

15  "That clears it up a bit, but we would love to talk."

16  **Federal Defendants' Response:** The Federal Defendants do not dispute that the quoted

17  language appears in an email sent by Alison Merrilees to the Bureau of Alcohol, Tobacco,

18  Firearms, and Explosives on March 14, 2008. *See* ATF 109.

19        53.      On April 2, 2008, the federal government closed the CCMS case related to the

20  California Department of Justice inquiry about mental health restorations because "it appears CA

21  is not interested in receiving NICS funding."

22        **Federal Defendants' Response:** Disputed.  This assertion is vague, undefined, and

23  immaterial to any claim in this case.  The Federal Defendants do not dispute that the quoted

1    language appears in an email sent by Larysa Simms of the Bureau of Alcohol, Tobacco, Firearms,

2    and Explosives to herself on April 2, 2008.

3        54.    As of December 13, 2019, California still does not participate in the NICS

4    Improvement Act of 2007 to create a federally incentivized and qualified 922(d)(4)/(g)(4) relief

5    program.

6        **Federal Defendants' Response:** The Federal Defendants do not dispute that California's

7    restoration-of-rights procedures do not suffice to remove the federal bar imposed by 18 U.S.C.

8    § 922(g)(4).  The Federal Defendants dispute the remainder of this assertion, which consists of

9    vague characterizations.

10       55.    ATF provides guidance for states to follow in certifying that they have established

11   a qualifying mental health relief from firearms disabilities program that satisfies certain minimum

12   criteria under the NIAA. [the nine criteria follow next]

13       **Federal Defendants' Response:** The Federal Defendants do not dispute that the Bureau

14   of Alcohol, Tobacco, Firearms, and Explosives provides such guidance to states seeking to comply

15   with the NICS Improvement Amendments Act of 2007.

16       56.    1. State law: The relief program has been established by state statute, or

17   administrative regulation or order pursuant to state law.

18       **Federal Defendants' Response:** The Federal Defendants do not dispute that this is an

19   accurate quotation from page 46 of GAO Report 12-684, *see* ATF 89, although Plaintiffs do not

20   properly allege it as such.

21       57.    2. Application: The relief program allows a person who has been formally

22   adjudicated as a "mental defective"[1] or committed involuntarily to a mental institution[2] to apply

17

1  or petition for relief from the Federal firearms prohibitions (disabilities) imposed under 18 U.S.C.

2  § 922 (d) (4) and (g) (4).

3      **Federal Defendants' Response:** The Federal Defendants do not dispute that, except for

4  the omission of the footnotes, this is an accurate quotation from page 46 of GAO Report 12-684,

5  *see* ATF 89, although Plaintiffs do not properly allege it as such.

6      58.    3. Lawful authority: A state court, board, commission, or other lawful authority

7  (per state law) considers the applicant's petition for relief. The lawful authority may only consider

8  applications for relief due to mental health adjudications or commitments that occurred in the

9  applicant state.

10      **Federal Defendants' Response:** The Federal Defendants do not dispute that this is an

11  accurate quotation from page 46 of GAO Report 12-684, *see* ATF 89, although Plaintiffs do not

12  properly allege it as such.

13      59.    4. Due process: The petition for relief is considered by the lawful authority in

14  accordance with principles of due process, as follows:

15      a. The applicant has the opportunity to submit his or her own evidence to the lawful

16  authority considering the relief application.

17      b. An independent decision maker—someone other than the individual who

18  gathered the evidence for the lawful authority acting on the application—reviews the evidence.

19      c. A record of the matter is created and maintained for review.

20      **Federal Defendants' Response:** The Federal Defendants do not dispute that this is an

21  accurate quotation from pages 46 and 47 of GAO Report 12-684, *see* ATF 89–90, although

22  Plaintiffs do not properly allege it as such.

60.    5. Proper record: In determining whether to grant relief, the lawful authority receives evidence concerning and considers the:

a. Circumstances regarding the firearms disabilities imposed by 18 U.S.C. § 922 (g) (4);

b. Applicant's record, which must include, at a minimum, the applicant's mental health and criminal history records; and

c. Applicant's reputation, developed, at a minimum, through character witness statements, testimony, or other character evidence.

**Federal Defendants' Response:** The Federal Defendants do not dispute that this is an accurate quotation from page 47 of GAO Report 12-684, *see* ATF 90, , although Plaintiffs do not properly allege it as such.

61.    6. Proper findings: In granting relief, the lawful authority issues findings that:

a. The applicant will not be likely to act in a manner dangerous to public safety; and

b. Granting the relief will not be contrary to the public interest.

**Federal Defendants' Response:** The Federal Defendants do not dispute that this is an accurate quotation from page 47 of GAO Report 12-684, *see* ATF 90, although Plaintiffs do not properly allege it as such.

62.    7. De novo judicial review of a denial: The state provides for the de novo judicial review of relief application denials that includes the following principles:

a. If relief is denied, the applicant may petition the state court of appropriate jurisdiction to review the denial, including the record of the denying court, board, commission or other lawful authority.

b. In cases of denial by a lawful authority other than a state court, the reviewing court as the discretion to receive additional evidence necessary to conduct an adequate review.

c. Judicial review is de novo in that the reviewing court may, but is not required to, give deference to the decision of the lawful authority that denied the application for relief.

**Federal Defendants' Response:** The Federal Defendants do not dispute that this is an accurate quotation from page 47 of GAO Report 12-684, *see* ATF 90, although Plaintiffs do not properly allege it as such.

63.     8. Required updates to state and federal records: Pursuant to § 102(c) of the NIAA, the state, on being made aware that the basis under which the record was made available does not apply, or no longer applies:

a. Updates, corrects, modifies, or removes the record from any database that the federal or state government maintains and makes available to NICS, consistent with the rules pertaining to the database; and

b. Notifies the Attorney General that such basis no longer applies so that the record system in which the record is maintained is kept up to date.

**Federal Defendants' Response:** The Federal Defendants do not dispute that this is an accurate quotation from pages 47 and 48 of GAO Report 12-684, *see* ATF 90–91, although Plaintiffs do not properly allege it as such.

64.     9. Recommended procedure: It is recommended (not required) that the state have a written procedure (e.g., state law, regulation, or administrative order) to address the update requirements.

**Federal Defendants' Response:** The Federal Defendants do not dispute that this is an accurate quotation from page 48 of GAO Report 12-684, *see* ATF 91, although Plaintiffs do not properly allege it as such.

1    65.    Using these criteria (PSUF 65-64) the ATF has approved the following states'

2    programs for relief from 18 U.S.C. § 922(d)(4) and § 922(g)(4):

3    Nevada, New York, Oregon, Florida, Idaho, Illinois, New Jersey, Texas, Wisconsin,

4    Arizona, Iowa, Kansas, Kentucky, North Dakota, Virginia, Indiana, Nebraska, Missouri, West

5    Virginia, Alabama, Delaware, Louisiana, Maryland, Alaska, Hawaii, South Carolina, Utah,

6    Oklahoma, Tennessee, Massachusetts, New

7    Mexico, North Carolina, Pennsylvania, and Colorado.

8    **Federal Defendants' Response:** The Federal Defendants do not dispute that these states'

9    programs for relief from 18 U.S.C. §§ 922(d)(4) and § 922(g)(4) were approved as of December

10   13, 2019.  *See* ATF 100–01.  The Federal Defendants dispute that these approvals were made

11   "[u]sing these criteria (PSUF 65-64)," which is a vague assertion that seems to incorporate this

12   paragraph itself.

13   66.    The Second Amendment Foundation (SAF) is a non-profit membership

14   organization incorporated under the laws of Washington with its principal place of business in

15   Bellevue, Washington.

16   **Federal Defendants' Response:**  The Federal Defendants lack knowledge or information

17   sufficient to respond to these asserted facts, which are not material to any claim in this case.

18   67.    SAF has over 650,000 members and supporters nationwide, including California.

19   **Federal Defendants' Response:**  The Federal Defendants lack knowledge or information

20   sufficient to respond to these asserted facts, which are not material to any claim in this case.

21   68.    The purposes of SAF include:

22   a. Education,

23   b. Research,

1    c. Publishing,

2    d. And Litigation

3    in support of the Constitutional right by private citizens to acquire, possess, and lawfully carry

4    firearms for self-defense and other lawful purposes.

5    **Federal Defendants' Response:**  The Federal Defendants lack knowledge or information

6    sufficient to respond to these asserted facts, which are not material to any claim in this case.

7    69.    SAF seeks to vindicate the rights under the Second Amendment to the United States

8    Constitution for all law-abiding citizens, including its members and supporters, and to educate the

9    general public on the consequences of unconstitutional gun control laws.

10   **Federal Defendants' Response:**  The Federal Defendants lack knowledge or information

11   sufficient to respond to these asserted facts, which are not material to any claim in this case.

12   70.    SAF brings this action on behalf of itself and its members and all the named

13   plaintiffs in this action are members of SAF.

14   **Federal Defendants' Response:**  Disputed.  This assertion is not a material fact, but rather

15   a legal characterization.

16   71.    SAF brings lawsuits like this because the fees and costs of prosecuting such actions

17   often exceeds the personal resources of individual gun owners, including our members.

18   **Federal Defendants' Response:**  The Federal Defendants lack knowledge or information

19   sufficient to respond to these asserted facts, which are not material to any claim in this case.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Director
Federal Programs Branch

22

_/s/ James Bickford_
JAMES BICKFORD
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 305-7632
James.Bickford@usdoj.gov

*Attorneys for Federal Defendants*

Date: May 10, 2021