James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

*Attorney for Federal Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE ROE #1, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> and <br><br> ROBERT BONTA, <br><br> Defendants. | Case No. 1:19-cv-00270-DAD-BAM <br><br> **MEMORANDUM OF LAW IN SUPPORT OF FEDERAL DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs are six individuals who were involuntarily committed for mental health treatment, and are therefore prohibited from possessing firearms. *See* 18 U.S.C. § 922(g)(4). Their claims that this prohibition violates the Second Amendment are foreclosed by the Ninth Circuit's decision in *Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020). Plaintiffs suggest that the procedures in Cal. Welf. & Inst. Code § 8103(g) satisfy 34 U.S.C. § 40915, and thus suffice to lift the § 922(g)(4) bar, but this Court has already rejected that argument. Plaintiffs allege claims under 18 U.S.C § 925A, which provides a cause of action for individuals erroneously prohibited from possessing firearms, but they cannot show that their prohibitions were in error. Finally, Plaintiffs claim a violation of equal protection, but the requirements set out in 34 U.S.C. § 40915 are rationally related to legitimate state purposes. The Federal Defendants are therefore entitled to summary judgment on each of Plaintiffs' claims against them.

# BACKGROUND

## A. Legal Background

Federal law prohibits the possession of firearms by individuals who have been "adjudicated as a mental defective" or "committed to a mental institution" by a state. 18 U.S.C. § 922(g)(4). As the Ninth Circuit recently explained, "Federal law provides two potential avenues for relief from the § 922(g)(4) bar," once it has been imposed. *Mai v. United States*, 952 F.3d 1106, 1111 (9th Cir. 2020). First, an individual "may apply to the United States Attorney General 'for relief from the disabilities imposed by Federal laws with respect to the . . . possession of firearms.'" *Id.* (quoting 18 U.S.C. § 925(c)) (alteration in original). But that statutory option is "currently foreclosed" because "Congress [has] defunded the program." *Id.*; *see United States v. Bean*, 537 U.S. 71 (2002).

An individual's "second potential avenue for relief is through a state program that qualifies under 34 U.S.C. § 40915." *Id.* To qualify, such a program must "permit[] a person who, pursuant to State law, has been adjudicated as described in subsection (g)(4) of section 922 of Title 18 or has been committed to a mental institution, to apply to the State for relief from the disabilities imposed by subsection[] . . . (g)(4) of such section by reason of the adjudication or commitment." 34 U.S.C. § 40915(a)(1). The program must "grant . . . relief, pursuant to State law and in accordance with the principles of due process" upon a finding "that the person will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." *Id.* § 40915(a)(2). "Finally, the program must allow a person to petition the state court 'for a de novo judicial review of [a] denial.'" *Mai*, 952 F.3d at 1112 (quoting 34 U.S.C. § 40915(a)(3)) (alteration in original). "For a person granted relief under a qualifying state program, § 922(g)(4)'s prohibition on the possession of firearms does not apply."

*Id.* (citing 34 U.S.C. § 40915(b)).

While "approximately thirty States have created qualifying programs," the rest have not. *Id.* (quotation omitted). As relevant here, the program created by California law does not meet the requirements of 34 U.S.C. § 40915, and therefore does not suffice to lift the disabilities imposed by 18 U.S.C. § 922(g)(4). In particular, California law does not require a determination "that the person will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 34 U.S.C. § 40915(a)(2); *see, e.g.*, Cal. Welf. & Inst. Code § 8103(g)(1)(i) (providing for automatic restoration of rights after the passage of time); *id.* § 8103(g)(4) (allowing for restoration of rights "[i]f the court finds by a preponderance of the evidence that the person would be likely to use firearms in a safe and lawful manner"). "In other words, the federal standard is more stringent than the [California] standard." *Mai*, 952 F.3d at 1112. "Accordingly, unless [California] chooses in the future to create a program that meets the requirements of § 40915," its residents have "no avenue for relief from § 922(g)(4)'s prohibition." *Id.*

### B. Factual and Procedural Background

Eight pseudonymous plaintiffs brought this case to challenge the prohibition on the possession of firearms imposed on them by 18 U.S.C. § 922(g)(4). Two plaintiffs were voluntarily dismissed from the case, *see* ECF Nos. 59 & 77, leaving six plaintiffs known as John Does 1 through 5, and Jane Roe.[1] All six were adjudicated or committed by a state within the meaning of § 922(g)(4): California adjudicated or committed the John Does, and New Jersey adjudicated or committed Jane Roe. *See* Pls.' Statement of Undisputed Facts ("Pls.' SUF"), ¶¶ 2, 8, 12, 16, 21,

---

[1] Because Jane Roe 2 has been dismissed from this case, the Federal Defendants will refer to Jane Roe 1 simply as "Jane Roe."

3

28; Federal Defs.' Statement of Undisputed Facts ("Fed. Defs.' SUF"), ¶¶ 1–2. None of the six is prohibited from possessing a firearm under California law. Pls.' SUF ¶¶ 6–7, 9, 13, 20, 24, 31. John Does 1 and 2 petitioned for restoration of their state-law right to possess firearms under Cal. Welf. & Inst. Code § 8103(g)(4), and had their petitions granted. Pls.' SUF ¶¶ 9, 13. John Does 3 through 5 had their state-law rights restored by the passage of time under Cal. Welf. & Inst. Code § 8103(g)(1)(i). Pls.' SUF ¶¶ 20, 24, 31. Jane Roe was never prohibited from possessing a firearm under California law.[2]

Plaintiffs amended their complaint once, to add a Tenth Amendment claim that was later dismissed. Four claims against the Federal Defendants[3] now remain: a facial Second Amendment challenge, Am. Compl. ¶¶ 48–50, ECF No. 36; an as-applied Second Amendment challenge, *id.* ¶¶ 45–47; a Fifth Amendment challenge, *id.* ¶¶ 51–55; and a challenge under 18 U.S.C. § 925A, *id.* ¶¶ 60–62.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). "Where the record taken as a

---

[2] Many of California's prohibitions on the possession of firearms also attach to equivalent findings "by a court of any state" or under "the law of any other state or the United States." Cal. Welf. & Inst. Code §§ 8103(a)(1), (b)(1), (c)(1), (d)(1), (e)(1). But California law does not prohibit the possession of firearms by individuals who were subject to the equivalent of a Section 5250 commitment outside of California, as Jane Roe was. *See id.* § 8103(g)(1)(i).

[3] The Federal Defendants are the United States of America; the U.S. Department of Justice and its Attorney General; the Federal Bureau of Investigation and its Director; and the Bureau of Alcohol, Tobacco, Firearms, and Explosives and its Acting Director.

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

"To survive a motion for summary judgment, a nonmoving party must present 'evidence from which a reasonable jury could return a verdict in its favor.'" *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 854 (9th Cir. 2019) (citations omitted). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citation omitted). "'[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.'" *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 628–29 (9th Cir. 2018) (citation omitted).

Material facts "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation omitted).

## ARGUMENT

**A.     Plaintiffs' Second Amendment claims are foreclosed by *Mai*.**

Plaintiffs assert that 18 U.S.C. § 922(g)(4) violates the Second Amendment, either facially or as applied to them, Am. Compl. ¶¶ 45–50, though they barely discuss those claims in their summary judgment motion. The Second Amendment claims are foreclosed by *Mai*.

That case, like this one, involved a plaintiff who had once been "committed . . . involuntarily for mental health treatment." 952 F.3d at 1110. He argued that "the Second Amendment requires that he be allowed to possess firearms notwithstanding his earlier involuntary commitment," *id.* at 1113, because (as he alleged) "he no longer suffers from mental illness, and he lives a socially-responsible, well-balanced, and accomplished life," *id.* at 1110 (quotation omitted). The Ninth Circuit held that "the continued application of the [§ 922(g)(4)] prohibition" to the plaintiff was justified, notwithstanding "the passage of time and his alleged mental health and peaceableness in recent years." *Id.* at 1117 (emphasis omitted).

The *Mai* court began its analysis by assuming that § 922(g)(4) imposes a burden on "conduct protected by the Second Amendment," despite the government's "strong argument . . . that § 922(g)(4) does not burden Second Amendment rights." *Id.* at 1114 (quotation omitted); *id.* at 1115 ("We assume, without deciding, that § 922(g)(4), as applied to Plaintiff, burdens Second Amendment rights."). Next, the court determined that intermediate (and not strict) scrutiny should guide its analysis of whether § 922(g)(4) imposed an *undue* burden. *Id.* at 1115 ("Just as intermediate scrutiny applies to the other lifetime bans in § 922(g), so too does intermediate scrutiny apply to § 922(g)(4)'s prohibition.").

Finally, the *Mai* court applied intermediate scrutiny. It explained that "two important interests support § 922(g)(4)'s ban on the possession of firearms by those who were involuntarily

6

committed to a mental institution: preventing crime and preventing suicide." *Id.* at 1116 ("Firearms undoubtedly exacerbate acts of violence to others" and "also greatly increase the risk of death by suicide."). "[I]n enacting § 922(g)(4), Congress determined that, like felons and domestic-violence assailants, those who have been involuntarily committed to a mental institution also pose an increased risk of violence." *Id.* at 1117. And because "scientific evidence amply supports that congressional judgment," the *Mai* court concluded that "Section 922(g)(4)'s prohibition . . . is a reasonable fit for the government's laudable goal of preventing gun violence." *Id.*

Plaintiffs suggest that *Mai* "was wrongly decided and ought to be overturned," Mot. at 22, but this Court is obviously bound by Ninth Circuit precedent. And the Ninth Circuit has held that "[t]he federal prohibition on . . . possession of firearms because of . . . past involuntary commitment withstands Second Amendment scrutiny." *Id.* at 1121; *see District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by . . . the mentally ill . . . .").

Plaintiffs nonetheless argue that a "window" to pursue a Second Amendment claim was "left open" by the *Mai* court, *see* Mot. at 22, when it commented that "§ 922(g)(4)'s prohibition as to those who were committed involuntarily applies not to persons who *theoretically* might be dangerous at some point in their lives," but rather "applies only to those who were found, through procedures satisfying due process, *actually* dangerous in the past." 952 F.3d at 1121. The court's reference to "procedures satisfying due process" was simply an acknowledgement that the Constitution guarantees the use of certain procedures for civil commitment proceedings; it was not a limitation on the holding of *Mai*. *See Parham v. J.R.*, 442 U.S. 584, 606 (1979) (When a parent seeks "to have a child institutionalized for mental health care . . . some kind of inquiry should be

1  made by a neutral factfinder to determine whether the statutory requirements for admission are
2  satisfied." (quotation omitted)); *Addington v. Texas*, 441 U.S. 418, 433 (1979) (In cases of
3  involuntary commitment, "the proof must be greater than the preponderance-of-the-evidence
4  standard applicable to other categories of civil cases.").

5  Plaintiffs now appear to mount a broad challenge to the constitutionality of California's
6  procedures for involuntary commitment, which are set out in the Landerman-Petris-Short (LPS)
7  Act. *See* Cal. Welf. & Inst. Code § 5000 *et seq*. The Federal Defendants understand Plaintiffs'
8  challenge to those procedures to be brought under the Fourteenth Amendment against the State of
9  California, and not directed at the Federal Defendants, who therefore do not respond directly to
10 these claims. *See* Am. Compl. ¶¶ 56–59. Nonetheless, the Federal Defendants note several things.
11 First, Plaintiffs' statement that "the federal government . . . apparently has no standards for the
12 [involuntary commitment] hearings that can disqualify an otherwise law-abiding citizen[] from
13 exercising the right to keep and bear arms," Mot. at 9, is simply untrue. The federal standards are
14 constitutional, not statutory, and indeed Plaintiffs rely on them here. Second, those standards do
15 not require the appointment of a guardian ad litem, a conservator, or counsel, nor do they require
16 notice of appellate rights, potential loss of rights to possess a firearm, nor the absence of "hospital
17 administered, mind-altering drugs." *See id.* Plaintiffs are asking this Court to declare novel
18 constitutional rights, and have offered no analysis that would even purport to justify such an
19 expansion. Third, and finally, the "probable cause" hearing that Plaintiffs attack as below
20 *Addington*'s requirement of clear and convincing evidence, *see* Cal. Welf. & Inst. Code § 5256.6,
21 was imposed by the federal courts after *Addington* was decided,[4] and then codified by the

---

[4] *See Doe v. Gallinot*, 657 F.2d 1017, 1024 (9th Cir. 1981) (affirming "the district court's ruling that a mandatory hearing must be afforded every individual in connection with a certification for 14-day intensive treatment under the LPS Act, at which a neutral decisionmaker will verify that

8

1   California Legislature. *See* 1982 Cal. Stat. 6373, *amended by* 1988 Cal. Stat. 5385. Plaintiffs are
2   therefore arguing that the Ninth Circuit affirmed the imposition of an unconstitutional procedure.
3   That is, at a minimum, quite improbable. Far likelier: that "probable cause hearing" is a term of
4   art, and that such hearings utilize the constitutionally-required standard of clear and convincing
5   evidence. But the Federal Defendants will leave the State of California to defend the
6   constitutionality of its commitment procedures.

7   Finally, Plaintiffs make two arguments that only pertain to Jane Roe. They argue that the
8   availability of relief from the § 922(g)(4) bar in the State of New Jersey (which imposed the bar
9   on her) constitutes an undue burden on her Second Amendment rights. Mot. at 10–11. But that
10  cannot be right: if *Mai* teaches that the § 922(g)(4) prohibition comports with the Second
11  Amendment when a state's residents have no present means of lifting the prohibition, then it cannot
12  violate the Second Amendment for Jane Roe to have the option to petition for relief in New Jersey.
13  Plaintiffs' other argument fails for similar reasons. Jane Roe served in the United States Army
14  while subject to the § 922(g)(4) bar, and argues that the prohibition is therefore unconstitutional
15  as applied to her, because her military service demonstrates that she can safely possess a firearm.
16  Mot. at 9–10. But that was exactly the situation addressed by the Ninth Circuit in *Mai*, which held
17  that even if the plaintiff had returned to "mental health and peaceableness," 952 F.3d at 1109, the
18  § 922(g)(4) prohibition did not violate the Second Amendment as applied to him. Jane Roe's
19  military service is simply another way of attempting to demonstrate the "mental health and
20  peaceableness" that the Ninth Circuit found insufficient to sustain an as-applied challenge in *Mai*.
21  Plaintiffs cannot prevail on this claim by pointing to a case from the Third Circuit that is contrary

---

sufficient cause for such confinement exists"); *id.* at 1025 ("This hearing must be one at which a person or group of persons capable of rendering an impartial decision conducts an evaluation to determine *whether there is probable cause* for detaining the person." (emphasis added)).

1   to *Mai*. *See Keyes v. Lynch*, 195 F. Supp. 3d 702, 722 (M.D. Pa. 2016) (upholding an as-applied

2   Second Amendment challenge and opining that "circuit courts have struggled with the

3   constitutionality of the mental health commitment provision of § 922(g)(4)").

4   The Federal Defendants are entitled to summary judgment on Plaintiffs' Second

5   Amendment claims.

**B.     California's restoration-of-rights procedures do not suffice to lift the federal prohibition on the possession of firearms.**

6   Plaintiffs next argue that California's restoration of rights procedure, Cal. Welf. & Inst.

7   Code § 8103(g)(4), satisfies the federal requirements to remove the § 922(g)(4) prohibition on the

8   possession of firearms, 34 U.S.C. § 40915. *See* Mot. at 20 (arguing that "California standards are

9   . . . probably more stringent than the federal standards," and that the federal requirements "are

10  easily met by California's WIC § 8103(g) statute"). Plaintiffs sometimes frame this argument in

11  terms of "strict scrutiny," which is not the applicable mode of analysis: strict scrutiny asks whether

12  a particular government policy is narrowly tailored to serve a compelling government interest.

13  *E.g.*, *Smith v. Univ. of Wash.*, 392 F.3d 367, 371 (9th Cir. 2004). It is not a mode of statutory

14  interpretation. *Cf.* Mot. at 11 (arguing that "the Court should apply strict scrutiny to any alleged

15  distinction between California's restoration procedure under WIC § 8103(g)" and the federal

16  requirements); *id.* at 19 (arguing that the Federal Defendants must "present evidence of a

17  compelling government interest that mandates a distinction between California's restoration

18  procedure under WIC § 8103(g)" and 34 U.S.C. § 40915).

19  And in any event, this Court has already (and correctly) held that California law does not

20  satisfy the federal requirements to lift the § 922(g)(4) prohibition. *See* Order at 3–4, ECF No. 74

21  (Mar. 24, 2021). That holding is now the law of this case. *See, e.g.*, *Mayweather v. Terhune*, 136

22  F. Supp. 2d 1152, 1154–55 (E.D. Cal. 2001).

As the Court explained in its order granting the Federal Defendants' partial motion to dismiss, "Federal law . . . provides an avenue for obtaining relief from [the § 922(g)(4)] prohibition on the possession of firearms." Order at 3, ECF No. 74 (Mar. 24, 2021). "Currently, any state program that qualifies under 34 U.S.C. § 40915 may provide relief from the disabilities imposed by federal law with respect to the possession of firearms." *Id.* (citing *Mai*, 952 F.3d at 1111). "Section 40915 provides that a state shall grant relief from the prohibition if the state program affirms that 'the person's record and reputation [] are such that the person will not be likely to act in a manner dangerous to public safety *and that the granting of the relief would not be contrary to the public interest[.]*'" *Id.* (quoting 34 U.S.C. § 40915(a)(2); emphasis added in order). But "California law *does not meet this standard* because California allows for the restoration of one's right to possess a firearm merely 'if the court finds by a preponderance of the evidence that the person would be likely to use firearms in a safe and lawful manner.'" *Id.* at 4 (quoting Cal. Welf. & Inst. Code § 8103(g)(4); emphasis added). Although California's state program removes the state-law prohibition on the possession of firearms, the program is not sufficient to provide relief from the federal prohibition established by § 922(g)(4). Plaintiffs' arguments to the contrary are unavailing on the merits, and foreclosed by the law of this case.

It is not entirely clear which claim Plaintiffs intend to support with these arguments. They mention 18 U.S.C. § 925A, under which they bring their final claim, *see* Am. Compl. ¶¶ 60–62, but also refer to the Administrative Procedure Act, *see* Mot. at 18, and 18 U.S.C. § 925(c),[5] Mot. at 11–13, though they have not brought a claim on either basis.

---

[5] Plaintiffs' suggestion that they could bring a claim under 18 U.S.C. § 925(c) without submitting an "application for relief from disabilities" that was first "denied by the Attorney General," *id.*, was resolved against them in *United States v. Bean*, which held that "the absence of an actual denial of respondent's petition . . . precludes judicial review under § 925(c)." 537 U.S. 71, 78 (2002). Plaintiffs suggest that *Bean* is no longer good law, but the Ninth Circuit has continued to

In any event, California law does not satisfy federal requirements for the lifting of the § 922(g)(4) bar, as this Court has already held. The Federal Defendants are entitled to summary judgment on any claim that rests on Plaintiffs' argument to the contrary.

### C. Plaintiffs' § 922(g)(4) prohibitions are not erroneous.

Under 18 U.S.C § 925A, a person erroneously denied a firearm pursuant to 18 U.S.C. § 922(g) "may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved." To prevail on such a claim, the plaintiff must show either that the denial was "due to the provision of erroneous information," *id.* § 925A(1), or that he "was not prohibited from receipt of a firearm pursuant to subsection (g) . . . of section 922," *id.* § 925A(2). Plaintiffs cannot make either showing as to the Federal Defendants, and indeed have barely attempted to do so.

Plaintiffs "contend that they have been erroneously classified as prohibited due to the constitutional infirmities of their hearings." Mot. at 15. That is not an allegation of error within the meaning of § 925A, and certainly not by the Federal Defendants. Plaintiffs have each been adjudicated or committed within the meaning of 18 U.S.C. § 922(g)(4). They insist that California law suffices to remove the § 922(g)(4) prohibition, but this Court has correctly held that it does not. Because Plaintiffs have not shown—and cannot show—that they have been denied the right to purchase firearms "due to the provision of erroneous information . . . by the national instant criminal background check system," and because they in fact are "prohibited from receipt of a

---

treat it as such, *see Mai*, 952 F.3d at 1111, and this Court must follow Supreme Court precedent unless expressly overruled. *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989).

firearm pursuant to subsection (g) . . . of section 922," their claims against the Federal Defendants under § 925A fail.

The Federal Defendants are entitled to summary judgment on these claims.

**D.    Plaintiffs' Fifth Amendment claims are meritless.**

Finally, in a single paragraph, plaintiffs suggest that 34 U.S.C. § 40915 violates the Fifth Amendment's guarantee of equal protection. They do not explain how, or why, but presumably they are alleging that residents of California are denied equal protection because their state does not have a qualifying program to relieve the § 922(g)(4) prohibition, while other states do.

Because 34 U.S.C. § 40915 "does not classify . . . on the basis of a suspect class, and . . . does not violate . . . the . . . Second Amendment[], rational basis scrutiny applies." *Nordyke v. King*, 681 F.3d 1041, 1043 n.2 (9th Cir. 2012) (en banc). Under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). In this case, "the classification [is] drawn" between states that "grant . . . relief, pursuant to State law" upon a finding "that the person will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest," and those that do not. 34 U.S.C. § 40915(a)(2).

This classification is rationally related to legitimate state interests. *See Mai*, 952 F.3d at 1117 (discussing "the government's laudable goal of preventing gun violence"). The requirement of a finding "that the person will not be likely to act in a manner dangerous to public safety," is directly linked to the government's legitimate interests in public safety. *See* 34 U.S.C. § 40915(a)(2). And the requirement of a finding "that the granting of the relief would not be contrary to the public interest," *id.*, is rationally related to the government's broader interest in

promoting the public interest. This second requirement ensures that a state court considers the full breadth of the public interest when adjudicating restoration-of-rights petitions, and to consider the public interest is eminently rational. Both of these requirements obviously and easily satisfy rational basis review. *See Aleman v. Glickman*, 217 F.3d 1191, 1201 (9th Cir. 2000) (discussing "the exceedingly low level of judicial scrutiny mandated by the rational basis test").

The Federal Defendants are therefore entitled to summary judgment on Plaintiffs' Fifth Amendment claim.

## CONCLUSION

For the reasons set forth above, the Federal Defendants are entitled to summary judgment on all claims brought against them in this case.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Director
Federal Programs Branch

 */s/ James Bickford*
JAMES BICKFORD
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 305-7632
James.Bickford@usdoj.gov

*Attorneys for Federal Defendants*

Date: May 10, 2021