ROB BONTA, State Bar No. 202668
Attorney General of California
ANTHONY R. HAKL, State Bar No. 197335
Supervising Deputy Attorney General
JERRY T. YEN, State Bar No. 247988
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-7836
  Fax:  (916) 324-8835
  E-mail:  Jerry.Yen@doj.ca.gov
*Attorneys for Defendant California Attorney General Rob Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANE ROE #1, et al,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA, et al,**<br><br>Defendants. | Case No. 1:19-cv-00270-ADA-BAM<br><br>**DEFENDANT CALIFORNIA ATTORNEY GENERAL ROB BONTA'S MEMORANDUM IN RESPONSE TO ORDER REQUESTING SUPPLEMENTAL BRIEFING**<br><br>Judge:            Hon. Ana de Alba<br>Action Filed:  February 25, 2019 |

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................................. 1

Statutory and Factual Background ............................................................................................... 1

    I.     Process for Involuntary Commitment under California Welfare & Institutions Code section 5250 .................................................................................. 1

    II.    The Individual Plaintiffs in This Case ................................................................... 2

Argument ...................................................................................................................................... 3

    I.     The Decision in *Stokes* Does Not Impact the California Attorney General's Cross-Motion for Summary Judgment .................................................................... 3

    II.    The Decision in *Stokes* is Inconsistent with Other Court Decisions ...................... 4

          A.    A "Commitment" Does Not Always Require Judicial Involvement .......... 4

          B.    The 5250 Certification Review Hearing is an Adversarial Hearing Held By a Lawful Authority ........................................................................ 7

          C.    A "Commitment" Does Not Require a Determination of Both Mental Illness and Dangerousness ............................................................. 8

    III.   Plaintiffs In This Case Are Differently Situated Than The Plaintiff In *Stokes* ........................................................................................................................ 9

Conclusion .................................................................................................................................... 9

i

Def. Cal. Att'y Gen.'s Resp. to Order Requesting Suppl. Briefing (1:19-cv-00270)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*District of Columbia v. Heller*
    554 U.S. 570 (2008) ........................................................................................................... 5

*Mai v. United States*
    952 F.3d 1106 (9th Cir. 2020) .................................................................................... 6, 7, 8

*Pervez v. Becerra*
    No. 2:18-cv-02793-KJM-KJN, 2019 WL 2715621 (E.D. Cal. June 28, 2019) .................... 3, 4

*Stokes v. U.S. Dep't of Justice*
    551 F. Supp. 3d 993 (N.D. Cal. 2021) ..................................................................... *passim*

*U.S. v. Bartley*
    9 F.4th 1128 (9th Cir. 2021) ........................................................................................ 6, 7, 8

*United States v. Dorsch*
    363 F.3d 784 (8th Cir. 2004) ............................................................................................. 5

*United States v. Giardina*
    861 F.2d 1334 (5th Cir. 1988) ............................................................................................ 5

*United States v. Hansel*
    474 F.2d 1120 (8th Cir. 1973) ............................................................................................ 5

*United States v. McIlwain*
    772 F.3d 688 (11th Cir. 2014) ............................................................................................ 5

*United States v. McMichael*
    350 F. Supp. 3d 647 (W.D. Mich. 2018) ............................................................................. 5

*United States v. Midgett*
    198 F.3d 143 (4th Cir. 1999) .............................................................................................. 5

*United States v. Rehlander*
    666 F.3d 45 (1st Cir. 2012) ............................................................................................ 5, 6

*United States v. Vertz*
    40 Fed. Appx. 69 (6th Cir. June 20, 2002) ......................................................................... 5

*United States v. Waters*
    23 F.3d 29 (2nd Cir. 1994) ............................................................................................. 4, 5

ii

Def. Cal. Att'y Gen.'s Resp. to Order Requesting Suppl. Briefing (1:19-cv-00270)

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

United States Code, Title 18
   § 922(g)(4) .................................................................................................... *passim*
   § 925A ................................................................................................................... 3

California Welfare and Institutions Code
   § 5001 ..................................................................................................................... 1
   § 5250 ............................................................................................................ *passim*
   §§ 5251-5253 ......................................................................................................... 2
   § 5254 ................................................................................................................ 2, 7
   § 5254.1 ............................................................................................................. 2, 7
   § 5255 ..................................................................................................................... 2
   § 5256 ................................................................................................................ 2, 7
   §§ 5256-5256.7 ...................................................................................................... 7
   § 5256.1 ........................................................................................................ 2, 7, 8
   § 5256.4 ............................................................................................................. 2, 7
   § 5256.5 ................................................................................................................. 2
   § 5256.6 ............................................................................................................. 2, 8
   § 5256.7 ................................................................................................................. 8
   § 5275 ..................................................................................................................... 2
   § 5276 ..................................................................................................................... 2

**OTHER AUTHORITIES**

Code of Federal Regulations, Title 27
   § 478.11 ................................................................................................................. 6

iii

Def. Cal. Att'y Gen.'s Resp. to Order Requesting Suppl. Briefing (1:19-cv-00270)

## INTRODUCTION

Defendant California Attorney General Rob Bonta files this memorandum in response to the Court's February 15, 2023 Order requesting supplemental briefing. The Court noted that the court in *Stokes v. U.S. Dep't of Justice*, 551 F. Supp. 3d 993 (N.D. Cal. 2021) "determined that a commitment under section 5250 does not constitute a 'commitment' under federal law" and requested supplemental briefing "on why the reasoning in *Stokes* should or should not control the outcome in this case." ECF No. 112.

As an initial matter, whether or not a commitment under California Welfare and Institutions Code section 5250 (Section 5250) qualifies as a "commitment" under federal law has no impact on the California Attorney General's cross-motion for summary judgment (ECF No. 81). Further, because the Court's request involves an interpretation of federal law, the California Attorney General generally defers to the Federal Defendants[1]. Nevertheless, the California Attorney General provides the following response regarding the involuntary treatment for mental health disorders under Section 5250 and other court decisions determining the requirements for a "commitment" under federal firearms law.

## STATUTORY AND FACTUAL BACKGROUND

**I.  PROCESS FOR INVOLUNTARY COMMITMENT UNDER CALIFORNIA WELFARE & INSTITUTIONS CODE SECTION 5250**

The process for the involuntary treatment of mental health disorders in California is discussed in the California Attorney General's motion. ECF No. 81-1, at pp. 2-3. However, the following provides a summary relevant to the Court's request.

The California Legislature enacted the Lanterman-Petris-Short (LPS) Act to "provide prompt evaluation and treatment of persons with mental health disorders" and "safeguard individual rights through judicial review." Cal. Welf. & Inst. Code § 5001. The LPS permits a person to be certified for involuntary treatment if (1) the professional staff at the mental health

---

[1] The Federal Defendants include the United State of America, the U.S. Department of Justice and its Attorney General; the Federal Bureau of Investigation and its Director; and the Bureau of Alcohol, Tobacco, Firearms, and Explosives and its Acting Director. Compl. at ¶¶ 12-18.

1

Def. Cal. Att'y Gen.'s Resp. to Order Requesting Suppl. Briefing (1:19-cv-00270)

facility conducts an evaluation and finds that the person is a danger to himself or others, or is gravely disabled, as a result of a mental health disorder, (2) the mental health facility has been designated by the county to provide intensive treatment and agrees to treat the patient, and (3) the person is unwilling or unable to accept treatment after being advised of the need for treatment. *Id*. § 5250. If the criteria are met, it is referred to as a "5250 hold" and two mental health professionals must sign a notice of certification and serve it on the person certified. *Id*. §§ 5251-5253. As soon as practicable after certification, the patient must meet with an attorney or patient advocate, who will explain the commitment process, answer questions, and help prepare for the certification review hearing. *Id*. § 5255. The patient must also be informed of the right to counsel and the right to challenge the commitment at the certification review hearing or through judicial review by habeas corpus. *Id*. §§ 5254, 5254.1, 5275, and 5276.

Unless the patient requests judicial review, the certification review hearing must be held within four days after certification. *Id*. § 5256. A certification review hearing officer[2] conducts the hearing where the patient has the right to counsel as well as the right to call and cross-examine witnesses. *Id*. §§ 5256.1 and 5256.4. If the hearing officer finds probable cause that the patient is a danger to himself or others, or is gravely disabled, as a result of a mental health disorder, then the patient is detained under Section 5250 for involuntary treatment. *Id*. § 5256.6. If not, the patient must be released immediately. *Id*. § 5256.5.

II. **THE INDIVIDUAL PLAINTIFFS IN THIS CASE**

As described in the California Attorney General's motion, there are currently six individual plaintiffs remaining in the case. ECF No. 81-1, at pp. 6-9. One of the individual plaintiffs, Jane Roe #1, is subject to the federal prohibition under § 922(g)(4) due to an involuntary commitment in New Jersey. Pls.' Statement of Undisputed Facts (Pls.' SUF), ECF No. 64, at Nos. 2 and 7. The other five individual plaintiffs were subject to a 5250 hold in California. *Id*. at Nos. 8, 12,

---

[2] The certification review hearing officer is "selected from a list of eligible persons unanimously approved by a panel composed of the local mental health director, the county public defender, and the county counsel or district attorney designated by the county board of supervisors." *Id*. § 5256.1.

2

Def. Cal. Att'y Gen.'s Resp. to Order Requesting Suppl. Briefing (1:19-cv-00270)

1   16, 21, and 28.  For all six individual plaintiffs, only federal law, and no California law, currently
2   prohibits them from possessing a firearm.  *Id*. at Nos. 1, 7, 11, 16, 20, 27, and 31.

**ARGUMENT**

**I.   THE DECISION IN *STOKES* DOES NOT IMPACT THE CALIFORNIA ATTORNEY GENERAL'S CROSS-MOTION FOR SUMMARY JUDGMENT**

The *Stokes* decision regarding what qualifies as a "commitment" under federal law should not impact the outcome of the California Attorney General's cross-motion for summary judgment.  In particular, the *Stokes* decision does not address any of the California Attorney General's arguments here regarding the legal defects of Plaintiffs' newly raised facial due process challenge to Section 5250.  *See* ECF No. 81-1, at pp. 11-18.  *Stokes* involved no such challenge.  Nor does *Stokes* concern several of the other issues here, such as those presented by the claim under 18 U.S.C. § 925A, and the claim for money damages.  *See* ECF No. 81-1, at pp. 18-22.

Plaintiffs may argue that the *Stokes* decision impacts the California Attorney General's sovereign immunity claim.  *See* 551 F. Supp. 3d at 1009 (stating that "[t]he California Attorney General argues there is no causal connection between himself and plaintiff's injury.  That is not quite true because the California Attorney General received the report of plaintiff's Section 5250 certification . . . and . . . passed it through to [the National Instant Criminal Background Check System (NICS)]").  However, that part of the *Stokes* decision is inconsistent with the well-reasoned ruling in another case in this district – *Pervez v. Becerra*, No. 2:18-cv-02793-KJM-KJN, 2019 WL 2715621 (E.D. Cal. June 28, 2019) – and the relevant Ninth Circuit authority cited in the California Attorney General's motion.

In *Pervez*, Judge Mueller concluded that California officials had "no direct connection" to the placement of a section 5250 hold.  2019 WL 2715621, at *5.  "[U]nder California law neither the Attorney General nor any other DOJ employee directs or controls the mental health facilities responsible for the imposition of a section 5250 hold in the first instance."  *Id*.  Further, and contrasting the situation with a litany of Ninth Circuit cases where Eleventh Amendment immunity had been denied, Judge Mueller correctly observed that "the role of the DOJ in this statutory system is purely administrative, without an enforcement function."  *Id*. (citing Ninth

3

Circuit cases). "The fact that information on section 5250 holds goes through the DOJ on its way to the NICS also does not establish a sufficient connection to deny Eleventh Amendment immunity to [the California Attorney General]. While the DOJ receives information regarding section 5250 holds from mental health facilities and transmits this information to the federal background check system, the DOJ serves only as a conduit for the information and does not make the actual section 5250 determination itself." 2019 WL 2715621, at *5. This Court should view the situation here in the same manner, and *Stokes* does not change the reality of that situation.

## II. THE DECISION IN *STOKES* IS INCONSISTENT WITH OTHER COURT DECISIONS

In *Stokes*, the district court's conclusion that the plaintiff's 5250 hold did not constitute a "commitment" under 18 U.S.C. § 922(g)(4) mainly relied on two factors – (1) there was no judicial involvement, and (2) there was no finding that the plaintiff was both mentally ill and dangerous. 551 F. Supp. 3d at 1104-05. However, those two factors are not required to qualify as a "commitment" under the decisions in other circuit courts and a Ninth Circuit case decided after *Stokes*. In addition, the *Stokes* decision only analyzed the involuntary commitment process under California law, and thus would not apply to one of the plaintiffs – Jane Roe #1 – who was committed under New Jersey law.

### A. A "Commitment" Does Not Always Require Judicial Involvement

The issue of what qualifies as a "commitment" for purposes of 18 U.S.C. § 922(g)(4) has been addressed by several circuit courts. For example, the Second Circuit considered whether New York's law on involuntary admission to a mental health facility qualified as a "commitment." *United States v. Waters*, 23 F.3d 29, 32 (2nd Cir. 1994). New York law permitted the involuntary admission of an individual upon certification of two physicians. *Id*. (citation omitted). The law also provided for a hearing upon request and required the mental health facility to obtain a court order to detain a patient for more than thirty days. *Id*. (citation omitted). The Second Circuit concluded that New York's system of involuntary admission "with its attendant requirements of notice and judicial proceedings [upon request of the patient],

4

Def. Cal. Att'y Gen.'s Resp. to Order Requesting Suppl. Briefing (1:19-cv-00270)

comports with federal policy" and "constitute[s] a 'commitment' within the meaning of 18 U.S.C. § 922(g)(4)." *Id*. at 35-36.

The Sixth Circuit agreed with the decision in *Waters* and ruled that "a judicial determination is not always necessary in order to have a 'commitment' for purposes of the firearm statute." *United States v. Vertz*, 40 Fed. Appx. 69, 75 (6th Cir. June 20, 2002). The Sixth Circuit also noted that "Congress specifically required an 'adjudication' when a mental defect is the disabling circumstance . . . but it did not specify any requirement of judicial involvement when committed to a mental health institution is the disabling circumstance." *Id*. (citing 18 U.S.C. § 922(g)(4)).

The Eleventh Circuit reviewed decisions from the First, Fourth, Fifth, and Eighth Circuits, and noted that "[a]ll of these circuit decisions place primary importance on whether some authoritative body – a court, a county board – rendered a decision about the defendant's mental illness and ordered commitment." *United States v. McIlwain*, 772 F.3d 688, 696 (11th Cir. 2014); *see also id*. at 695-696 (summarizing decisions in *United States v. Giardina*, 861 F.2d 1334, 1336-37 (5th Cir. 1988); *United States v. Hansel*, 474 F.2d 1120, 1125 (8th Cir. 1973); *United States v. Rehlander*, 666 F.3d 45, 46, 51 (1st Cir. 2012); *United States v. Midgett*, 198 F.3d 143, 146 (4th Cir. 1999); and *United States v. Dorsch*, 363 F.3d 784, 785 (8th Cir. 2004)). After reviewing these circuit decisions, a district court in the Western District of Michigan concluded that the "trend of the courts [] is to require some type of adversary hearing resulting in an adjudication before a commitment to a mental institution under Section 922(g)(4) will be found." *United States v. McMichael*, 350 F. Supp. 3d 647, 659 (W.D. Mich. 2018). The district court also noted a change in the legal landscape because of the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and due process concerns. *Id*. at 659. And that "the due process concerns support the Court's construction of [§ 922(g)(4)] to require some kind of authoritative adjudication by a third party authority on an evidentiary record." *Id*. This accords with federal regulations that define "committed to a mental institution" to mean a "formal commitment of a person to a mental institution by a court, board, commission, or other lawful

5

Def. Cal. Att'y Gen.'s Resp. to Order Requesting Suppl. Briefing (1:19-cv-00270)

authority." 27 C.F.R. § 478.11.  In sum, circuit courts have not held that a "commitment" always requires judicial involvement, but only that a hearing be held by some lawful authority.

Without addressing this weight of authority, the district court in *Stokes* took a more narrow view, apparently requiring the involvement of a court or judge for there to be a "commitment." *Stokes*, 551 F. Supp.3d at 1000, 1004 (citing *Mai v. United States*, 952 F.3d 1106, 1110 (9th Cir. 2020)).  Specifically, in *Stokes*, the district court found that "there was no judicial involvement, much less 'robust judicial involvement,' so under *Mai*, there was no 'commitment' within the meaning of Section 922(g)(4)." *Id*. at 1004.  Citing the First Circuit's decision in *Rehlander*, *Mai* indeed contains the remark that "commitments under state-law procedures that lack robust judicial involvement do not qualify as commitments for purposes of § 922(g)(4). [Citation.]." *Mai*, 952 F.3d at 1110.  However, *Rehlander* does not stand for the proposition that judicial involvement is always required for there to be a "commitment." *See* 666 F.3d at 50-51.  On the contrary, *Rehlander* concerned a Maine law that permitted involuntary hospitalizations "without any adversary proceeding and with no finding by an independent or even administrative officer that the subject is either mentally disturbed or dangerous." *Id*. at 48.  And the First Circuit concluded that the law "should not be read to encompass a temporary hospitalization attended only by [] ex parte procedures[.]" *Id*. at 49.  In other words, *Rehlander* simply held that the ex parte procedures in Maine could not support a "commitment" under § 922(g)(4); it did not hold that full-blown judicial involvement is always required.

Indeed, in a decision issued after the district court ruled in *Stokes*, the Ninth Circuit characterized the holding of *Rehlander* in a similar fashion: "The First Circuit concluded that 'temporary hospitalizations supported only by ex parte procedures' did not constitute a commitment under § 922(g)(4)." *U.S. v. Bartley*, 9 F.4th 1128, 1133 (9th Cir. 2021).  And *Bartley* made that characterization in rejecting an attempt by the plaintiff there to rely on the "observation" in *Mai* that "commitments under state-law procedures that lack robust judicial involvement do not qualify as commitments for purposes of § 922(g)(4)." *Id*. at 1131-32.  The court similarly rejected an attempt by the plaintiff to rely on another statement in *Mai* that "'[i]nvoluntary commitments comport with due process only when the individual is found to be

6

Def. Cal. Att'y Gen.'s Resp. to Order Requesting Suppl. Briefing (1:19-cv-00270)

*both* mentally ill *and* dangerous,'" explaining that the Supreme Court decision cited in *Mai* did not support plaintiff's argument. *Id*. at 1132 (quoting *Mai*, 952 F.3d at 1110). In rejecting the plaintiff's attempt to rely on yet another statement in *Mai*, *Bartley* cautioned that the "statement must be read in light of *Mai*'s holding" and went on to plainly conclude that "[*Mai*] did not hold that findings of both mental illness and dangerousness are always necessary in order for a state commitment to come within the meaning of § 922(g)(4)." *Id*. at 1133.

This Court should reason in a similar fashion and conclude that, despite what *Stokes* might suggest, judicial involvement is not always required for there to be a "commitment" under § 922(g)(4). This would be consistent with the decisions of other courts concluding that an adjudication by way of an adversarial proceeding held by some lawful authority—not necessarily a judicial proceeding—is enough to qualify as a commitment. *See Bartley*, 9 F.4th at 1134 (citing other circuit court cases where an involuntary commitment after a hearing by a court or county board constituted a "commitment" under § 922(g)(4)).

### B. The 5250 Certification Review Hearing is an Adversarial Hearing Held By a Lawful Authority

Because a hearing must be held for an individual to be certified for involuntary treatment under Section 5250, a 5250 hold qualifies as a "commitment" under § 922(g)(4). Once a mental health facility concludes that a person has a mental health disorder and is unwilling or unable to voluntarily accept treatment, the facility's determination is subject to review. Cal. Welf. & Inst. Code § 5250, 5254. A certification review hearing must be held within four days or, if the patient elects to do so, he or she may request judicial review. *Id*. §§ 5254, 5254.1, 5256.

The certification review hearing is informal, yet adversarial. *Id*. § 5256.4. It is conducted by "either a court-appointed commissioner or a referee, or a certification review hearing officer [who is] . . . selected from a list of eligible persons unanimously approved by a panel composed of the local mental health director, the county public defender, and the county counsel or district attorney designated by the county board of supervisors." *Id*. § 5256.1. During the hearing, the patient may receive assistance from an attorney or patient advocate, present evidence, and question witnesses. *See id*. §§ 5256-5256.7. After the hearing, the certification review hearing

7

Def. Cal. Att'y Gen.'s Resp. to Order Requesting Suppl. Briefing (1:19-cv-00270)

officer must determine whether a person, as a result of a mental disorder, is a danger to himself or others or gravely disabled. *Id*. §§ 5256.1 and 5256.6. If so, then the patient is detained for involuntary treatment. *Id*. § 5256.6. Even after the certification review hearing, the patient still has the right to request another hearing in California superior court. *Id*. § 5256.7. In sum, the 5250 hold process includes several due process safeguards, including the right to request judicial review, and thus, based on the reasoning in the court decisions discussed earlier, qualifies as a "commitment" under § 922(g)(4).

### C. A "Commitment" Does Not Require a Determination of Both Mental Illness and Dangerousness

An individual may be placed on a 5250 hold after a certification review hearing determines that the individual is a danger or gravely disabled due to a mental disorder. Cal. Welf. & Inst. Code § 5250. The district court in *Stokes* found that this did not qualify as a "commitment" because "[g]rave disablement is not enough" and "the ambiguous finding of dangerous *or* disabled was not specific or clear enough." 551 F. Supp. 3d at 1005. The court relied on statements in *Mai* to conclude that a "commitment" required a finding of both mental illness and dangerousness. *Id.* (stating that "*Mai* held: 'Involuntary commitments comport with due process only when the individual is found to be *both* mentally ill *and* dangerous.' 952 F.3d at 1110 (emphasis in original).").

However, as discussed earlier, after the *Stokes* decision, the Ninth Circuit rejected such a reading and stated that *Mai* "did not hold that findings of both mental illness and dangerousness are always necessary in order for a state commitment to come within the meaning of § 922(g)(4)." *Bartley*, 9 F.4th at 1133. Indeed, the Ninth Circuit made clear that a "commitment" under § 922(g)(4) does not "require a finding that the committed person was both mentally ill and dangerous." *Id*. Accordingly, involuntary mental health treatment under Section 5250, which requires a finding of either dangerousness or mental illness, would qualify as a § 922(g)(4) "commitment" under the Ninth Circuit's decision in *Bartley*.

8

Def. Cal. Att'y Gen.'s Resp. to Order Requesting Suppl. Briefing (1:19-cv-00270)

### III. PLAINTIFFS IN THIS CASE ARE DIFFERENTLY SITUATED THAN THE PLAINTIFF IN *STOKES*

The facts of Plaintiffs' 5250 holds in this case are also different from the plaintiff's 5250 hold in *Stokes*. In *Stokes*, the plaintiff challenged his 5250 hold report because he had allegedly sought treatment voluntarily. 551 F. Supp. 3d at 995-96. The district court noted evidence to support his voluntary treatment claim, which included medical notes checking "No" for "Involuntary Hold (5150)" and a note about a "probable 14-day hold." *Id*. In contrast, Plaintiffs in this case admit receiving mental health treatment, do not challenge that they were held under section 5250, and one of the plaintiffs even admits to being placed on a mental health hold after a certification review hearing. *See* Pls.' SUF Nos. 8, 12, 16, 21, and 28. Even if they now challenge the propriety of their 5250 holds, there is no evidence, such as the medical notes in *Stokes*, suggesting that Plaintiffs were treated voluntarily or failed to receive a certification review hearing. These distinguishing facts further support reaching a different conclusion than the one reached by the district court in *Stokes*.

### CONCLUSION

The decision in *Stokes* has no impact on the arguments raised in the California Attorney General's cross-motion for summary judgment. And, for the reasons discussed above, *Stokes* should not control the outcome of whether involuntary mental health treatment under Section 5250 qualifies as a "commitment" under federal law.

9

Def. Cal. Att'y Gen.'s Resp. to Order Requesting Suppl. Briefing (1:19-cv-00270)

| | | |
|---|---|---|
| 1 | Dated: March 17, 2023 | Respectfully submitted, |
| 2 | | ROB BONTA<br>Attorney General of California |
| 3 | | ANTHONY R. HAKL<br>Supervising Deputy Attorney General |
| 4 | | |
| 5 | | |
| 6 | | */s/ Jerry Yen* |
| 7 | | JERRY T. YEN<br>Deputy Attorney General |
| 8 | | *Attorneys for Defendant California Attorney General Rob Bonta* |

10

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Jane Roe #1, et al. v. United States of America, et al.** | No. | **1:19-cv-00270** |

I hereby certify that on <u>March 17, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT CALIFORNIA ATTORNEY GENERAL ROB BONTA'S MEMORANDUM IN RESPONSE TO ORDER REQUESTING SUPPLEMENTAL BRIEFING**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 17, 2023</u>, at Sacramento, California.

| | |
|---|---|
| Eileen A. Ennis | /s/ *Eileen A. Ennis* |
| Declarant | Signature |

SA2019101161
37014565.docx