James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

*Attorney for Federal Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE #1, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>and<br><br>ROBERT BONTA,<br><br>Defendants. | Case No. 1:19-cv-00270-DAD-BAM<br><br>**FEDERAL DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO MINUTE ORDER OF FEB. 15, 2023** |

The Federal Defendants submit this supplemental brief in compliance with the Court's minute order of February 15, 2023, ECF No. 112.

## ARGUMENT

**A.  Section 5250 detentions are commitments under 18 U.S.C. § 922(g)(4), and Plaintiffs have not argued otherwise.**

Federal law prohibits the possession of firearms by individuals who have been "committed to a mental institution" by a state.  18 U.S.C. § 922(g)(4).  Regulations define "[c]ommitted to a mental institution" as "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority."  27 C.F.R. § 478.11.  The state law in question authorizes involuntary detention for up to 14 days of intensive treatment for a mental disorder, accompanied by extensive procedural safeguards.  Cal. Welf. & Inst. Code § 5250.  Such detentions are commitments to a mental institution within the meaning of federal law, and they therefore disarm the individual who has been committed.

California's Lanterman-Petris-Short Act, Cal. Welf. & Inst. Code §§ 5000 *et seq.*, establishes procedures for involuntary commitment and treatment.  In the period relevant here, the statute authorized a 72-hour "treatment and evaluation" period under § 5150, which could be extended by a 14-day "intensive treatment" period under § 5250, and then a 30-day period of further intensive treatment under § 5270.15.[1]  A person could not be held longer without a finding that he was suicidal, § 5260, imminently dangerous, § 5300, or suitable for a conservatorship due to grave disability, § 5350.

Under § 5150, a police officer or designated professional may take a person into custody and take him to an approved medical facility for up to 72 hours of evaluation and treatment based on "probable cause" that the person, as a result of a mental health disorder, "is a danger to others,

---

[1] A second 30-day period of intensive treatment is now authorized under § 5270.70.

1

or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5150(a). Before admitting the person, the facility's staff must assess the individual to determine if he can be "properly served without being detained," in which case the facility must provide services "on a voluntary basis." *Id.* § 5150(c). If the facility determines that the person cannot be properly served without being detained, it must obtain "an application in writing stating the circumstances under which the person's condition was called to the attention" of the police officer or professional and stating that the police officer or professional has the requisite probable cause. *Id.* § 5150(e).

At the end of the 72-hour period, the person may be "certified for not more than 14 days of intensive treatment" related to the mental health disorder, so long as (1) the evaluating facility has found the person, as a result of the mental health disorder, to be a danger to self or others or gravely disabled, (2) the intensive treatment facility is designated by the county to provide intensive treatment and agrees to admit the person, and (3) the person "has been advised of the need for, but has not been willing or able to accept, treatment on a voluntary basis." Cal. Welf. & Inst. Code § 5250. The "notice of certification" must be prepared and signed by two people: the professional in charge of the evaluating facility, or his or her designee, and a physician or psychologist who participated in the evaluation. *Id.* § 5251. The notice must state the basis for the certification (danger to self, danger to others, or gravely disabled) and describe the specific facts that form the basis for the signatories' opinion. *Id.* § 5252.

A copy of the certification must be delivered to the individual, Cal. Welf. & Inst. Code § 5253, who must be informed that a "certification review hearing" will be held within four days of the certification date "unless judicial review is requested," *id.* § 5254. The person must also be informed that he has a right "to a judicial review by habeas corpus." *Id.* § 5254.1; *see also id.* § 5275. And an attorney or patient advocate must meet with the person "[a]s soon after the

certification as practicable" in order to discuss the commitment process, prepare for the certification hearing, and answer questions. *Id.* § 5255.

The certification hearing must be "conducted by either a court-appointed commissioner or a referee, or a certification review hearing officer." Cal. Welf. & Inst. Code § 5256.1. Among other rights, the person has the right to appear, *id.* § 5256.3, to assistance by an attorney or advocate, to present evidence on his own behalf, to question persons presenting evidence in support of the certification decision, and to make reasonable requests for the attendance of facility employees who have knowledge of the certification decision, *id.* § 5256.4. The person may no longer be involuntarily detained if the hearing officer "finds that there is not probable cause to believe that the person certified is, as a result of a mental disorder . . . a danger to others, or to himself or herself, or gravely disabled." *Id.* § 5256.5. The hearing officer must provide a "written notification of the decision," including "a statement of the evidence relied upon and the reasons for the decision." *Id.* § 5256.7.

The procedures for certifying an individual for a 30-day period of further intensive treatment under § 5270.15 are substantially similar. An individual can be involuntarily detained for one-and-a-half months under these procedures.

Detentions under § 5250 are extended—up to two weeks long, with the possibility of a further extension—and rest on a finding that the person actually suffers from a mental illness. They also involve significant procedural formality, as detailed above. They are therefore commitments within the meaning of federal law, and they require that the person who has been committed be disarmed.

Plaintiffs have not argued the contrary, despite every opportunity to do so. Eight pseudonymous plaintiffs filed suit in February 2019, bringing five causes of action—none

premised on the theory that involuntary detentions under § 5250 are not commitments under federal law. Compl., ECF No. 1. Plaintiffs amended their complaint more than a year later, adding a Tenth Amendment claim, but again choosing not to bring any claim that § 5250 detentions are not commitments under 18 U.S.C. § 922(g)(4). Am. Compl., ECF No. 36 (Mar. 31, 2020). This Court later dismissed the Tenth Amendment claim, *see* Order of Mar. 24, 2021, ECF No. 74, and two plaintiffs voluntarily dismissed themselves from the case, ECF Nos. 56 & 75.

The six remaining plaintiffs moved for summary judgment in June 2021, again choosing not to raise the argument on which supplemental briefing has been ordered. ECF No. 85. A week later, they sought leave to amend the complaint for a second time, to add a facial challenge to the constitutionality of involuntary detentions under § 5250. ECF No. 87. (All defendants opposed that motion, which remains pending.) But plaintiffs still made no effort to challenge the Federal Defendants' determination that § 5250 detentions are commitments under federal law. Finally, in August 2021, plaintiffs filed a notice of supplemental authority, alerting the Court to the decision in *Stokes v. U.S. Department of Justice*, 551 F. Supp. 3d 993 (N.D. Cal. 2021). ECF No. 97. Knowing that the *Stokes* court had held involuntary detentions under § 5250 not to be commitments under federal law, and therefore not to trigger the federal prohibition on possession of firearms, plaintiffs still made no effort to insert that issue into this case. Instead, they characterized the *Stokes* decision in constitutional terms—the terms in which they have always framed their claims—as having held "that California's mental health commitment procedures under Welfare and Institutions Code § 5250 processes is [*sic*] constitutionally flawed and that the failure of either set of defendants to provide relief (i.e., clearance for a firearm purchase background check) to Mr. Stokes violated the Constitution." ECF No. 97 at 2.

John Doe 3's litigation strategy makes the plaintiffs' decision here especially clear. John

Doe 3 asserts that he was detained under § 5150, not § 5250. *See* Pls.' Statement of Undisputed Facts, ¶¶ 16, 18, ECF No. 64. (The documentary evidence shows that his detention was actually under § 5250. *See* Federal Defs.' Statement of Undisputed Facts, ¶¶ 1–3 & Response to Pls.' Statement, ¶¶ 16, 18, ECF No. 82-2.) The Federal Defendants acknowledge that detentions under § 5150 are not commitments under federal law because they are brief, involve no formal procedures, and do not require a finding of mental illness. But in the four years that this case has now been pending, John Doe 3 has never argued that he was erroneously disarmed because his detention under § 5150 was not a commitment under federal law. Along with the other plaintiffs, he has preferred to press claims only on constitutional grounds, as he is fully entitled to do.

Plaintiffs are masters of their complaint, free to state any claim that they choose—and equally free not to do so. *See, e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987) (explaining that although plaintiffs could have pleaded certain claims, "[a]s masters of the complaint . . . they chose not to do so"). Plaintiffs exercised that right twice in this case—by filing their complaint and then amending it—and are seeking to do so a third time, in their pending motion for leave to file a second amended complaint. Nowhere in any of those complaints or their pending motion for summary judgment do plaintiffs assert a claim that Section 5250 detentions are not commitments under federal law. In ordering this supplemental briefing, the Court suggested that the parties "appear to assume that commitments under Cal. Welf. & Inst. Code § 5250 qualify as 'commitments' for purposes of 18 U.S.C. § 922(g)(4)." ECF No. 112. That is Federal Defendants' position, for the reasons stated above, not an unexamined assumption. Plaintiffs were free to challenge it, but never sought to do so—not even after *Stokes* was decided and plaintiffs brought that decision to the attention of this Court. In exchange for mastery of their complaint, plaintiffs have an obligation to provide adequate notice of their claims, Fed. R. Civ. P.

8(a)(2), and at summary judgment, to present the legal arguments on which those claims rest. Even on the day of this filing, the Federal Defendants did not know plaintiffs' view of the issue on which supplemental briefing has been ordered. This Court should resolve the claims that plaintiffs actually presented in their complaint and pending motion for summary judgment, and not introduce into this case issues that plaintiffs have strategically chosen not to raise.

And even if the arguments in *Stokes* were properly introduced here, they could not resolve the case, because at least one plaintiff clearly was not detained under § 5250. Jane Roe was involuntarily committed for mental health treatment by the State of New Jersey, under the laws of that state, though she now resides in California. *See* Pls.' Statement of Undisputed Facts, ¶¶ 2, 6–7, ECF No. 64. At least as to her, this Court will ultimately need to resolve plaintiffs' constitutional claims.

**B.    *Stokes* overread *Mai* to impose limitations that do not appear in 18 U.S.C. § 922(g)(4).**

In *Stokes*, a court in this district held that a § 5250 "'certification' did not (and does not) bar [plaintiff] from possessing . . . firearms because it did not constitute a 'commitment' within the meaning of the federal statute." 551 F. Supp. 3d at 995.

The court derived its holding from *Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020), where the Ninth Circuit rejected an as-applied Second Amendment challenge to § 922(g)(4) brought by someone "committed involuntarily, for more than nine months, to a mental institution after a Washington state court found him to be both mentally ill and dangerous." 952 F.3d at 1109. *Mai* did not present the statutory question at issue in this supplemental brief, because the parties in *Mai* agreed that the plaintiff's commitment qualified as a "commitment" for purposes of § 922(g)(4). Nonetheless, the Ninth Circuit said that "[i]nvoluntary commitments comport with due process only when the individual is found to be both mentally ill and dangerous," *Mai*, 952

F.3d at 1110 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)), and that "commitments under state-law procedures that lack robust judicial involvement do not qualify as commitments for purposes of § 922(g)(4)," *id.* (citing *United States v. Rehlander*, 666 F.3d 45, 47-49 (1st Cir. 2012)).

The *Stokes* court adopted that dicta as its analytic framework, and concluded that Stokes' § 5250 certification did not satisfy it. The court reasoned that "there was no judicial involvement, much less 'robust judicial involvement,'" 551 F. Supp. 3d at 1004, and that the only remaining information about the basis for the certification does "not establish that [Stokes] was found to be both mentally ill and dangerous," *id.* at 1005. The court also observed that, under § 5250, the certification could have been based on being "unable" to accept treatment voluntarily, rather than being unwilling to do so, and reasoned that this provided another reason why Stokes' certification was not a commitment within the meaning of § 922(g)(4). *Id.*

But none of the prerequisites that the *Stokes* court read into § 922(g)(4) appear there. *First*, while the statute "does not include . . . a voluntary admission to a mental institution," 27 C.F.R. § 478.11, a person who is "unable" to accept treatment voluntarily under § 5250, like a person who is unwilling to do so, is not a "voluntary admission," 27 C.F.R. § 478.11.

*Second*, neither the text of the statute nor the text of the regulations indicates that a "commit[ment]" requires judicial involvement. *See* 18 U.S.C. § 922(g)(4) (disarming anyone who "has been committed to any mental institution"); 27 C.F.R. § 478.11 (defining the phrase to mean "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority"). Moreover, by separately addressing those who have "been adjudicated as a mental defective" and those who have "been committed to any mental institution," § 922(g)(4)'s text suggests that a commitment does not require a formal adjudication to qualify for the

prohibition. The legislative history strongly supports that interpretation. While an earlier version of the bill would have applied to "a person adjudicated in any court as a mental defective <u>or committed under a court order to a mental institution</u>," Congress amended that language in the final bill, reasoning that the prohibition "does <u>not</u> require that there be prior action by a court, inasmuch as mental boards and commissions constitute the adjudicating or committing authority in some jurisdictions." H.R. Rep. No. 1956 at 30 (1968) (emphasis added).

And even so, § 5250 detentions involve significant procedural formality and provide for judicial review. The detained person has a right "to a judicial review by habeas corpus," Cal. Welf. & Inst. Code § 5254.1; *see also id.* § 5275, as well as an attorney or patient advocate, *id.* § 5255; *see also id.* 5256.4. If he does not exercise his right to judicial review, the certification hearing is "conducted by either a court-appointed commissioner or a referee, or a certification review hearing officer," *id.* § 5256.1, and the detained person has the right to appear, *id.* § 5256.3, to assistance by an attorney or advocate, to present evidence, to question persons presenting evidence, and to make reasonable requests for the attendance of facility employees who have knowledge of the certification decision, *id.* § 5256.4.

*Third*, neither the statute nor the regulations require a finding of dangerousness for a commitment to qualify under § 922(g)(4). Rather, the regulations define the phrase "committed to a mental institution" to "include[] a commitment to a mental institution involuntarily . . . for mental defectiveness or mental illness," or "for other reasons, such as for drug use." 27 C.F.R. § 478.11.

A recent Ninth Circuit decision suggests that the *Stokes* court overread *Mai* in holding otherwise. In *United States v. Bartley*, 9 F.4th 1128 (9th Cir. 2021), the defendant sought to dismiss his § 922(g)(4) indictment, arguing that his commitment to a mental institution after a state

8

court found him incompetent to stand trial in an earlier case did not fall within the scope of § 922(g)(4) and that the statute as applied to him violated the Second Amendment. The Ninth Circuit rejected both arguments. As relevant here, the Ninth Circuit distinguished *Mai*'s statement that § 922(g)(4) "applies only to those who were found, through procedures satisfying due process, actually dangerous in the past" as a statement that "must be read in light of *Mai*'s holding," where the plaintiff had been found both mentally ill and dangerous. 9 F.4th at 1133. As the Ninth Circuit explained, "*Mai* held that 'the prohibition on the possession of firearms by persons, like Plaintiff, whom a state court has found to be both mentally ill and dangerous is a reasonable fit with the government's indisputably important interest in preventing gun violence.'" *Id.* (quoting *Mai*, 952 F.3d at 1109). "*Mai* thus concluded that the prohibition properly applied to the plaintiff." *Id.* But, as *Bartley* made clear, *Mai* "did not hold that findings of both mental illness and dangerousness are always necessary in order for a state commitment to come within the meaning of § 922(g)(4)." *Id.* "Such a requirement would be inconsistent with the plain language of the statute." *Id.* (citing *Rehlander*, 666 F.3d at 50 ("[S]ection 922(g)(4) does not bar firearms possession for those who are or were mentally ill and dangerous, but . . . only for any person 'who has been adjudicated as a mental defective' or 'has been committed to a mental institution.'")) (footnote omitted).

In sum, the limitations that the *Stokes* court imposed on 18 U.S.C. § 922(g)(4) are contrary to the statute and the plain legislative intent and are not compelled by the holding of *Mai*.

## CONCLUSION

For the reasons stated above and in the Federal Defendants' previous briefs, summary judgment should be entered in the Federal Defendants' favor on all claims.

Respectfully submitted this 17th day of March, 2022,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Director
Federal Programs Branch

 /s/ James Bickford
JAMES BICKFORD
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 305-7632
James.Bickford@usdoj.gov

*Attorneys for Federal Defendants*