James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

*Attorney for Federal Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE #1, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> and <br><br> ROBERT BONTA, <br><br> Defendants. | Case No. 1:19-cv-00270-DAD-BAM <br><br> **FEDERAL DEFENDANTS'** <br> **SUPPLEMENTAL BRIEF** |

The Federal Defendants submit this supplemental brief in compliance with the Court's order of July 17, 2024, ECF No. 126.

## BACKGROUND

Plaintiffs are six individuals who were involuntarily committed for mental health treatment and are therefore prohibited from possessing firearms under 18 U.S.C. § 922(g)(4). They have four remaining claims against the Federal Defendants: two under the Second Amendment, Am. Compl. ¶¶ 45–50, ECF No. 36, and the others under the Fifth Amendment, *id.* ¶¶ 51–55, and 18 U.S.C. § 925, *id.* ¶¶ 60–62. Their Tenth Amendment claim has been dismissed. ECF No. 74.

When the parties briefed their cross-motions for summary judgment, Plaintiffs' Second Amendment claims were foreclosed by *Mai v. United States*, in which the Ninth Circuit held that "[t]he federal prohibition on . . . possession of firearms because of . . . past involuntary commitment withstands Second Amendment scrutiny." 952 F.3d 1106, 1121 (9th Cir. 2020). *See* Fed. Defs.' Mem. of Law at 6–8, ECF No. 82-1; Pls.' Opp. & Reply at 8, ECF No. 90 at 12 (explaining that "Plaintiffs merely advance . . . their Second Amendment claims to preserve them" for a subsequent appeal). In *Mai*, the Ninth Circuit first assumed, without deciding, that § 922(g)(4) burdens Second Amendment rights, 952 F.3d at 1114–15, and then, applying intermediate scrutiny, concluded that any burden imposed by § 922(g)(4) was not an *undue* burden, *id.* at 1115–21.

Two years after *Mai* was decided, the Supreme Court issued its opinion in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), elaborating on the approach to Second Amendment analysis adopted in *District of Columbia v. Heller*, 554 U.S. 570 (2008). *Bruen* criticized the two-step approach to *Heller* that had been taken by many federal courts of appeals, which asked first whether "'the challenged law regulates activity falling outside the scope of the right [to keep and bear arms] as originally understood,'" and then, "if the historical evidence . . .

is 'inconclusive or suggests that the regulated activity is *not* categorically unprotected,'" used strict or intermediate scrutiny to analyze the constitutionality of the challenged regulation. 142 S. Ct. at 2126 (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)). "Despite the popularity of this two-step approach," the Court held that it was "one step too many." *Id.* at 2127. Instead, under *Bruen*, courts should not "apply[] means-ends scrutiny in the Second Amendment context," but instead assess whether a challenged law "is consistent with this Nation's historical tradition of firearm regulation." *Id*. at 2126–27.

This Court ordered supplemental briefing to address the impact of *Bruen* on Plaintiffs' Second Amendment claims. The Federal Defendants argued that "§ 922(g)(4) is constitutional under *Bruen* because *Bruen* and *Heller* explicitly address mental health related firearm restrictions and it is consistent with the historical tradition of firearms restrictions." Supp. Br. at 4, ECF No. 107 at 5. Therefore, "*Mai* reached the correct result even if its [two-step] framework does not survive *Bruen*." *Id.* at 3. On the first point, the Federal Defendants invoked *Heller*'s statement that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons *and the mentally ill*," 554 U.S. at 626 (emphasis added), which was reiterated by Chief Justice Roberts and Justice Kavanaugh in their *Bruen* concurrence, 142 S. Ct. at 2162 (quoting *Heller*). The Federal Defendants argued that because "*Heller* and *Bruen* speak specifically to the constitutionality of regulations on gun ownership by those with a history of serious mental illness or commitment in a mental health facility, this Court should end its inquiry there." Supp. Br. at 6. And the Federal Defendants went on to show that "Section 922(g)(4) is consistent with a historical tradition of firearms regulation of the mentally ill specifically, and categories of persons deemed to be dangerous generally." *Id.* at 10. Plaintiffs, for their part, did

2

not offer any historical analysis, nor seek to dispute the account put forward by the Federal Defendants. *See* ECF No. 109.

Last month, the Supreme Court decided *United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024), rejecting a Second Amendment challenge to 18 U.S.C. § 922(g)(8), the federal prohibition on the possession of firearms by individuals subject to certain domestic violence restraining orders. This Court has ordered supplemental briefing to address the effect of *Rahimi* on Plaintiffs' Second Amendment claims. ECF No. 126.

## ARGUMENT

*Rahimi* bolsters both of the arguments advanced by the Federal Defendants in their supplemental brief addressing *Bruen*. First, it reaffirms *Heller*'s statement that prohibitions on the possession of firearms by "the mentally ill" are "presumptively lawful." *Rahimi*, 2024 WL 3074728, at *10 (quoting *Heller*, 554 U.S. at 626, 627, n. 26). And second, *Rahimi* clarifies the mode of historical analysis that courts should apply to Second Amendment claims. The Federal Defendants' historical account, which Plaintiffs have not sought to dispute, is more than enough to satisfy *Rahimi*.

**A.  *Rahimi* reiterated that regulations such as § 922(g)(4) comport with the Second Amendment.**

In *Heller*, the Supreme Court emphasized that "the right secured by the Second Amendment is not unlimited," and said that "nothing in [its] opinion should be taken to cast doubt" on certain "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons *and the mentally ill*." 554 U.S. at 626 & n.26 (emphasis added). Chief Justice Roberts and Justice Kavanaugh reaffirmed that point in their *Bruen* concurrence. 142 S. Ct. at 2162. And *Rahimi* reiterated it. Responding to an argument that § 922(g)(8) was

1  invalid because it bars individuals subject to restraining orders from possessing guns in the home,
2  *Rahimi* said that "*Heller* never established a categorical rule that the Constitution prohibits
3  regulations that forbid firearm possession in the home. In fact, our opinion stated that many such
4  prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are
5  'presumptively lawful.'" 2024 WL 3074728, at *10 (quoting *Heller*, 554 U.S. at 626, 627, n. 26).[1]

6        The fact that "longstanding prohibitions on the possession of firearms by felons and the
7  mentally ill" are "presumptively lawful regulatory measures" on which *Heller* and its progeny
8  should not "be taken to cast doubt," 554 U.S. at 626 & n.26, is enough for this Court to affirm the
9  constitutionality of § 922(g)(4), the only federal statute that regulates firearm possession based
10 upon mental health treatment or determinations. *See* Supp. Br. at 4–5, ECF No. 107 at 5–6. The
11 Court should do so, and end its inquiry there.

12       **B.**    **Section 922(g)(4) is "consistent with the principles that underpin our**
13 **regulatory tradition," as *Rahimi* requires.**

14       Although *Rahimi*'s holding is limited to the constitutionality of 18 U.S.C. § 922(g)(8), its
15 reasoning supports the conclusion that § 922(g)(4) also comports with the Second Amendment.
16 *Rahimi* rejected an unduly narrow approach to Second Amendment analysis. The Court explained
17 that "some courts have misunderstood the methodology of our recent Second Amendment cases."
18 *Rahimi*, 2024 WL 3074728, at *6. Those cases, the Court observed, "were not meant to suggest a
19 law trapped in amber" because the Second Amendment "permits more than just those regulations
20 identical to ones that could be found in 1791." *Id.* As Justice Barrett emphasized in concurrence,

---

[1] After *Rahimi*, the en banc Ninth Circuit granted rehearing and vacated a panel opinion that found 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms, to be unconstitutional under *Bruen*. *See* Order, *United States v. Duarte*, no. 22-50048 (July 17, 2024), *granting rehr'g en banc and vacating United States v. Duarte*, 101 F.4th 657 (2024).

1   "a test that demands overly specific analogues" would involve "serious problems," including
2   "assum[ing] that founding-era legislatures maximally exercised their power to regulate" and
3   "forc[ing] 21st-century regulations to follow late 18th-century policy choices." *Id.* at *30 (Barrett,
4   J., concurring).

5   Instead, "the appropriate analysis involves considering whether the challenged regulation
6   is consistent with the principles that underpin our regulatory tradition." *Id.* at *6. Thus, even
7   "when a challenged regulation does not precisely match its historical precursors," it may still "pass
8   constitutional muster" if it "comport[s] with the principles underlying the Second Amendment."
9   *Id.* In applying that analysis to uphold the firearms prohibition challenged in *Rahimi*, the Court
10  emphasized that although the prohibition "is by no means identical" to historical laws, "it does not
11  need to be." *Id.* at *9.

12  As the Federal Defendants have explained, history shows that legislatures hold authority
13  to disarm categories of persons whose possession of firearms would endanger themselves or
14  others. Supp. Br. at 6–7, ECF No. 107 at 7–8. *Rahimi* recognized that "[s]ince the founding, our
15  nation's firearm laws have included provisions preventing individuals who threaten physical harm
16  to others from misusing firearms." 2024 WL 3074728, at *5. The limited restriction imposed by
17  § 922(g)(4), which applies (as relevant here) only to individuals who have been "committed to a
18  mental institution," "fits comfortably" within that tradition and the principles underpinning it.
19  *Rahimi*, 2024 WL 3074728, at *5.

20  Firearm possession by individuals with a history of serious mental illness endangers the
21  public in multiple ways. And § 922(g)(4) bears at least as close a resemblance to historical laws
22  as the modern prohibition that *Rahimi* had "no trouble" upholding. *Id.* at *10. As the Ninth Circuit
23  observed in *Mai*, "historical evidence supports the view that society did not trust the mentally ill

5

with the responsibility of bearing arms." 952 F.3d at 1114 (citing *Beers v. Att'y Gen.*, 927 F.3d 150, 152 (3d Cir. 2019)). That evidence includes the founding-era practice of isolating persons with a history of mental disturbance from the community at large, Supp. Br. at 7–8, ECF No. 107 at 8–9, as well as laws from the colonial era through the 19th century disarming groups deemed to be dangerous, *id.* at 8–9. When it enacted § 922(g)(4), Congress reasonably decided—after a multi-year inquiry into the problem of violent crime—to prohibit firearm possession by "individuals who by their previous conduct or mental condition . . . have shown themselves incapable of handling a dangerous weapon in the midst of an open society," 114 Cong. Rec. 21,809–10 (statement of Rep. Tenzer), such as "persons with a history of mental disturbances," *id.* at 21,784 (statement of Rep. Celler). *See* Supp. Br. at 9, ECF No. 107 at 10.

As the Federal Defendants have explained, Congress's decision to do "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," *Bruen*, 142 S. Ct. at 2127, and moreover "comport[s] with the principles underlying the Second Amendment," *Rahimi*, 2024 WL 3074728, at *6. And Plaintiffs have not meaningfully argued otherwise. Their Second Amendment claims therefore fail.

## CONCLUSION

For the reasons stated above and in the Federal Defendants' previous briefs, summary judgment should be entered in the Federal Defendants' favor on all claims.

Respectfully submitted this 31st day of July, 2024,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director
Federal Programs Branch

 */s/ James Bickford*
JAMES BICKFORD

6

        Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 305-7632
James.Bickford@usdoj.gov

*Attorneys for Federal Defendants*