Donald E. J. Kilmer, Jr. [SBN: 179986]
Email: don@dklawoffice.com
Jessica L. Danielski [SBN: 308940]
Email: j.danielski@yahoo.com
LAW OFFICES OF DONALD KILMER, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Voice: (408) 264-8489

Jason Davis [SBN: 224250]
Email: jason@calgunlawyers.com
THE DAVIS LAW FIRM
27201 Puerta Real, Suite 300
Mission Viejo, California 92691
Voice: (949) 310-0817

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jane Roe #1; John Doe #1; John Doe #2; John Doe #3; John Doe #4; John Doe #5; And Second Amendment Foundation, Inc., <br><br> Plaintiffs, <br><br> vs. <br><br> United States of America; U.S. Dept. of Justice; Federal Bureau Of Investigation; Bureau Of Alcohol, Tobacco, Firearms And Explosives; Merrick Garland (U.S. Attorney General), Christopher A. Wray (Director, FBI); Steven M. Dettelbach (Director, BATFE); Rob Bonta (California Attorney General), Does 1 To 100. <br><br> Defendants. | Case No.: 1:19-CV-270-DAD-BAM <br><br> PLAINTIFFS' SUPPLEMENTAL RESPONSE BRIEF Re: *United States v. Rahimi,* __ U.S. __, 144 S.Ct. 1889, 219 L.Ed.2d 251, 2024 U.S. LEXIS 2714 (2024) <br><br> Cross-Motions for Summary Judgment Pending <br><br> Motion to Amend Pending |

Donald Kilmer
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

Plaintiffs' Supplemental Response Brief – *Rahimi*   1   *Roe v. United States*

## Introduction

The Defendants got to gang up on the Plaintiffs with (a combined) double the allotted pages for supplemental arguments explaining the application of *United States v. Rahimi* to this case. Ditto on the response briefs. Plaintiffs were tempted (it's easier to ask forgiveness than permission) to submit two responsive briefs to address arguments made by both Defendants. But the fairest reading of this Court's order (ECF Doc # 126) was that only one brief from each party was contemplated for each round of briefing. Plaintiffs need not have fretted. Both Defendants made the same strawman argument. This single response is sufficient to address the deficiencies of both the governments' briefs.

## Plaintiffs' Response

Boiled down to their essence, both government briefs make essentially the same strawman argument (paraphrasing):

> Since the Supreme Court has repeatedly said[1] laws that restrict the Second Amendment rights of "felons and the mentally ill" are "presumptively lawful" and that any person adjudicated "mentally ill" (sometimes decades ago, under whatever due process existed at that time, by whatever evidentiary standard used, without benefit of counsel, without benefit of a conservator or guardian ad litem, without sufficient notice of the consequences of the hearing, and prior to the development of our modern and recent Second Amendment jurisprudence) like the Plaintiffs in this case are just out of luck. They are especially out of luck if they live in a jurisdiction (like California) that refuses to amend its laws to take advantage of the federal grant money offered in the NICS Improvement Act of 2007 (34 U.S.C. §§ 40901 et seq.) to qualify for a federally recognized restoration of Second Amendment rights after a mental health finding made under state law.

---

[1] *District of Columbia v. Heller*, 554 U.S. 570, 626, 627, n. 26 (2008); *McDonald v. Chicago*, 561 U.S. 742, 786 (2010); *New York Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 80 (J. Kavanaugh, C.J. Robert concurring); and more recently *United States v. Rahimi*, 144 S.Ct. 1889, *at* 1902 (majority opinion), *and again at* 1923 (J. Kavanaugh concurring).

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

This is a strawman argument. Plaintiffs have never challenged the suspension (though now only allowed to be temporary pursuant to *Rahimi at* 1901-02) or the restriction of the right to keep and bear arms when someone is found to be mentally ill *and* is currently a danger to themselves or others. But the devil is in the details – and in a lawsuit that sometimes boils down to "due process" – i.e., What process is due when the government seeks to deprive someone of a liberty interest, or when government policy preventw them from taking steps to restore that interest?

What this case has always been about is this: What are the constitutionally valid processes to adjudicate someone mentally ill in the first place, *and* how does someone extricate themselves from that status once they have been "cured" *and/or* they are no longer a danger to themselves or others? The government is counting something outside of the law and common sense to win this case. Sometimes the "Law is a reflection and source of prejudice. It both enforces and suggests forms of bias."[2]

Mental illness frightens people, and the incentive to err on the side of public safety is understandable. Making such decisions at the intersection of mental health and guns makes the deciders uneasy. But controversial constitutional rights are the norm, not the exception. "The right to keep and bear arms, […] is not the only constitutional right that has controversial public safety implications." *McDonald v. City of Chicago,* 561 U.S. 742, 783 (2010) (collecting cases where the enforcement of other constitutional rights have disputed public safety implications.) This Honorable Court's task is to "be ever on […] guard, lest we erect […] prejudice into legal principles." *New State Ice Co. v. Liebmann,* 285 U.S. 262, 311 (1932) (J. Brandeis dissenting).

---

[2] Diane B. Schulder, Amercan Lawyer and educator. Does the Law Oppress Women?" *Sisterhood is Powerful,* edited by Robin Morgan, 1970.

This case started out as a challenge to the joint and severable policies of both Defendants that either separately, or in combination, resulted in the denial of a fundamental right. The denial occurred (and is a continuing wrong) when either: (A) both governments offered restoration processes that were impossible to comply with, because neither sovereign would acquiesce to the procedures of the other, or (B) the processes for and initial adjudication of mental illness lacked all indicia of due process and fundamental fairness.

This is a Second Amendment case because that amendment guarantees a liberty interest in a "right to keep and bear arms." That liberty interest is subject to the due process clause of the Fifth Amendment against unconstitutional federal action. And that same liberty interest[3] is protected against infringement under the due process clause of the Fourteenth Amendment against unconstitutional state action.

This case could just as easily be a case about the violation of the liberty interests of a law-abiding citizen, whose right to vote, sit on a jury, or hold public office (to name other civil rights) is being denied. Such a violation without a felony conviction is no different than someone who is NOT currently suffering from some mental illness or disease of the mind that makes them dangerous. And since both sovereigns only offer an effectual restoration process, they should be estopped from making the argument that Plaintiffs are no worse off than if no restoration process was available.

One theory of the case is a challenge to the United States government's policy of refusing to recognize both of California's restoration of rights process under that state's law, namely Welfare and Institutions Code (WIC) § 8103, which included (1) the passage of time without the necessity of a hearing; and

---

[3] The Second Amendment is not, or should not, be different in California than it is in any of the other states with federally recognized restoration processes. See PSUF #65, ECF Doc # 64.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

(2) a state court hearing, in which the local government and California's Attorney General are given notice and an opportunity to be heard on a petitioner's application to restore their Second Amendment rights.

Recall that it is an undisputed fact that California's Attorney General – because that state is a Full Point of Contact state -- is authorized to administer California's background check AND the federal background check, which includes a determination of what disqualification records are valid or not. PSUF #46 (Doc #64).

The federal statutory scheme, outside of the NICS Improvement Act of 2007 (34 U.S.C. §§ 40901 et seq.) (which is essentially a block grant scheme), imposes a lifetime ban on exercising Second Amendment rights for anyone "adjudicated mentally ill" under state law. 18 U.S.C. § 922(g)(4). Furthermore, there is no right to seek a federal court hearing to set aside a mental health disqualification under 18 U.S.C. 925(c), because Congress refuses to provide funding for federal agencies to conduct the necessary agency investigation and determination that is a pre-condition for filing an action in a U.S. District Court. *United States v. Bean,* 537 U.S. 71 (2002).

A second theory is California's refusal to insist, on behalf of the rights of its citizens, that California's restoration of rights process substantially complies with the federal standard (under statute or case law) and thus California could purge its mental health records that are too old, or in which a valid hearing under California law took place. Another part of the theory of California's liability is that its initial hearing process of adjudicating mental illness lacks indicia of fundamental fairness and due process. This last theory is fatal to all of California's mental health adjudications under WIC § 5250 et seq.

Prior briefing has already provided an inventory of California's deficiencies, the most glaring of which is the evidentiary standard of mere probable cause for a judicial finding of mental illness under WIC § 5250, found at § 5256.6.

Donald Kilmer
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

Plaintiffs' Supplemental Response Brief – *Rahimi*   5   *Roe v. United States*

This does not comport with the procedural due process standards under *Addington v. Texas,* 441 U.S. 418 (1979) (Deprivation of liberty interest cannot be sustained without a showing of at least "clear and convincing evidence.")

Another example: the Department of Defense may not submit a disqualifying mental health record unless "the person has an opportunity to participate with counsel." 34 U.S.C. § 40911(b)(2)(B)(ii). While California's statutory scheme does not forbid representation by counsel, the certification of mental illness under state law is not rendered invalid if there has not been "an opportunity to participate with counsel." And just how is someone whose mental faculties are at issue in a hearing, supposed to make an informed decision on whether they need a lawyer or not? Why aren't they automatically assigned a guardian ad litem or conservator? *See:* Fed. R. Civ. Proc. 17(c)(2). How is this not an implied admission by the federal government that all of California's records of mental illness under WIC § 5250 et seq., fail to comport with the federal standard of procedural due process and should therefore all be rendered null and void?

Perhaps its inability to meet the due process standards of the NICS Improvement Act of 2007 is the reason California initially sought to participate in the grant program, and then abandoned that effort without explanation or amendment to its laws. See PSUF, # 49-65 (ECF Doc # 64).

*Rahimi* provides direct support for Plaintiffs' arguments in this case. *Rahimi* affirmed that the suspension of Second Amendment rights may only be temporary, thus supporting Plaintiffs' argument that a meaningful path for getting those rights back is required. *Rahimi* also affirms the obvious contention that a procedural due process is critical to an analysis of any case in which the suspension of Second Amendment rights is at issue.

Indeed, *Rahimi* provides critical, maybe even dispositive, support for Plaintiffs' arguments that both governments have woefully inadequate safeguards in place

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

Plaintiffs' Supplemental Response Brief – *Rahimi*   6   *Roe v. United States*

when it comes to both suspending and restoring the Second Amendment rights of people whose mental health is at issue, even as both sovereigns seek to implement a policy that – in the abstract – is constitutional. *Heller, at* 626, 627, n. 26. *Rahimi* affirms that the procedural due process argument already made in Plaintiffs' prior filings, and their Supplement Brief Re: *Stokes v. U.S. Department of Justice*, 551 F. Supp. 3d 993 (N.D. Cal. 2021) (ECF Doc. 114) is outcome determinative.

Finally, WIC § 8103(g)(4) states "[i]f the court finds by a preponderance of the evidence that the person would be likely to use firearms in a safe and lawful manner, the court may order that the person may own, control, receive, possess, or purchase firearms, [..]" As already argued, this is an analog of the "responsible person" test struck down in *Rahimi. Id., at* 1903.

The federal standards for restoring rights (assuming participation in the grant program that California has declined to join) fairs no better. It requires a showing in a state court that "the person's record and reputation, are such that the person will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest; [..]" 34 USCS § 40915(a)(2). This walks and talks like the "responsible person" standard disallowed in *Rahimi at 1903.*

The clearest path open to this Court is the one taken by the judge in the *Stokes* case: declare California's mental health adjudication laws that impact Second Amendment rights to be unconstitutional and order both California and the federal government to purge all mental health disqualifications from that state.

This Court can also put the federal government on notice that it will need to amend or provide regulatory interpretation that brings 35 USCS § 40915(a)(2) in line with *Rahimi,* i.e., continued denial of the right to keep and bear arms must be based solely on a determination that the person is presently dangerous.

Finally, the federal standard must become the de facto single standard for purging federal disqualifications to ensure equal protection of the law on a

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

fundament right, whether or not a particular state participates in a federal grant program. Though decided before *Heller, McDonald, Bruen,* or *Rahimi – Caron v. United States,* 524 U.S. 308 (1998) makes a valid point (though that case may be obsolete on other grounds): "Restoration of the right to vote, the right to hold office, and the right to sit on a jury turns on so many complexities and nuances that state law is the most convenient source for definition. As to the possession of weapons, however, the Federal Government has an interest in a single, national, protective policy, broader than required by state law." *Id., at* 316.

Since 2008, and the *Heller* decision, the Supreme Court now mandates that a single (or at least baseline) "protective policy" probably now includes the protection of someone's Second Amendment rights, both before those rights are suspended, and after they have demonstrated that they are no longer a threat to themselves or others, through state court processes (or the passage of time) that complies with constitutional due process at both ends of the temporary suspension of those rights. This Court can correct the ongoing injustice (this case was filed in 2019) and restore Plaintiffs' rights.

## Conclusion[4]

As if it needs to be stated again, the Defendants' argument that actually mentally ill people who are currently a danger to themselves or others should not have access to firearms is a strawman. Plaintiffs have never argued otherwise, but there must be a rigorous and constitutionally sound process to adjudicate both the suspension of Second Amendment rights and their restoration.

Respectfully Submitted on August 14, 2024

/s/ Donald Kilmer, Attorney for Plaintiffs

---

[4] The Court's order for supplemental briefing limited submissions to 7 pages. I did not count page 1 because it only contains the caption.

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2024, I electronically filed the foregoing with the United States District Court for the Eastern District of California by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date:  August 14, 2024

/s/ Donald Kilmer

Attorney for Plaintiffs

**Donald Kilmer**
Attorney at Law
14085 Silver Ridge Road.
Caldwell, ID 83607
Vc: 408/264-8489
don@dklawoffice.com

Plaintiffs' Supplemental Response Brief – *Rahimi*   9   *Roe v. United States*